# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03259

OLGA MARGUL, KELLI JO CLAXTON,
HENRY YEH, COLIN SMITH, ROD
GENDRON, and KAYLA MORRIS, individually
and on behalf of all similarly situated persons,

                        Plaintiffs,

     v.

EVOLVE BANK & TRUST, an Arkansas bank;
EVOLVE BANCORP, INC., an Arkansas limited
liability company; AMG NATIONAL TRUST, a
Colorado bank; LINEAGE BANK, a Tennessee
bank; and AMERICAN BANK, Inc. a
Pennsylvania bank.

                    Defendants.               JURY TRIAL DEMANDED

---

# CLASS ACTION COMPLAINT

---

Plaintiffs Olga Margul, Kelli Jo Claxton, Henry Yeh, Colin Smith, Rod Gendron, and Kayla Morris (collectively, "Plaintiffs") bring this class action complaint individually and on behalf of all others similarly situated against American Bank ("American"), AMG National Trust ("AMG"), Evolve Bank & Trust and Evolve Bancorp Inc. ("Evolve"), and Lineage Bank ("Lineage") (collectively, the "Partner Banks" or "Defendants"). The allegations contained in this class action complaint are based on Plaintiffs' personal knowledge of facts pertaining to themselves and upon information and belief, including further investigation conducted by Plaintiffs' counsel, as to the remainder.

## I.    NATURE OF THE ACTION

1.    This case concerns the gross mismanagement of cash deposits of ordinary consumers who have lost access to their holdings. Plaintiffs and members of the class created accounts on various financial technology platforms ("FinTechs") and initiated cash deposits. Because FinTechs are not themselves banks, they cannot maintain custody of customer funds. Instead, customer funds were maintained at one or more of the four  Partner Banks.

2.    The Partner Banks, in turn, used a middleman company named Synapse Financial Technologies, Inc. ("Synapse") to open deposit accounts, process transactions, and manage the account ledgers on behalf of approximately 100 FinTech companies and their end users.

3.    Unfortunately, the Partner Banks failed to adequately maintain and safeguard customers' funds. Significant ledger irregularities were discovered by the Partner Banks indicating the account balances set forth in Synapse's account ledger were materially inaccurate and, therefore, could not be used as the basis for distributing funds to end users. As a result, many customers' funds were either lost, stolen, or misplaced, with one Partner Bank blaming the next. Thousands of customers are left stranded without access to their funds. And despite demanding the return of their funds, the Partner Banks refused.

## II.    PARTIES

4.    Plaintiff Olga Margul is a resident of the State of Massachusetts. She was present in Massachusetts at the time she signed up for an account with the FinTech Juno and deposited funds.

5.    Plaintiff Kelli Jo Claxton is a resident of the State of California. She was present in California at the time she signed up for an account with the FinTech Yotta and deposited funds.

6.      Plaintiff Henry Yeh is a resident of the State of California. He was present in California at the time he signed up for an account with the FinTech Yotta and deposited funds.

7.      Plaintiff Colin Smith is a resident of the State of Michigan. He was present in Michigan at the time he signed up for an account with the FinTech Yotta and deposited funds.

8.      Plaintiff Rod Gendron is a resident of the State of Indiana. He was present in Indiana at the time he signed up for an account with the FinTech Juno and deposited funds.

9.      Plaintiff Kayla Morris is a resident of the State of Arizona. She was present in Arizona at the time she signed up for an account with the FinTech Yotta and deposited funds.

10.     Defendant American Bank, Inc. is a bank organized under the laws of Pennsylvania whose corporate headquarters and principal place of business is located at 615 Waterfront Dravie, Suite 501, Allentown, Pennsylvania 18102.

11.     Defendant AMG National Trust is a bank organized under the laws of Colorado whose corporate headquarters and principal place of business is located at 6295 Greenwood Plaza Blvd, Greenwood Village, Colorado 80111.

12.     Defendant Evolve Bank & Trust is a bank organized under the laws of Arkansas with locations in California. Its corporate headquarters and principal place of business is located at 6000 Poplar Avenue, Suite 300, Memphis, Tennessee, 38119.

13.     Defendant Evolve Bancorp, Inc. is a bank holding company organized under the laws of Arkansas whose corporate headquarters and principal place of business is located at 6000 Poplar Avenue, Suite 300, Memphis, Tennessee, 38119.

14.     Defendant Lineage Bank is a bank organized under the laws of Tennessee whose corporate headquarters and principal place of business is located at 120 5th Ave N, Franklin, Tennessee 37064.

