**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-03259-DDD-NRN

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, and KAYLA MORRIS, individually and on behalf of all similarly situated persons,

Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank; EVOLVE BANCORP, INC., an Arkansas limited liability company; AMG NATIONAL TRUST, a Colorado bank; LINEAGE BANK, a Tennessee bank; and AMERICAN BANK, INC., an Iowa bank.

Defendants.

---

**DEFENDANT EVOLVE BANK & TRUST AND SPECIALLY APPEARING EVOLVE BANCORP, INC.'S OPPOSITION TO AMERICAN BANK, N.A.'S MOTION TO STAY DISCOVERY AND DISCLOSURES**

---

Defendant Evolve Bank & Trust ("Evolve") and Specially Appearing Evolve Bancorp, Inc. ("Bancorp")[1] submit this opposition to Defendant American Bank, N.A.'s ("American") Motion to Stay Discovery and Disclosures (ECF No. 70).

## BACKGROUND

This matter arises from the mismanagement, failure, and eventual bankruptcy of a financial intermediary called Synapse Financial Technologies, Inc. ("Synapse") which positioned itself as a

---

[1] By joining this opposition, Evolve Bancorp, Inc. is making a special appearance and in no way concedes jurisdiction and expressly reserves and preserves all rights and defenses thereto.

middleman between: (a) various financial technology companies ("fintechs") that use technology to give consumers access to financial services (e.g., mobile payments, savings accounts); and (b) FDIC-insured banks like Evolve. (*See* ECF 28 ¶¶ 1-2 ("Am. Compl.").)[2] That is because fintechs do not themselves provide banking services; they merely provide the front-end technology to give users increased access to financial services while the actual licensed and chartered banks provide the actual banking services. (*Id.* ¶¶ 19-20.) Here, customers like Plaintiffs (sometimes also referred to as "end users") signed up for accounts with fintechs that partnered with Synapse. (*Id.* ¶ 20.) Synapse, in turn, established relationships with several FDIC-insured banks, including Evolve and the co-defendant banks—AMG National Trust ("AMG"), Lineage Bank ("Lineage"), and American—eventually creating a bank "ecosystem" that held fintech customer funds. (*Id.* ¶¶ 22-24.) Synapse spread out the funds of any given fintech end user across various banks within Synapse's ecosystem and tracked how much of each customer's funds were held at each bank, either directly or through a "cash management program" at its subsidiary broker dealer, Synapse Brokerage LLC, all of which would equate to a total balance in the customer's front-facing fintech account. (*Id.*) Or, at least that is how it was supposed to work. But Synapse failed at its job, and ultimately filed for bankruptcy on April 22, 2024 and is currently in Chapter 11 proceedings. (*Id.* ¶ 25.)

Shortly thereafter, Evolve and the co-defendant banks suddenly lost access to Synapse's "dashboard," which was supposed to provide up-to-date information on customer accounts and

---

[2] Plaintiffs filed their initial Complaint on November 22, 2024, (ECF No. 1), and amended that Complaint on December 31, 2024 (ECF No. 28). Four additional putative class action lawsuits were subsequently filed in this District, and this Court consolidated those actions with this one on March 5, 2025. (*See* ECF No. 69.) Plaintiffs have been ordered to file a Consolidated Amended Complaint on April 4, 2025; however, because the operative complaint at the time of the filing of this opposition is Plaintiffs' Amended Complaint (ECF No. 28), Evolve cites that complaint throughout this response for the allegations at issue.

balances. Consequently, Evolve froze all Synapse-related accounts until it could determine the correct balance of each, a decision that was justified following filings by the bankruptcy trustee who declared that Synapse was grossly mismanaged. Evolve has since worked to reconcile massive amounts of data to reconstruct accurate end user balances and to determine where their funds are. (*Id.* ¶¶ 26-28.) That effort is ongoing and necessitates information and data from the co-defendant banks in this action.

