# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Lead Case No.: 1:24-cv-03259-DDD-NRN

*Consolidated with* Case Nos. 1:24-cv-03261-SBP; 1:24-cv-03262-SBP, 1:24-cv-03509-NRN; and 1:25-cv-00075-KAS

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, KAYLA MORRIS, TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD, DANIEL BREWER, PAUL TONNER, CORY ESPINOLA, STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD TODD HALE, AND ALFRED ROTIMI, individually and on behalf of all similarly situated persons,

       Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank;
AMG NATIONAL TRUST BANK, a Colorado bank;
LINEAGE BANK, a Tennessee bank,

       Defendants.

---

## AMG NATIONAL TRUST BANK'S MOTION TO DISMISS EVOLVE BANK & TRUST'S CROSS-CLAIMS UNDER RULES 12(b)(1) AND 12(b)(6)

---

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION.............................................................................................................. 1

FACTUAL ALLEGATIONS............................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.      EVOLVE LACKS STANDING TO BRING CLAIMS AGAINST AMG. ....................... 4

II.     EVOLVE FAILS TO STATE ANY CLAIM AGAINST AMG. ..................................... 6

      A.      Evolve Fails to State a Conversion Claim Against AMG. ..................................... 7

      B.      Evolve Fails to State a Claim for Unjust Enrichment Against AMG. ................... 9

      C.      Evolve Fails to State a Claim for Money Had and Received Against AMG. .......... 9

      D.      Evolve Fails to State a Claim for Accounting Against AMG............................... 10

      E.      Evolve Cannot State a Cross-Claim for Contribution. .........................................11

CONCLUSION................................................................................................................ 12

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AE, Inc. v. Goodyear Tire & Rubber Co.*,
168 P.3d 507 (Colo. 2007) ..................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 6-7

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ............................................................................... 9

*City of San Diego v. Monsanto Co.*,
334 F. Supp. 3d 1072 (S.D. Cal. 2018) ................................................................. 6

*COPE v. Kansas State Bd. of Educ.*,
821 F.3d 1215 (10th Cir. 2016) ......................................................................... 4, 5

*Escobar, Inc. v. Barwest Grp., LLC*,
No. 20-cv-02771-PAB-STV,
2021 WL 4319572 (D. Colo. Sept. 22, 2021) ..................................................... 10

*Estate of Bogue v. Adams*,
405 F. Supp. 3d 929 (D. Colo. 2019) ..................................................................11

*Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*,
680 P.2d 1315 (Colo. App. 1984) ..................................................................... 5, 7

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
863 F. Supp. 2d 1066 (D. Colo. 2012) ............................................................. 7, 8

*LB Rose Ranch, LLC, v. Hansen Constr., Inc.*,
477 P.3d 739 (Colo. App. 2019) ........................................................................ 12

*Lewis v. Lewis*,
189 P.3d 1134 (Colo. 2008) ................................................................................. 5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 4, 6

*McAnulty v. Standard Ins. Co.*,
  81 F.4th 1091 (10th Cir. 2023) ..................................................................................9

*McAuliffe v. Vail Corp.*,
  69 F.4th 1130 (10th Cir. 2023) ..................................................................................9

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ........................................................................................... 4, 5

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...................................................................................................4

**STATUTES**

Colo. Rev. Stat. § 13-50.5-102(1) ................................................................................11

Colo. Rev. Stat. § 13-50.5-102(2) ......................................................................... 11, 12

Colo. Rev. Stat. § 13-50.5-104(4) ................................................................................11

**OTHER AUTHORITIES**

1 Dan B. Dobbs,
  *Law of Remedies* § 4.2(2) (3d ed. 2017) ...................................................................9

1 Dan B. Dobbs,
  *Law of Remedies* § 4.3(5) (3d ed. 2017)............................................................ 10, 11