## III.    JURISDICTION AND VENUE

15.     This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

17.     Further, as set forth herein, Defendants have contacts in this district sufficient to subject them to the personal jurisdiction of this district as if this district were a separate state. On information and belief, Defendants transacted with consumers in this district. On information and belief, Defendants continuously and systematically offered banking services to consumers in this District, maintained an interactive commercial service through the FinTechs at issue, and allowed customers in this District to transact with Defendants. On information and belief, Defendants all conduct substantial business in this District and a substantial part of the acts and omissions complained of occurred in this District. On information and belief, each Defendant has a physical presence in Colorado, offers banking services in Colorado, and/or transacts with customers physically present in Colorado. Additionally, AMG is organized under the laws of Colorado and has its principal place of business in Colorado.

18.     Exercising jurisdiction over Defendants is fair, just, and reasonable considering the quality and nature of Defendants' acts that occur in Colorado and which affect interests located in Colorado. On information and belief, Defendants have purposefully availed themselves of the privilege of conducting activities in Colorado, and should reasonably anticipate being haled into court in Colorado.

## IV.    GENERAL ALLEGATIONS

### A.     Fintech Platforms and Financial Accounts

19.     Companies colloquially described as "FinTechs" are financial technology businesses that offer software with the goal of helping individuals manage their finances. Most FinTechs offer web- and mobile application-based solutions as alternatives to traditional banks.

20.     Because the FinTechs at issue are not themselves banks, they could not accept and retain customer deposits. Rather, the FinTechs partnered with the Partner Banks who, in turn, maintained custody of customers' funds. In other words, the FinTechs allowed their customers (i.e., ordinary members of the public) to deposit cash into the Partner Banks through the FinTechs' online platforms, mediated by Synapse, and the Partner Banks maintained custody of these funds.

21.     Like any banking customer, FinTech users reasonably believed their funds were being held at the Partner Banks in a safe and secure manner and were available to access and withdraw on

demand. FinTech users also reasonably believed their account balances (the dollar figure shown to users on the FinTech platforms) were accurate.

**B.    Synapse Financial Technologies, Inc. Collapses**

22.    Synapse was founded in 2014. Synapse touted itself as the pioneer of the banking-as-a-service ("BaaS") model. It functioned as a middleman between traditional banks and FinTechs. In this role, Synapse opened deposit accounts on behalf of approximately 100 FinTech companies and their end users at four different banks—Evolve, American Bank, AMG, and Lineage—and Synapse managed the account ledgers.

23.    More specifically, beginning in 2014, Synapse opened Demand Deposit Accounts ("DDAs") on behalf of approximately 100 FinTechs and their end users at the Partner Banks. Beginning in 2020, Synapse developed its cash management program in connection with its subsidiary, Synapse Brokerage LLC ("Synapse Brokerage"), through which Synapse began opening Cash Management Accounts ("CMA Accounts") on behalf of the FinTechs and their end users at the Partner Banks. Most end user funds were held in omnibus "For Benefit Of" Accounts ("FBO Accounts")[1] and the remaining funds are held in DDAs across the four Partner Banks.

24.    In doing so, Synapse combined data received from Partner Banks with its own customer transaction data, and delivered that data to the FinTechs. This meant that FinTech users relied on the FinTechs and Partner Banks to account for users' funds; and the FinTechs and Partner Banks, in turn, relied in part on Synapse to keep track of users' funds.

25.    On April 22, 2024, Synapse filed for Chapter 11 bankruptcy in the Central District of California. After the bankruptcy filing, it came to light that approximately *$85 million* in customer funds across *100,000 customers* had gone missing.

26.    The bankruptcy process has revealed significant failings, including that Synapse and the Partner Banks did not maintain accurate ledgers, leading to incorrect customer fund balances. As a result,

---

[1] A "For Benefit Of" or "FBO" account is a type of custodial account. It is a pooled account that allows a company to manage funds on behalf of, or "for the benefit of," one or more of their users without assuming legal ownership of that account.

many customers have been left unable to access funds held at the Partner Banks and unable to pay essential bills or living expenses.

**C.   The Partner Banks Have Not Returned All Customer Funds**

27.    Following Synapse's collapse, the Partner Banks allegedly began reconciling customers' funds and working to correct the materially inaccurate ledgers. Despite these purported efforts, the four Partner Banks have not accounted for and returned all deposits belonging to FinTech users. Instead, the Partner Banks are (1) blaming each other for the inability to unwind Synapse's ledger and fully reconcile missing user funds, and/or (2) asserting that all funds maintained at those Partner Banks have been distributed.