Plaintiffs in this now consolidated putative class action bring claims against Evolve, AMG, Lineage, and American due to their inability to access funds purportedly held within the Synapse ecosystem. (*Id.* at ¶ 25.) On February 7, 2025, Evolve served requests for production and interrogatories on each of the co-defendant banks in this action, including American. After AMG moved unopposed to consolidate this and the four related cases pending in this District, (ECF No. 53), this Court consolidated all five cases under the caption of this action on March 5, 2025 (ECF No. 69.) American's written responses and objections to Evolve were due on March 10, 2025; Evolve received none. Instead, on March 11, 2025, American filed the instant motion "pending resolution of" its "forthcoming motion to dismiss" for lack of personal jurisdiction. (*See* ECF No. 70). Given American's objection to discovery as a party to this action, Evolve also served a Rule 45 Subpoena for the production of documents on American on March 14, 2025. On March 28, 2025, American served objections to Evolve's document subpoena.

## LEGAL STANDARD

No Federal Rule of Civil Procedure expressly provides for a stay of proceedings, and, as recognized by this Court, such motions are generally disfavored. *See* Uniform Civ. Prac. Stnds. of U.S. Magistrate Judges, § V, ¶ 8. Instead, this Court's power to stay discovery stems from its inherent power to "control the disposition of" the cases before it. *Advanced Exterior, Inc. v. Liberty*

*Mutual Group, Inc.*, 568 F. Supp. 3d 1144, 1146 (D. Colo. 2021). Thus, "[w]hether to stay discovery is a matter left to the sound discretion of the trial court." *Id.* (citing *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990)). At bottom, "Courts in this District generally disfavor the stay of all discovery . . . but such a stay may be appropriate pending the resolution of a Motion to Dismiss impacting immunity or jurisdictional issues." *Id.* (citations omitted).

Courts in this district typically consider the following factors when deciding whether a stay is appropriate: (1) the interest of the plaintiff (or other parties to the proceeding) in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff of a delay; (2) the burden on the party opposing discovery; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See id.* (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006); *see also Certain Underwriters at Lloyds, London v. Hartford Accident & Indemnity Co.*, No. 18-cv-01896, 2021 WL 5810712, at * 3 (D. Colo. Dec. 6, 2021) [hereinafter *Hartford*] (dubbing these the "*String Cheese* factors").

## ARGUMENT

Despite American's arguments to the contrary, at least four of the five *String Cheese* factor weighs against a stay of discovery. This Court should therefore deny American's motion. Taking each factor in turn, Evolve explains why below.

### I. The Interest of the Parties to this Action

The Court must first consider the interests of the parties to this action. *See Hartford*, 2021 WL 5810712, at *3. American concedes that Plaintiffs "have an interest in proceeding expeditiously" with their case. (*See* ECF No. 70 at 12.) Evolve agrees. But this factor requires the Court to consider the interests of *all* parties to this action, not just that of Plaintiffs. *See*

*Hartford*, 2021 WL 5810712, at *3 (considering, under this factor, the interests of both the plaintiffs and the non-movant defendants).

Evolve, Plaintiffs, and the other co-defendant banks "undoubtedly have an interest in proceeding expeditiously in this matter." *Id.* (omitting alteration and quoting *Sanchez v. City & Cnty. of Denver*, No. 19-cv-02437, 2020 WL 924607, at *5 (D. Colo. Feb. 26, 2020)). Courts in this district have recognized that staying the progression of a case, including discovery, pending the resolution of a motion to dismiss can "substantially delay the ultimate resolution of the matter, with injurious consequences." *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007). The risk of substantial delay and injurious consequences is therefore even greater here, where American has not yet moved this Court to dismiss or set forth any evidence that such dismissal would be proper. (*See* ECF No. 70 at 12 (arguing that the burden on Plaintiffs is light because they can "proceed with discovery once the forthcoming motion to dismiss is resolved").)