**INTRODUCTION**

Two of three co-defendant banks in this litigation, AMG National Trust Bank ("AMG") and Lineage Bank ("Lineage"), tell the same story. They held money in "For Benefit Of"(or "FBO") deposit accounts owned by their customer Synapse Brokerage, LLC ("Synapse Brokerage") or Synapse Financial Technologies, Inc. ("Synapse") for the benefit of their customers, who were various Financial Technology ("FinTech") platforms. AMG and Lineage distributed the money they held to Synapse end users in accordance with Synapse's or Synapse Brokerage's instructions. The other co-defendant, Evolve Bank & Trust ("Evolve"), refused to return the money it held to the end users, which has led to this litigation.[1]

Evolve now brings cross-claims against AMG alleging that AMG paid end users the wrong amounts. According to Evolve, this somehow means that AMG is wrongfully holding ***Evolve's*** money, even though Evolve admits (1) the money AMG held and distributed belonged to end users, not Evolve, and (2) AMG distributed essentially all the funds in its possession.

Evolve's Cross-Claims are nothing more than dilatory posturing, and they must be dismissed for several reasons. First, and most obviously, Evolve cannot plausibly plead that it suffered any injury-in-fact because it never alleges that AMG ever held ***Evolve's*** money. Nor could it—AMG held money ultimately belonging to individual end users, not to Evolve. Second, regardless of who owns the funds, Evolve also fails to allege that AMG has ***retained*** any of the

---

[1] AMG has already filed a Motion for Summary Judgment on Plaintiffs' claims, given no Plaintiffs allege that AMG held any of their money, and the evidence is undisputed that AMG has distributed more than 99.7% of the money it did hold for Synapse Brokerage to individual end users. (ECF No. 123.) AMG held no money for Synapse.

1

money from its Synapse Brokerage account. Instead, Evolve affirmatively alleges that AMG distributed that money to end users, which means Evolve cannot plausibly allege another substantive element of its claims—that AMG is unjustly retaining any benefit for itself. Finally, Evolve's contribution claim is contrary to Colorado law. Because there is no final judgment (or settlement) where Evolve has agreed to discharge any alleged common liability, Evolve cannot state a claim for contribution.

Evolve's Cross-Claims should be dismissed in their entirety and with prejudice.

## FACTUAL ALLEGATIONS

According to its Cross-Claims, Evolve contracted with Synapse to provide banking services to certain end users of various FinTechs. (Cross-Claim ¶ 7, ECF No. 132.) In doing so, Evolve held FinTech and end user funds, collectively, in FBO deposit accounts, and Synapse acted as an intermediary between Evolve and the FinTechs, allegedly responsible for communicating payment instructions and "tracking the movement and location of end user funds." (*Id.* ¶¶ 8–9.) Evolve does not allege that it held any funds belonging to *Evolve* in these accounts. Instead, Evolve repeatedly alleges that it held only FinTech and end user funds in FBO deposit accounts—that is, it held funds for the benefit of end users. (*Id.* ¶¶ 9, 17.) So too with AMG: AMG held funds in a Synapse Brokerage account for the benefit of Synapse Brokerage's customers. (*Id.* ¶¶ 13, 15–16.) Evolve also does not allege that Evolve had any deposit accounts at AMG, that AMG provided Evolve with any banking or other services, or that Evolve had any relationship (contractual, fiduciary, or otherwise) with AMG.

Evolve alleges it froze all account activity for end users after Synapse filed for Chapter 11 bankruptcy in April 2024, which resulted in those end users losing access to their funds. (*Id.* ¶¶ 18–20.) According to Evolve, Synapse "failed in its responsibilities to keep current and accurate records" and failed to "review and reconcile" the deposit ledger it maintained for Evolve. (*Id.* ¶ 22.) And because Synapse allegedly did not keep current and accurate records, Evolve claims that Synapse's deposit ledger for Evolve contained "material irregularities and inconsistencies," which "created a ripple effect" on Synapse's ledgers for the other banks, meaning those ledgers must be wrong, too. (*Id.* ¶¶ 22–23.) As a result, Evolve alleges that any distribution made by any bank to any end user "would necessarily be incorrect and unreliable." (*Id.* ¶ 30.) Accordingly, based only "[u]pon information and belief," Evolve asserts that AMG "paid less than the total amount … that it properly owes because it improperly relied on the inaccurate Synapse ledgers." (*Id.* ¶ 31.)