28.    For example, according to Synapse bankruptcy filings from November 2024, Evolve reported publicly that it concluded its reconciliation efforts as of October 18, 2024. Evolve also reported that it would begin notifying end users of funds held and making distributions on November 4, 2024. According to the bankruptcy Trustee's direct communications from end users and publicly available information, Evolve notified many end users that it holds funds for those end users in amounts considerably *less* than shown on the Synapse ledger. As a result, Evolve will distribute considerably less to such end users, and Evolve asserts that the missing funds are in the custody of other Partner Banks.

29.    AMG and Lineage, on the other hand, dispute the accuracy of Evolve's reconciliation. For example, in a public letter dated November 12, 2024, these two banks contend that "calculating specific end user balances by bank was impossible because Synapse often directed large bulk bank-to-bank transfers of funds that bore no relationship whatsoever to specific individual end users or their transactions." AMG and Lineage also denied that they hold "substantial additional funds" belonging to fintech users, instead claiming that they already distributed over 99% and 90%, respectively, of funds owed to FinTech users.

30.    The result is that many customers are left without access to their cash deposits and with no clear ability to discern which of the Partner Banks holds their money. But their money is necessarily held by one or more of the Partner Banks.

**D.   The Failure to Maintain, Account, and Provide Access to Customer Funds Confirms Material Risk Management Failures**

31.     The Partner Banks' inability to track and provide immediate access to customer funds is indicative of material risk management failures.

32.     For example, Evolve was issued a cease and desist order by the Federal Reserve on June 14, 2024, two months after the Synapse bankruptcy filing.[2] This order stemmed from an examination of Evolve conducted in early 2023. Therefore, Evolve Bank must have been aware of significant operational and compliance issues for at least one year preceding Synapse's bankruptcy filing.

33.     Similarly, Lineage Bank entered a consent order with the FDIC on January 30, 2024, four months before the Synapse bankruptcy filing.[3] Although this consent order did not specify the timing of an earlier exam, the level of detail and breadth of issues contained in the consent order also suggest that significant compliance issues existed and must have been known by Lineage Bank well before Synapse's bankruptcy filing.

34.     Banks are expected to maintain contingency and business continuity plans that address the potential failure of critical third parties. Synapse was clearly such a critical third party, and yet none of the Partner Banks had a plan in place for what to do in the event of operational issues at Synapse—let alone failure.

35.     The Partner Banks' lack of direct bank access to Synapse's ledger, lack of contingency planning, and failure to maintain their own copy of the ledger all contributed to their respective failures to fulfill the most fundamental responsibility in banking: to keep track of the money.

36.     The fact that the failure of a startup technology provider left several banks unable to process accounts worth over $250 million, and that millions of dollars remain frozen over four months later (with, on information and belief, many millions apparently unaccounted for) means those banks had major lapses in their risk management.

---

[2] Cease and Desist Order Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, In re Evolve Bancorp, Docket Nos. 24-012-B-HC, 24-012-B-SM (Fed. Rsrv. Sys. June 7, 2024),                                                                                    available                                                                                    at https://www.federalreserve.gov/newsevents/pressreleases/enforcement20240614a.htm.

[3] https://orders.fdic.gov/sfc/servlet.shepherd/document/download/0693d00000BrElHAAV?operationContext=S1

37.     Had the Partner Banks pushed sooner or more forcibly for detailed reconciliations or greater access to Synapse's systems, the Parter Banks would have recognized the scope of the problem. The Partner Banks also could have remedied the problem without freezing users out of access to their funds.

38.     Plaintiffs and Class Members, through their accounts with various FinTechs, deposited money into the Partner Banks which they have been unable to access for months.

39.     Moreover, Plaintiffs and Class Members have now been offered only a small percentage of the funds they deposited with the Partner Banks through the FinTechs back.

40.     On information and belief, the remaining funds of Plaintiffs and Class Members are still in the Partner Banks' hands and the Partner Banks are acting so as to keep said funds despite those funds being Plaintiffs' and Class Members'.

**E.      Class Action Allegations**

41.     Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons residing in the United States who have been denied access to their funds held by Evolve Bank and Trust, AMG National Trust, American Bank, or Lineage Bank, beginning April 22, 2024.

42.     The nationwide Class is collectively referred to as the "Class" and "Class Members." Excluded from the Class are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendants have or had a controlling interest.

43.     Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

44.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at

this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiffs allege that there are in excess of 1,000 members of the Class.

45. **Typicality.** Plaintiffs' claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described herein.

46. **Adequacy of Representation.** Each Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Each Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiffs and their counsel intend to diligently prosecute this action.