What is more, Evolve requested documents and information from American nearly two months ago. Evolve not only requires the requested information to defend itself from Plaintiffs' claims, but also to resolve the determine the answer to the question at the heart of this action: Where are end user funds located? Not only do all of the parties to this action require this information and data from each of the co-defendant banks to conduct an accounting of the location of funds within the Synapse ecosystem, but resolution of the dispute is impossible without it.

Indeed, American has refused to comply with any discovery request propounded by Evolve based on the resolution of a motion it has not yet made. This has only allowed time to pass, damaging Evolve's ability to prepare its defense and risking, among other things, documents in

American's control becoming "lost or inadvertently destroyed." *Wells v. Dish Network, LLC*, No. 11-cv-00269, 2011 WL 2516390, at *1 (D. Colo. June 22, 2011).

Staying discovery would continue to prejudice all parties to this action. Ultimately, "[a]ll claimants, no matter the relief they seek, have an interest in the speedy resolution of their claims, and further delay may result in prejudice to the claimants here." *See Hartford*, 2021 WL 5810712, at *4. The first *String Cheese* factor thus weighs against a stay of discovery.

## II. The Burden on American

The Court must next consider the burden on American if discovery continues. American advances two main arguments under this factor. First, American contends that, as an Iowa bank, it would face a heavy burden if required to comply with discovery requests from a Colorado court that allegedly lacks personal jurisdiction over it. (ECF No. 70 at 8-10.) Second, American argues that it will be burdened by the voluminous discovery this case will entail. (*Id.* at 10-11.)

These arguments miss the mark. True enough, "[t]his Court has recognized that the burden on a defendant is high where personal jurisdiction over that defendant is in question." *Lumen Techs. Serv. Grp., LLC v. CEC Grp. LLC*, No. 23-cv-00253, 2023 WL 5747615, at *2 (D. Colo. July 20, 2023) [hereinafter *Lumen*]. But American has not placed this Court's jurisdiction over it in question yet—its motion to dismiss based on personal jurisdiction is apparently "forthcoming." (ECF No. 70 at 9.) Moreover, American concedes that this "Court need not pre-judge that motion," and characterizes its discussion of personal jurisdiction as "background information" that it includes merely "to provide the Court with an understanding of its *bona fide* grounds for such motion." (*Id.* at 10.) With no motion to dismiss currently pending, American's arguments are unavailing.

Even assuming *arguendo* that this Court dismisses American for lack of personal jurisdiction at some point in the future, American still will not face an undue burden. *See Webb v. Brandon Express Inc.*, No. 09-cv-00792, 2009 WL 4061827, at *2 (D. Colo. Nov. 20, 2009) ("Parties always are burdened by discovery and the other requirements for the preparation of a case.") American's role in this matter will be litigated. The only question is whether that will happen before this Court or another venue. Indeed, Magistrate Judge Neureiter in the February 18, 2025 hearing in this case noted that even if a bank were dismissed from this case, the bank could wind up back before this Court in the following exchange with Lineage's counsel:

> The Court: And so if [Judge Domenico] doesn't [have jurisdiction], though, then presumably the plaintiffs file suit in Tennessee and then somebody decides to multi-district, right?
>
> Mr. Anderson [Counsel for Lineage]: That certainly is an option and could result, yeah.
>
> The Court: All right. And maybe you end up back here if they decide to side with Judge Domenico, right.
>
> Mr. Anderson: May wind up back here anyway.

(Transcript of the 2/18/2025 Hearing at 8:2-9, attached hereto as Exhibit 1). Whether in this Court, or in another forum, American will have to litigate its participation as a bank in the Synapse eco-system and will have to cooperate with the discovery that results from that inquiry.

Even more to the point, Evolve seeks documents from American that are discoverable and will be sought regardless of American's status as a party to this action under the Federal Rules. *See* Fed. R. Civ. P. 34, 45. Because the discovery American seeks to stay would be the same regardless of its status as a party to this action, "[t]here is no special burden here." *See Webb*, 2009 WL 4061827, at *2 (finding that there was no "special burden" on a party who faced the standard "consequence[s] of our judicial system and the rules of civil procedure"). And this Court should

not tolerate what amounts to systematic delay and avoidance of proportional and appropriate discovery that is essential to resolving the claims in this case.