Based on these allegations, Evolve brings five cross-claims against AMG: (1) conversion, (2) money had and received, (3) unjust enrichment, (4) accounting, and (5) contribution.

## ARGUMENT

Evolve's Cross-Claims against AMG fail for two fundamental reasons. First, Evolve does not have Article III standing to bring them because it cannot plausibly plead an injury-in-fact relating to funds belonging to ***Evolve***, and Evolve includes no plausible allegations that AMG held funds belonging to Evolve. Second, even if Evolve had standing to recover damages to which it has no legal entitlement, Evolve fails to state claims against AMG.

3

I.    **EVOLVE LACKS STANDING TO BRING CLAIMS AGAINST AMG.**

Federal courts are courts of limited subject-matter jurisdiction. To properly invoke that jurisdiction, a plaintiff must plausibly allege standing—that is, a plaintiff must plausibly allege facts establishing that there is an actual "case or controversy under Article III" and that the plaintiff has a "personal stake" in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To do so, the "plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Standing allegations, like all allegations, must be "plausible." *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016). Here, Evolve cannot plausibly allege injury.

***First***, Evolve's Cross-Claims are devoid of plausible allegations showing that ***Evolve*** allegedly suffered any Article III injury. *See TransUnion*, 594 U.S. at 423; *Spokeo v. Robins*, 578 U.S. 330, 339 (2016). To constitute an Article III injury, an alleged injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. Put differently, a plaintiff cannot establish standing based on harms to others. *Id.*

Here, all of Evolve's Cross-Claims stem from allegations that AMG improperly paid out funds belonging to individual ***end users***. Evolve never alleges that Evolve had a legal entitlement to the funds at issue, or that AMG held and distributed money belonging to Evolve—only that AMG held and distributed money to end users based on Synapse records that Evolve alleges are incorrect. (Cross-Claim ¶ 31.) But if AMG paid end users incorrect amounts, it would be certain end users who have allegedly suffered an injury-in-fact under Article III, not Evolve. Indeed, Evolve's own

4

allegations confirm that all the money Evolve transferred to AMG belonged to **end users** and not to Evolve. (Cross-Claim ¶¶ 9, 11, 13–15; *see also id.* ¶¶ 30–31 (alleging that AMG has "returned funds to Synapse Brokerage End Users based on the ledgers provided by Synapse"). Accordingly, Evolve does not have standing to assert claims because Evolve cannot plausibly allege an injury with respect to the funds at issue. *See Spokeo*, 578 U.S. at 339 (a plaintiff only has standing if the injury alleged "affect[s] the plaintiff in a personal and individual way").

In an apparent effort to avoid this outcome, Evolve offers only the conclusory and oft-repeated allegation that AMG somehow has in its possession "funds owed to Evolve." (Cross-Claim ¶¶ 49, 59–62, 72, 82–84, 91.) But this allegation is expressly contradicted by Evolve's other factual allegations, which all clearly state that the money Evolve transferred to AMG belonged to **end users** and not to Evolve. (*Id.* ¶¶ 9, 11, 13–15.) Evolve's conclusory and implausible allegation that AMG owed Evolve funds does not save its claims. *See COPE*, 821 F.3d at 1221 ("conclusory statements[] do not suffice" to state a plausible claim of injury).