47. **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a. Whether Defendants held funds belonging to members of the Class.

    b. Whether Defendants were obligated to return funds to members of the Class.

    c. Whether Defendants converted and/or refused to return funds belonging to members of the Class.

    d. Whether Defendants failed to adequately track, safeguard, and maintain funds belonging to members of the Class.

    e. Whether Plaintiffs and the Class have sustained damages.

    f. Whether Plaintiffs and the Class are entitled to restitution.

    g. Whether injunctive relief is appropriate and necessary.

    h. Whether Defendants' conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

48. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual

litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

**FIRST CAUSE OF ACTION**

**MONEY HAD AND RECEIVED**

**(Against all Defendants)**

49.     Plaintiffs restate the preceding allegations as if set forth herein.

50.     Plaintiffs and the Class each registered accounts on one or more FinTech platforms that contracted with and utilized Synapse's services.

51.     Plaintiffs and the Class each deposited funds at one or more of the Partner Banks through the FinTech platforms.

52.     The Partner Banks had in their possession funds belonging to Plaintiffs and the Class. Plaintiffs and the Class are the owners, and entitled to possession, of their respective funds deposited at the Partner Banks.

53.     The Partner Banks have not returned the funds belonging to Plaintiffs and the Class in full.

54.     The Partner Banks have refused access to the funds belonging to Plaintiffs and the Class.

55.     Accordingly, as more fully set forth above, Defendants had in their possession money which in equity and good conscience belongs to Plaintiffs and proposed Class members. That money should be refunded to Plaintiffs and proposed Class Members.

## SECOND CAUSE OF ACTION

### UNJUST ENRICHMENT

**(Against all Defendants)**

56.     Plaintiffs restate the preceding allegations as if set forth herein.

57.     Plaintiffs and the Class each registered accounts on one or more FinTech platforms that contracted with and utilized Synapse's services.

58.     Plaintiffs and the Class each deposited funds at one or more of the Partner Banks through the FinTech platforms.

59.     The Partner Banks had in their possession funds belonging to Plaintiffs and the Class.

60.     The Partner Banks have not returned the funds belonging to Plaintiffs and the Class in full.

61.     The Partner Banks have been unjustly enriched in retraining the cash deposits belonging to Plaintiffs and the Class.

62.     The Partner Banks have also been unjustly enriched by accruing interest and deriving profits from the unauthorized use of Plaintiffs' and the Class's funds.

63.     The Partner Banks' retention of this money under the circumstances is unjust and inequitable.

64.     As a direct and proximate result of Defendants' misconduct, Plaintiffs and the Class are entitled to restitution and disgorgement in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### NEGLIGENCE

**(Against all Defendants)**

65.     Plaintiffs restate the preceding allegations as if set forth herein.

66.     Plaintiffs and the Partner Banks have a special relationship that gives rise to the Partner Banks' duties to Plaintiffs and Class Members to act reasonably to (a) hold cash deposits for Plaintiffs' and the Class's benefit; (b) allow Plaintiffs and the Class to access their cash deposits on demand and/or with reasonable notice; (c) protect Plaintiffs and the Class from unreasonable interference with their right

and ability to access their funds; and (d) employ commercially adequate practices and procedures regarding the accounting and tracking of such funds.

67. The Partner Banks each breached its duty to Plaintiffs and the Class by failing to maintain and hold cash deposits, failing to accurately account for cash deposits, and denying access to cash deposits without cause.

68. The harms inflicted upon Plaintiffs and Class members were reasonably foreseeable. The Partner Banks were aware that consumers relied upon financial institutions to store and safeguard cash deposits, and provide prompt access to cash deposits.

69. The Partner Banks were also aware that the failure to provide access to cash deposits was likely to result in harm above and beyond the amount of the account balance, including the inability to satisfy other debts and pay for necessities of life.

70. As a direct and proximate result of the Partner Banks' failures described herein, Plaintiffs and the Class have been deprived of their cash deposits, access to cash deposits, accrued interest thereon.

71. Plaintiffs and the Class have also suffered emotional distress, anxiety, and fear upon being notified that their accounts were frozen and cash balances inaccessible and/or misplaced.

72. Plaintiffs, on behalf of themselves and the Class seek, damages and interest thereon in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### CONVERSION

#### (Against all Defendants)

73. Plaintiffs restate the preceding allegations as if set forth herein.

74. Plaintiffs and the Class deposited funds with the Partner Banks.

75. Plaintiffs and the Class owned and had a right to possess the cash funds deposited with the Partner Banks.

76. Plaintiffs and the Class demanded the return of their cash funds deposited with the Partner Banks.

77. Defendants wrongfully refused to return the property deposited by Plaintiffs and the Class upon proper demand. Defendants have refused to return, lost, or wrongfully disposed of the property deposited by Plaintiffs and the Class.