This District's decision in *Hartford* offers a helpful example. In that case, the plaintiff sued several insurance companies—Hartford, Travelers, and Holcim—in state court. *Hartford*, 2021 WL 5810712, at *1. After the defendants removed the case to federal court, Travelers and Hartford asserted crossclaims against Plaintiff and Holcim. *See id.* By early June 2021, the only claims that remained against Holcim were the crossclaims raised by Travelers and Hartford. *Id.* Holcim, around the same time, also notified the court that it filed a declaratory judgment action in Washington state court against Plaintiff, Travelers, and Hartford. *Id.* A few months later, Holcim moved to dismiss the crossclaims against it, arguing that the court lacked subject matter jurisdiction. *Id.* at *2. Later that same day, Holcim moved to "stay all discovery in [the] case pending the resolution of" its motion to dismiss. *Id.* The plaintiff, Travelers, and Hartford "jointly responded in opposition to" Holcim's motion to stay discovery. *Id.*

The *Hartford* court found that a stay was not warranted under the *String Cheese* factors. As to the second factor, the court rejected Holcim's argument that it would have been unduly burdened "if required to proceed with discovery . . . because there [was] a possibility that the court [would] ultimately conclude that it lacks subject matter jurisdiction over the crossclaims." *Id.* at *4. The plaintiff, Travelers, and Hartford countered by arguing that Holcim would "not suffer any prejudice by participating in discovery in this case because regardless, this issue will be litigated; the only question is whether the litigation will take place in this case or in the State Court Action." *Id.* After noting that "[t]he ordinary burdens associated with litigating a case do not constitute undue burdens," the court explained that "the basis of a pending dispositive motion is not in and of itself determinative of whether a stay is warranted." *Id.* (citation omitted). Because the court agreed

"that Holcim will be required to participate in discovery related to the State Court Action," it found that "any additional burden associated with also being asked question as to the claims in" the federal case "would be minimal." *Id.* (citation omitted).

*Lumen*, cited by American in support of a stay, reached a different conclusion. That case involved a third-party defendant, Paul J. Ford & Company or "Ford," who moved to stay discovery after filing a motion to dismiss for lack of personal jurisdiction. *Lumen,* 2023 WL 5747615, at *1. The *Lumen* plaintiff argued that staying discovery did not reduce the burden on Ford because the *Lumen* defendant was "likely to sue Ford in another jurisdiction." *Id.* at *2. The court disagreed, noting that "the rules surrounding subpoenas to non-parties" under Rule 45 "are different from discovery obligations" on parties under Rules 26, 33, 34, and 36. *Id.* Because the discovery obligations on parties under the Rules "would be far more burdensome on Ford than if" the *Lumen* plaintiff "eventually serve[d] a subpoena" under Rule 45, the court found that the second *String Cheese* factor weighed in favor of granting a stay. *See id.*

The burden on American here is more like the burden on the *Hartford* movant than that of the *Lumen* movant. Like the movant in *Hartford* who faced the same discovery-related burden regardless of the court's decision on a pending motion to dismiss, American faces the same burden whether it remains a party to this action or not. *Cf. Hartford*, 2023 WL 5747615, at *4. This is because Evolves' requests of American are the same whether propounded under Rule 34 or Rule 45. And so, American is unlike the movant in *Lumen* that faced a discovery-related burden appropriate only for parties while personal jurisdiction over that party was in question. *Cf. Lumen*, 2023 WL 5747615, at *2. Moreover, even if American were to be dismissed from this case, that will undoubtedly result in a new class action lawsuit against American in Iowa followed by a move

to create a multi-district litigation. There is no way to finally and fully resolve the claims brought by Plaintiffs in this case without discovery from all four co-defendant banks.