**Second**, Evolve also alleges that it suffered "reputational injury" because "a number of Synapse Brokerage End Users have sought return of their funds from Evolve," and Evolve has suffered injury in the form of defense costs. (Cross-Claim ¶ 37.) These aren't sufficient Article III injuries, either. There is no basis to sue for "reputational injury" for the claims Evolve purports to bring against AMG, and Evolve cannot use costs expended to defend itself in litigation to satisfy the injury-in-fact requirement. *See, e.g.*, *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984) ("The measure of damages for conversion is generally the value of the converted property."); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) ("The proper remedy

upon a finding of unjust enrichment is" either "the return of something which [the injured party] formerly had or … the receipt of its monetary equivalent."); *City of San Diego v. Monsanto Co.*, 334 F. Supp. 3d 1072, 1086–87 (S.D. Cal. 2018) ("Litigation costs are insufficient to establish standing for purposes of Article III.").

And even if these injuries were sufficient for Article III purposes (and they are not), Evolve cannot plausibly plead the necessary "causal connection" to satisfy Article III. *See Lujan*, 504 U.S. at 560 (to satisfy Article III, a plaintiff must plausibly allege that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" (cleaned up)). The injuries Evolve alleges—diminished reputation and having to spend money to defend claims—are not "fairly traceable" to AMG's actions. Most directly, they are the consequence of the actions of end users who sought money from their bank (Evolve) and were denied, leading to end user complaints and, ultimately, some of them filing this lawsuit. (Cross-Claim ¶¶ 7, 17 (recognizing that Evolve provided banking services to end users); *id.* ¶ 37 (discussing end users' claims against Evolve).)

Because Evolve lacks Article III standing to bring claims against AMG, Evolve's Cross-Claims must be dismissed.

## II.    EVOLVE FAILS TO STATE ANY CLAIM AGAINST AMG.

Even if Evolve could establish Article III standing, the Court must dismiss Evolve's Cross-Claims because Evolve fails to plausibly allege critical elements of them. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. It requires that a plaintiff plead sufficient "factual content," not mere conclusions, that supports a reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 678, 682. Here, Evolve brings four cross-claims against AMG—conversion, money-had-and-received, unjust enrichment, and accounting—which all require plausible allegations that AMG held money belonging to *Evolve*, which Evolve has not done and cannot do. And Evolve's claim for contribution fails because Evolve cannot bring such a claim under Colorado law until there has been a judgment or settlement discharging the common liability.

### A.    Evolve Fails to State a Conversion Claim Against AMG.

Under Colorado law, conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Glenn Arms Assocs.*, 680 P.2d at 1317.[2] To plead conversion, a plaintiff must allege that (1) "a defendant exercised dominion or control over property;" (2) the property in question "belonged to" the plaintiff; (3) "the defendant's exercise of control was unauthorized;" (4) the plaintiff "demanded return of the property"; and (5) "the defendant refused to return it." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012) (citation omitted). Evolve fails to plausibly allege any of those five elements.

---

[2] In Colorado, courts apply the law of the state with the most significant relationship to the claims, and that inquiry generally turns on the place of the alleged injury, the domicile of the parties, and the center of the parties' relationship, if any. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509–10 (Colo. 2007). Here, AMG is a Colorado resident, Evolve is an Arkansas resident, and Evolve's claims allege that AMG is improperly holding money in Colorado. Accordingly, the place of the alleged injury, the domicile of AMG, and the center of the parties' relationship all point to Colorado law as applicable.

7

First, Evolve never alleges that AMG is now "exercis[ing] dominion or control over property." *Id.* To the contrary, Evolve alleges that, after Synapse declared bankruptcy, AMG distributed the funds it was holding to end users "based on the ledgers provided by Synapse." (Cross-Claim ¶ 30.)

Second, the property in question does not belong to Evolve—Evolve repeatedly refers to the funds it held as "End User funds." (Cross-Claim ¶ 9; *see also id.* ¶¶ 15, 17.) Evolve never alleges that the funds it transferred to other banks to be deposited into Synapse Brokerage accounts were ***Evolve's*** funds. (*See id.* ¶¶ 13–16.) Accordingly, because Evolve has not alleged and cannot plausibly allege the property in question belonged to it, it fails to state a conversion claim.