78. Plaintiffs and the Class did not consent to the misconduct described herein.

79. Defendants' misconduct injured Plaintiffs and the Class.

80. The converted funds are specifically identifiable and in a fixed amount.

81. As a result of the foregoing actions of Defendants, Plaintiffs and the Class have been damaged in an amount to be proven at trial. Plaintiffs seek all available remedies including general damages, special damages, punitive damages, injunctive relief, attorneys' fees, and costs.

### FIFTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

### (Against all Defendants)

82. Plaintiffs restate the preceding allegations as if set forth herein.

83. As the custodian of funds, Defendants owed a fiduciary duty to Plaintiffs and the Class to store, maintain, and safeguard their cash deposits. Defendants were obligated to hold cash deposits for the benefit of Plaintiffs and the Class, and would not sell, loan, or otherwise alienate such funds except as instructed by Plaintiffs and the Class.

84. Defendants also owed a fiduciary duty to provide access to cash deposits and return cash deposits upon reasonable demand.

85. Plaintiffs and the Class entrusted the Partner Banks to ensure the safekeeping of their assets and to provide them with access to and control over their accounts and the assets within those accounts.

86. As alleged above, Defendants breached their fiduciary duties to Plaintiffs and the Class. Defendants failed to store, maintain, and safeguard Plaintiffs' and the Class's cash deposits. Defendants failed to employ reasonable measures to verify the accuracy and amount of account balances. Defendants failed to properly account for, provide access to, or timely return these funds.

87.    As a result of the foregoing actions of Defendants, Plaintiffs and the Class have been damaged in an amount to be proven at trial. Plaintiffs seek all available remedies including general damages, special damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION

### ACCOUNTING

### (Against all Defendants)

88.    Plaintiffs restate the preceding allegations as if set forth herein.

89.    Plaintiffs and the Class each registered accounts on one or more FinTech platforms that contracted with and utilized Synapse's services.

90.    Plaintiffs and the Class each deposited funds at one or more of the Partner Banks through the FinTech platforms.

91.    The Partner Banks had in their possession funds belonging to Plaintiffs and the Class.

92.    The Partner Banks have not returned the funds belonging to Plaintiffs and the Class in full.

93.    The Partner Banks have not provided access to the funds belonging to Plaintiffs and the Class.

94.    The Partner Banks have failed to provide an accounting and/or sufficient information and documentation concerning the amount and location of Plaintiffs' and the Class's funds.

95.    Plaintiffs and the Class are entitled to accounting as it pertains to the amount and location of their funds.

96.    A remedy at law is inadequate because, without an accounting, Plaintiffs and the Class are unable to verify the extent of damage incurred as a result of Defendants' wrongdoing.

## SEVENTH CAUSE OF ACTION

### CONSTRUCTIVE TRUST

### (Against all Defendants)

97.    Plaintiffs restate the preceding allegations as if set forth herein.

98.    Plaintiffs and the Class each registered accounts on one or more FinTech platforms that contracted with and utilized Synapse's services.

99.    Plaintiffs and the Class each deposited funds at one or more of the Partner Banks through the FinTech platforms.

100.    The Partner Banks had in their possession funds belonging to Plaintiffs and the Class.

101.    The Partner Banks have not returned the funds belonging to Plaintiffs and the Class in full.

102.    Equity and justice require that the Partner Banks be deemed to hold these funds in constructive trust for Plaintiffs and the Class.

103.    Plaintiffs and the Class are entitled to imposition of a constructive trust upon any accounts held by the Partner Banks which contain funds belonging to Plaintiffs and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully pray for following relief:

a.    Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above, appointment of Plaintiffs as Class representative, and appointment of their counsel as Class counsel;

b.    An award to Plaintiffs and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement;

c.    An injunction ordering Defendants to cease the business practices complained of herein;

d.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

e.    An award of nominal, punitive, and statutory damages where available;

f.    Reasonable expenses and attorneys' fees;

g.    Pre- and post-judgment interest, to the extent allowable; and

h.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the proposed Class, demand a trial by jury for all claims so triable.

Dated:  November 22, 2024

By: /s/  M. Anderson Berry

M. Anderson Berry
aberry@justice4you.com
Gregory Haroutunian
gharoutunian@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Tel: 916.239.4778

Gary M. Klinger
gklinger@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878

Alexander E. Wolf*
awolf@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: 872.365.7060

J. Gerard Stranch, IV*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
Tel: 615-254-8801
gstranch@stranchlaw.com

Attorneys for Plaintiffs

*Pro Hac Vice* forthcoming