The second *String Cheese* factor therefore weighs against a stay. *See Hartford*, 2023 WL 5747615, at *4; *accord Classic Aviation Holdings LLC v. Harrower*, No. 2:20-cv-00824, 2021 WL 633587, at *3 (D. Utah Feb. 18, 2021) (denying a request to stay discovery when the movant failed to explain "what discovery requests may be out of scope, impermissible, or burdensome depending on how the Motion to Dismiss is decided").

## III. The Convenience to this Court

The third *String Cheese* factor also weighs against a stay. Lingering cases are more difficult for courts to manage. *Hartford*, 2021 WL 5810712, at *5 (citation omitted). "In addition, motions to dismiss are denied more often than they result in the termination of a case[,]" so "it more likely than not from a statistical point of view that a delay pending a ruling on [a] motion to dismiss would prove unnecessary." *Chavez*, 2007 WL 683973, at *2. And from a statistical standpoint here, delay is certainly unnecessary because there is no pending motion to dismiss. Because "a stay would negatively impact the efficient management of this court's docket" and American has offered no reason why one might be necessary, factor three suggests that this Court should allow discovery to proceed. *See Hartford*, 2021 WL 5810712, at *5.

## IV. The Interests of Non-Parties

American argues that the fourth *String Cheese* factor weighs in favor of a stay. Again, Evolve disagrees. While the co-defendant banks have designated a number of non-parties at fault in this action, American "does not identify any specific non-parties who may be affected by a stay in this matter." *See Hartford*, 2021 WL 5810712, at *5. Nor does American explain "to what extent the interests of nonparties will be impacted by discovery in this matter[.]" *Genscape, Inc.*

*v. Live Power Intel. Co. NA, LLC*, No. 18-cv-02525, 2019 WL 78933, at *3 (D. Colo. Jan. 2, 2019). Under such circumstances, courts in this District have concluded that this factor is neutral. *See id.*; *Hartford*, 2021 WL 5810712, at *5. This court should find the same.

**V. The Public's Interest**

The final *String Cheese* factor also weighs against a stay. There is no doubt that the public has an interest in this Court not wasting its judicial resources. *See Hartford*, 2021 WL 5810712, at *5. But American has provided no proof that proceeding with discovery here risks wasting such resources, especially when it has not yet moved this Court for its dismissal from the case. As explained above, the same judicial resources will be expended even if American is dismissed from this action. Because "the public also has a strong interest" in "the prompt and efficient handling of all litigation," and "considerations of fairness and timeliness will not be advanced by" a stay, this factor weighs against granting American's motion. *See id.* (cleaned up and omitting quotations).

## CONCLUSION

No *String Cheese* factor weighs in favor of a stay. In fact, four out of the five factors weigh against it. Accordingly, there is no reason for this Court "to depart from well-settled authority in this District that disfavors stays." *See Hartford*, 2021 WL 5810712, at *6. Evolve therefore respectfully requests that this Court deny American's Motion to Stay Discovery and Disclosures.

Respectfully submitted this 1st day of April, 2025.

Aravind Swaminathan
aswaminathan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel: 206-839-4300
Fax: 206-839-4301

*/s/ Daniel W. Van Horn*
David G. Mayhan
David.Mayhan@butlersnow.com
Sarah Smyth O'Brien
Sarah.Obrien@butlersnow.com
BUTLER SNOW LLP
1801 California Street, Suite 5100
Denver, Colorado 80202

Tel: 720-330-2300

Marc R. Shapiro
mrshapiro@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: 212-506 3546
Fax: 212-506-5151

Diana S. Fassbender
dszego@orrick.com
Amisha R. Patel
apatel@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037-3202
Tel: 202-339-8400
Fax: 202-339-8500

Daniel W. Van Horn
Danny.VanHorn@butlersnow.com
BUTLER SNOW LLP
6075 Poplar Ave #500
Memphis, TN 38119
Tel: 901-680-7331
Fax: 901-680-7201

*Attorneys for Defendant Evolve Bank & Trust and Specially Appearing Evolve Bancorp, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2025, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Daniel W. Van Horn*

[Original signature on file at the Offices of Butler Snow LLP]

92973861.v1