Third, Evolve never plausibly alleges that AMG's control over the money it did hold "was unauthorized." *L-3 Commc'ns Corp.*, 863 F. Supp. 2d at 1081. Rather, Evolve alleges that Evolve transferred end users' funds on Synapse's instruction to Synapse Brokerage's accounts at other banks, including AMG. (Cross-Claim ¶¶ 15–16.) Accordingly, AMG's receipt of the money was expressly "authorized" by Synapse Brokerage (the sender and account owner) and, apparently, by Evolve—or else it would not have transferred the funds.

Finally, although Evolve alleges that AMG's distributions to end users were "incorrect and unauthorized because they were made in reliance on the inaccurate Synapse ledgers" (*id.* ¶ 67), it never alleges that Evolve demanded the return of any money from AMG or that AMG refused to return it.

Evolve's Cross-Claim for conversion must be dismissed.

**B.    Evolve Fails to State a Claim for Unjust Enrichment Against AMG.**

To state a claim for unjust enrichment, a plaintiff must plausibly allege the receipt and unjust retention of a benefit by the defendant at the expense of the plaintiff. *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1107 (10th Cir. 2023). Here, Evolve doesn't allege either element.

First, as explained above, Evolve does not allege AMG received a benefit at Evolve's expense. In fact, AMG received nothing at Evolve's expense because, as Evolve alleges, the money sent to Synapse Brokerage's accounts at AMG was not Evolve's money to begin with. (*See supra* Argument § II.A; *see also* Cross-Claim ¶¶ 9, 15, 17.)

Second, Evolve does not allege that AMG is "unjustly retaining" any benefit. To the contrary, Evolve alleges that AMG has "returned funds to Synapse Brokerage end users based on the ledgers provided by Synapse." (Cross-Claim ¶ 30.) Evolve may disagree with how AMG distributed funds, but Evolve cannot plausibly allege that AMG is unjustly retaining any funds for its own benefit, especially when Evolve's allegations are precisely to the contrary. (*Id.*)

Evolve's Cross-Claim for unjust enrichment must be dismissed.

**C.    Evolve Fails to State a Claim for Money Had and Received Against AMG.**

Evolve also brings a claim for "money had and received," which is not a claim but a remedy in the "form of restitution that applies when … unjust enrichment occurred." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (citation omitted); *see also* 1 Dan B. Dobbs, *Law of Remedies* § 4.2(2) (3d ed. 2017) (describing "money had and received" as a "subordinate category" of unjust enrichment or a quasi-contract "fact pattern"); *see also McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1154 (10th Cir. 2023) (listing elements materially identical to an unjust enrichment

claim). Accordingly, for the same reasons Evolve fails to state an unjust enrichment claim, Evolve also fails to state a claim for money had and received because (1) Evolve does not (and cannot) allege that AMG received any money belonging to Evolve, and (2) Evolve does not (and cannot) allege that AMG has money that in equity and good conscience AMG ought to pay to Evolve. (Cross-Claim ¶ 30.)

Evolve's Cross-Claim for money had and received must be dismissed.

**D.    Evolve Fails to State a Claim for Accounting Against AMG.**

Evolve also purports to bring a claim for an accounting, which also is not a claim but an equitable remedy for unjust enrichment. Dobbs, *Law of Remedies* § 4.3(5) (summarizing three "theories" of accounting, only one of which retains utility in modern law). In fact, Colorado courts do not "consider … an accounting to be a separate claim for relief" from unjust enrichment. *Escobar, Inc. v. Barwest Grp., LLC*, No. 20-cv-02771-PAB-STV, 2021 WL 4319572, at *5 (D. Colo. Sept. 22, 2021). Thus, the accounting "claim" should be dismissed because it is duplicative of Evolve's unjust enrichment claim.

Evolve is not entitled to an accounting as a remedy regardless. An accounting as a remedy aims to prevent the unjust enrichment of the defendant by returning to the plaintiff any profits the defendant made, but only if there is no adequate remedy at law. Dobbs, *Law of Remedies* § 4.3(5); *Escobar Inc.*, 2021 WL 4319572, at *5. Evolve's claim for an accounting fails because Evolve cannot

10

state a claim for unjust enrichment, so there is no unjust enrichment to prevent. (*See supra* Argument § II.B.) Accordingly, the accounting "claim" must be dismissed.[3]

### E.    Evolve Cannot State a Cross-Claim for Contribution.

Finally, Evolve brings a claim for contribution. That claim must be dismissed because a claim for contribution can be made only after a judgment or settlement is entered, and only if that judgment or settlement discharges the common liability and obligates the contribution plaintiff to pay more than its pro-rata share.

Section 13-50.5-102, which governs contribution, provides that there is a "right of contribution" among two or more persons who "become jointly or severally liable in tort for the same injury." Colo. Rev. Stat. § 13-50.5-102(1)–(2). A contribution claim is "barred" "[i]f there is no judgment for the injury … against the tortfeasor seeking contribution," unless that tortfeasor has paid or agreed to pay to "discharge the common liability." Colo. Rev. Stat. § 13-50.5-104(4). Evolve acknowledges that no judgment or settlement has been entered in this case. (Cross-Claim ¶ 91.) And it never alleges that it has paid or agreed to pay to discharge any common liability. (*See id.* ¶ 25.) Quite the opposite, in fact: Evolve admits that it hasn't paid all end users. (*Id.*) So, Evolve's contribution claim is barred by the plain text of the statute.

---

[3] Although Evolve suggests its accounting "claim" also is a type of discovery device, "this kind of accounting probably has little or no use today" in light of modern discovery rules. Dobbs, *Law of Remedies* § 4.3(5). Colorado courts that have recently recognized "accounting" claims as discovery devices have done so only to demand that fiduciaries account for funds, *see, e.g.*, *Estate of Bogue v. Adams*, 405 F. Supp. 3d 929, 943 (D. Colo. 2019), and, because Evolve makes no allegations that AMG was its fiduciary, those cases are not applicable here.

Further, the statute provides that contribution is available only "in favor of a tortfeasor who has paid more than his pro rata share of the common liability." Colo. Rev. Stat. § 13-50.5-102(2); *see LB Rose Ranch, LLC, v. Hansen Constr., Inc.*, 477 P.3d 739, 743 (Colo. App. 2019). Here, Evolve fails to allege that it has paid more than its pro rata share. Instead, Evolve alleges only that it paid the money it determined was appropriate based on its consultant's reconciliation. (Cross-Claim ¶ 25.) For this reason too, Evolve's Cross-Claim for contribution must be dismissed.

<u>**CONCLUSION**</u>

For these reasons, the Court should dismiss all of Evolve's Cross-Claims against AMG with prejudice.

Dated: August 22, 2025                          Respectfully submitted,


                                                *s/ Eric L. Robertson*

                                                Hugh Q. Gottschalk
                                                Eric L. Robertson
                                                Iva Velickovic
                                                WHEELER TRIGG O'DONNELL LLP
                                                370 17th Street, Suite 4500
                                                Denver, Colorado  80202
                                                Phone:     303.244.1800
                                                Fax:       303.244.1879
                                                Email:     gottschalk@wtotrial.com
                                                           robertson@wtotrial.com
                                                           velickovic@wtotrial.com

                                                *Attorneys for Defendant AMG National Trust*

13

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME</u>
## <u>LIMITATION</u>

I certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standard III(A)(1).


_s/ Eric L. Robertson_

14

## CERTIFICATE OF CONFERRAL

Counsel for AMG conferred with counsel for Evolve regarding the relief requested in this motion as required by Judge Domenico's Practice Standard III(D)(1). The parties addressed whether the asserted deficiencies are correctable by amendment, and counsel for AMG represented that its position is that they are not. Evolve opposes the relief requested.

*s/ Eric L. Robertson*

15

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I certify that on August 22, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Eric L. Robertson*

16