# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Lead Civil Action No. 1:24-cv-03259-DDD-NRN

*Consolidated with* 1:2-cv-03261-SBP; 1:24-cv-03262-SBP; 1:24-cv-03509-NRN; and 1:25-cv-00075-KAS

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, KAYLA MORRIS, TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD, DANIEL BREWER, PAUL TONNER, CORY ESPINOLA, STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD TODD HALE, and ALFRED ROTIMI, individually and on behalf of all similarly situated persons,

      Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank; AMG NATIONAL TRUST BANK, a Colorado bank; and LINEAGE BANK, a Tennessee bank,

      Defendants.

---

## PLAINTIFFS' MEMORANDUM AND RULE 56(d) MOTION IN OPPOSITION TO DEFENDANT AMG'S MOTION FOR SUMMARY JUDGMENT

---

i

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ........................2

III.  STATEMENT OF ADDITIONAL DISPUTED FACTS .......................................................7

IV.   LEGAL STANDARD ................................................................................................9

V.    AMG'S MOTION SHOULD BE DENIED OR DEFERRED PENDING

      COMPLETION OF DISCOVERY .......................................................................................10

      A.    AMG's Arguments Cannot Be Resolved Without Discovery of Essential

            Facts ..............................................................................................................10

            1.    The Existence of a Duty Cannot Currently Be Determined as a

                  Matter of Law ..........................................................................................11

            2.    Discovery is Essential to Challenge AMG's Core Assertions ...................15

                  a.    AMG's Claim That It Holds No Plaintiffs' Money Cannot

                        Be Verified Without Expert Analysis ............................................15

                  b.    AMG's Distribution Accuracy Claims Require Independent

                        Verification ........................................................................................16

                  c.    The "No Complaints" Assertion Is Misleading ............................16

      B.    Even if AMG's Facts Were True, Plaintiffs' Claims Survive .................................17

            1.    AMG's Conversion Defense Fails Under the Commercial

                  Reasonableness Standard .........................................................................17

2.      AMG Continues to Retain Benefits Supporting Unjust Enrichment

Claims ...................................................................................................18

3.      Money-Had-and-Received Claims Survive Wrongful Distribution ..........19

VI.     CONCLUSION..........................................................................................................21

**TABLE OF AUTHORITIES**

**CASES**                                                                                          **PAGE**

*Adams v. C3 Pipeline Constr. Inc.*,

    30 F.4th 943 (10th Cir. 2021)......................................................................................... 10

*Adamson v. Multi Cmty. Diversified Servs., Inc.*,

    514 F.3d 1136 (10th Cir. 2008) ...................................................................................... 9

*Am. Express Travel Related Servs. Co. v. Stevens*,

    2013 WL 6670532 (D. Colo. December 18, 2013).................................................... 14

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242, n.5 (1986)................................................................................................ 10

*Arizona Pub. Serv. Co. v. Brittain*,

    486 P.2d 176 (Ariz. 1971) .............................................................................................. 12

*Bhatia v. Silvergate Bank*,

    725 F. Supp. 3d 1079 (S.D. Cal. 2024) ...................................................................... 13

*Cent., Inc. v. Cache Nat. Bank*,

    748 P.2d 351 (Colo. App. 1987).................................................................................. 18

*Cerveny v. Aventis, Inc.*,

    855 F.3d 1091 (10th Cir. 2017)..................................................................................... 10

*Chang v. JPMorgan Chase Bank, N.A.*,

    845 F.3d 1087 (11th Cir. 2017) ..................................................................................... 14

*Citizens State Bank v. National Sur. Corp.,*

      612 P.2d 70 (Colo. 1980)…………………………………………………………….. 18

*Coast Trading Company, Inc., v. Parmac, Inc.*

    587 P.2d 1071 (Wash. Ct. App. 1978).......................................................................... 20

iv

*Commercial Credit Corp. v. University Nat'l Bank of Fort Collins*,

  590 F.2d 849 (10th Cir. 1979) ............................................................................ 17

*Cooley v. Paraho Dev. Corp.*,

  851 P.2d 207 (Colo. App. 1992) .......................................................................... 12

*Greenberg v. Perkins*,

  845 P.2d 530 (Colo. 1993) .................................................................................. 14

*Hackworth v. Progressive Cas. Ins.*,

  468 F.3d 722 (10th Cir. 2006) ............................................................................ 10

*Hirsch v. Bank of Am.*,

  107 Cal. App. 4th 708 (2003) ............................................................................. 20

*In re B & L Oil Co*,

   46 B.R. 731 (Bankr. D. Colo. 1985) ................................................................. 20

*Kellner v. Schultz*,

  937 F. Supp. 2d 1319 (D. Colo. 2013) .................................................................11

*McAnulty v. Standard Ins. Co.*,

  81 F.4th 1091 (10th Cir. 2023) ........................................................................... 19

*McAuliffe v. Vail Corp.*,

  69 F.4th 1130 (10th Cir. 2023) ........................................................................... 20

*Nat'l Surety Corp. v. Citizens State Bank*,

  593 P.2d 362 (Colo. App. 1978) ......................................................................... 18

*Palsgraf v. Long Island R. Co.*,

  162 N.E. 99 (N.Y. 1928) .................................................................................... 12

*Philpott v. Super. Ct.*,

  1 Cal. 2d 512(1934) ........................................................................................... 20

*Rodriguez v. TBK Bank, SSB*,

   No. 17cv30682, 2017 WL 11637646 (Weld Cnty., Colo. Dist. Ct. Nov. 2, 2017).................... 13

*Sewell v. Pub. Serv. Co. of Colorado*,

   832 P.2d 994 (Colo. App. Ct. 1991).......................................................................... 12

*Taco Bell, Inc. v. Lannon*,

   744 P.2d 43 (Colo. 1987) .........................................................................................11

*Weil v. First Nat'l Bank of Castle Rock*,

   983 P.2d 812 (Colo. App. 1999)................................................................................. 13

*Yotta Technologies, Inc. v. Evolve Bancorp, Inc.,*

   No. 3:24-cv-06456-TLT, Doc. 65 (N.D. Cal.) ............................................................ 13

**STATUTES**                                                                                    **PAGE**

Fed. R. Civ. P. 56(a) ................................................................................................... 9

Fed. R. Civ. P. 56(d)................................................................................................... 9

vi

Plaintiffs hereby respond to Defendant AMG National Trust Bank's ("AMG") Motion for Summary Judgment. In support, Plaintiffs attach the Declarations of Max Cranmer ("Cranmer Decl.") and J. Gerard Stranch ("Counsel Decl.").

## I.    INTRODUCTION

The April 2024 collapse of Synapse Financial Technologies ("Synapse") left thousands of customers of financial technology platforms ("FinTechs") unable to access their funds held by multiple banks, including more than $110 million at AMG, with additional hundreds of millions held by Defendants Evolve Bank & Trust ("Evolve") and Lineage Bank ("Lineage"). This case presents a Gordian Knot that will take months, if not years, to untangle, which is why discovery closes in December 2026. AMG insists that the Court sever the threads entangling it, before that knot can begin to be unwound.

AMG seeks summary judgment on three purportedly "undisputed" material facts: (1) AMG's only customer was Synapse, (2) AMG followed its customer's instructions, and (3) AMG allegedly distributed 99.7% of its Synapse related funds – with none belonging to Plaintiffs. AMG mischaracterizes this litigation and the genuine disputes over material facts that render summary judgment premature.

The fatal flaw in AMG's motion is reliance on unverified data. AMG relies entirely on Synapse's May 17, 2024 "Final Trial Balance"—the same Synapse ledger that Evolve's expert, Ankura Consulting Group ("Ankura"), has identified as containing "material errors, contradictions, and irregularities" following nearly a year of intensive analysis. While AMG has had exclusive access to its own records and Defendants' experts have been analyzing the Synapse's

data since July 2024, Plaintiffs' experts only just obtained access to the massive datasets necessary for meaningful review.

AMG's motion asks this Court to accept as "undisputed" precisely those facts requiring the most rigorous expert analysis to verify. In a case of this magnitude and complexity, where the reliability of the underlying financial data is in serious question, summary judgment is inappropriate until all parties have adequate opportunity to complete expert analysis necessary to establish the genuine facts. The Court should allow the careful untangling that complex financial forensics demands and deny AMG's motion without prejudice to renewal after the close of discovery.

## II.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    ADMITTED.

2.    ADMITTED.

3.    ADMITTED.

4.    ADMITTED.

5.    ADMITTED.

6.    ADMITTED.

7.    DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's characterization of the relationships and duties that arose from AMG's conduct, regardless of formalities. The operational relationship between AMG, Synapse, and end users, including AMG's knowledge of and interactions concerning end user funds, requires expert analysis of unproduced transaction data and communications, and additional time to review voluminous produced documents and communications. *See* Cranmer Decl. ¶¶ 10, 19; Counsel Decl. ¶¶ 11-15, 38, 42.

2

8.      DISPUTED. Plaintiffs lack sufficient information to admit or deny the accuracy of AMG's description of Synapse's instructions and AMG's implementation thereof without access to AMG's complete communications, internal decision-making processes, and verification procedures. The reliability of AMG's characterization of these critical facts requires expert analysis of data and communications that remain largely in AMG's exclusive control. *See* Cranmer Decl. ¶ 10; Counsel Decl. ¶¶ 30-34, 41.

9.      DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertion that it accurately executed Synapse's instructions, which requires additional time for expert review and analysis of voluminous produced and unproduced transaction records. *See* Cranmer Decl. ¶ 10-13, 18-23; Counsel Decl. ¶¶ 8-13, 15, 30, 34, 41.

10.     DISPUTED. Plaintiffs lack sufficient information to admit or deny the accuracy of Federal Reserve data reconciliation and Synapse's "Final Trial Balance" without expert analysis of the data, reconciliation methodologies, and verification procedures. As Ankura has identified "material errors, contradictions, and irregularities" in Synapse ledger data, the "Final Trial Balance's" reliability cannot be accepted without expert analysis. *See* Cranmer Decl. ¶¶ 18-23; Counsel Decl. ¶¶ 30.

11.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertions about the total amount held, Federal Reserve data reconciliation, and AMG's internal accounting without expert analysis of the complete transaction datasets, reconciliation methodologies, and verification procedures. Given the unreliability of Synapse ledger data as demonstrated by Ankura, AMG's conclusions cannot be accepted. *See* Cranmer Decl. ¶¶ 8-9; Counsel Decl. ¶¶ 30, 41.

3

12.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's calculations and distributions without expert verification of: (1) the accuracy of the "Final Trial Balance" data; (2) AMG's distribution methodology; (3) the recipient identification process; and (4) whether AMG exercised due diligence before distributing funds. That AMG continues to hold $233,864.84 in undistributed funds demonstrates the uncertainty and incompleteness of AMG's distribution. *See* Cranmer Decl. ¶ 9; Counsel Decl. ¶ 41.

13.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertion that it regularly reconciled Synapse transactions with Federal Reserve data, including the reliability of AMG's processes. The reliability of AMG's reconciliation procedures require expert analysis of the data and communications that remain in AMG's exclusive control. *See* Cranmer Decl. ¶¶ 10-12; Counsel Decl. ¶¶ 40-41.

14.     DISPUTED. Plaintiffs lack sufficient information to admit or deny the reliability of the Federal Reserve data that AMG claims to have received, including whether AMG took appropriate action based thereon. Analysis of AMG's these issues requires expert review of records that have not been produced or adequately analyzed. *See* Cranmer Decl. ¶¶ 11, 19-20; Counsel Decl. ¶¶ 40-41.

15.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertion that its records fully reconciled with Federal Reserve data and that there were no discrepancies, without independent expert analysis of those records and data. *See* Cranmer Decl. ¶¶ 11, 19-20; Counsel Decl. ¶¶ 40-41.

16.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's characterization of the data it provided Synapse. Expert analysis is required to verify the reliability

4

of AMG's data sharing practices and their impact on Synapse's ledger accuracy. *See* Cranmer Decl. ¶¶ 11, 19-20; Counsel Decl. ¶¶ 40-41.

17.     ADMITTED.

18.     DISPUTED. Plaintiffs lack sufficient information to admit or deny the nature of transaction processing, including whether transactions were properly recorded, reconciled, and reflected in the "Final Trial Balance." Analysis of the transaction processing period requires expert review of the transaction data. *See* Cranmer Decl. ¶¶ 19-20; Counsel Decl. ¶¶ 30-33, 40-41.

19.     DISPUTED. Plaintiffs lack sufficient information to admit or deny the accuracy, completeness, and reliability of Synapse's "Final Trial Balance" without expert analysis of the underlying data. Given that Ankura has identified "material errors, contradictions, and irregularities" in similar Synapse data, the reliability of this Final Trial Balance cannot be accepted without verification. *See* Counsel Decl. ¶¶ 17-22, 30-33; Cranmer Decl. ¶¶ 8, 18-20.

20.     DISPUTED. Plaintiffs lack sufficient information to admit or deny whether the Final Trial Balance accurately reflects all end users entitled to funds, given the need for independent expert verification of Synapse ledger data. *See* Cranmer Decl. ¶¶ 8, 18-20; Counsel Decl. ¶¶ 30-33, 40-41.

21.     DISPUTED. Plaintiffs lack sufficient information to admit or deny the accuracy of the trial balances or the accuracy of the assignments therein, without expert analysis of the complete Synapse and bank data. *See* Cranmer Decl. ¶¶18-20; Counsel Decl. ¶¶ 17-22, 30-33, 40-41.

22.     DISPUTED. Plaintiffs dispute AMG's characterization that Evolve's concerns about Synapse record accuracy are irrelevant. Evolve's findings of "material errors" in Synapse

5

data demonstrate Synapse's ledger unreliability across all partner banks. AMG's claimed reconciliation with unreliable Synapse data does not establish the accuracy of the underlying information. *See* Cranmer Decl. ¶¶ 8-9; Counsel Decl. ¶¶ 17-22, 30-33.

23.    DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertion that it held exactly $110,290,040.10 as of May 17, 2024, without independent expert analysis of AMG's, Synapse's, Evolve's, and Lineage's data. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

24.    DISPUTED. Plaintiffs lack sufficient information to admit or deny the reliability of David Hall's analysis without access to his complete methodology and procedures, and the data reviewed. Expert opinions are only as reliable as the underlying data and methodologies, which require verification. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

25.    DISPUTED. Plaintiffs lack sufficient information to admit or deny the accuracy of Synapse's instructions to AMG, including whether AMG exercised appropriate due diligence in verifying the instructions. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

26.    DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertions about its distributions without expert analysis of the complete records, procedures, and processes. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

27.    DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's calculations regarding the amounts of funds distributed without independent verification of the underlying data and methodologies. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

28.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's calculations regarding the amounts of funds distributed without independent verification of the underlying data and methodologies. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

29.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertion about distributing funds to end users without independent verification of the data and methodologies on which this calculation is based. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

30.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertions about distributing funds to end users without expert verification of the records, processes, and data. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

31.     DISPUTED. Plaintiffs lack sufficient information to admit or deny AMG's assertion about distributing funds for over 105,713 end users without expert verification of the records, processes, and data. Plaintiffs lack sufficient information to admit or deny AMG's assertion that no end user has complained about incorrect payment amounts, as this assertion: (1) depends on AMG's unverified knowledge and record-keeping systems; (2) fails to account for end users who may be unaware of the correct amounts owed to them; and (3) does not address potentially unrecognized under-payments due to the data reliability problems. *See* Cranmer Decl. ¶¶ 18-20; Counsel Decl. ¶¶ 40-41.

## III.    STATEMENT OF ADDITIONAL DISPUTED FACTS

32.     Ankura has identified "material errors, contradictions, and irregularities" in Synapse ledger data after nearly a year of analysis, demonstrating reliability problems with the same type of data which AMG based its distribution decisions. *See* Counsel Decl. ¶ 30.

7

33.     The Synapse bankruptcy Trustee has reported that "due to the many difficulties in accurately accounting for money movements and the immense complexity of any reconciliation, the exact amounts and sources of the shortfall have not been clearly established." *See* Cranmer Decl. ¶ 12.

34.     The Synapse bankruptcy Trustee has noted that any meaningful reconciliation requires "significant time, additional money and other efforts" due to the "significant costs" and "complexities" of the systems and data involved. *Id*. at ¶ 21.

35.     The Synapse bankruptcy proceedings involve analysis of 10+ terabytes of data and hundreds of millions of transaction records, demonstrating the massive scope and complexity of the data reconciliation required to verify AMG's claims. Cranmer Decl. ¶ 10 (citing Trustee's Eleventh Status Report, October 22, 2024, Exhibit A).

36.     Plaintiffs' financial forensic expert has identified that the Synapse-related datasets include over 900 gigabytes of financial transaction data across 2,474 files, requiring specialized software, hardware, and trained personnel to analyze. Moreover, the full Synapse ledger data remains unproduced and contains approximately 10 terabytes of data. *Id*. at ¶¶ 10, 15-17.

37.     Based on industry experience with similar financial data analysis, review and analysis of the Synapse-related financial datasets requires many months, or more, to complete. *Id*. at ¶ 23.

38.     Plaintiffs have conducted diligent discovery efforts to date but have been limited by the case's complexities, the responses to date, and the sheer volume of data requiring analysis. *See* Counsel Decl. ¶¶ 6-15.

39.     AMG has had consistent exclusive access to its records, processes, and communications regarding Synapse and fund distributions, while Plaintiffs have only recently gained access to some of the datasets necessary for analysis. *See id.* at ¶¶ 8-12; Cranmer Decl. ¶ 17.

40.     The reliability and accuracy of AMG's claimed reconciliation with Federal Reserve data, distributions, and verification procedures cannot be evaluated without expert analysis of the data, communications, and procedures that remain largely in AMG's possession and control, and have been withheld from Plaintiffs. *See id.* at ¶¶ 11, 18-20; Counsel Decl. ¶¶ 11-15, 38, 40-42.

## IV.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Id.* at 1145. A fact is material if it could affect the outcome of the suit; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence. *Id.*

Rule 56(d) protects nonmovants facing premature summary judgment motions. If "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A non-movant should specify in an affidavit "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those

9

facts and rebut the motion for summary judgment." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968-69 (10th Cir. 2021).[1]

District courts should apply Rule 56(d) liberally. *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). "[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Hackworth v. Progressive Cas. Ins.*, 468 F.3d 722, 732 (10th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). This admonition "is especially important when relevant facts are exclusively in the control of the opposing party." *Adams*, 30 F.4th at 969. Accordingly, "'[s]ummary judgment should not be based on the deposition or affidavit of an interested party as to the facts known only to him ….'" *Id*. (citation omitted).

## V.  AMG'S MOTION SHOULD BE DENIED OR DEFERRED PENDING COMPLETION OF DISCOVERY

### A.  AMG's Arguments Cannot Be Resolved Without Discovery of Essential Facts

The record reveals significant gaps in the discovery needed to evaluate AMG's claims.[2] This case involves the complex collapse of a financial intermediary facilitating hundreds of millions in deposits across multiple banks, generating over 10 terabytes of data requiring extensive expert analysis. *See* Counsel Decl. ¶¶ 6-15; Cranmer Decl. ¶¶ 18-23. While AMG has had exclusive control over its internal records, communications, and decision-making processes since

---

[1] In satisfaction of the *Adams* standard, Plaintiffs submit the Declaration of J. Gerard Stranch to explain the current state of discovery and provide appropriate context, as well as the Declaration of Max Cranmer, Plaintiffs' forensic financial expert. Together, these declarations provide the information required under *Adams*.

[2] This make sense, as Fact Discovery was not set to close until May 15, 2026, and Expert Discovery scheduled to occur over the following months. Dkt. 102; *see also* Counsel Decl., ¶ 3.

the Synapse collapse, Plaintiffs' expert financial analysts have only recently gained access to portions of the data necessary to verify AMG's factual assertions. Critically, the Synapse data on which AMG relies—the "Final Trial Balance"—has already been identified by Ankura as containing "material errors, contradictions, and irregularities." Given these reliability problems and the complexity of financial data, AMG's primary arguments—that it owed no duties to end users, that it merely followed orders, and that it distributed funds properly—each depend on facts that require thorough expert analysis to establish.

### 1. The Existence of a Duty Cannot Currently Be Determined as a Matter of Law

AMG had a duty to Plaintiffs because it caused foreseeable harm by negligently safeguarding and distributing their funds. However, judgment should be deferred until Plaintiffs complete discovery.

A finding of duty requires analysis of several non-dispositive factors, including "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987). "By its nature, this test requires a factual assessment on a case-by-case basis. In such circumstances, the Court's role is to determine whether there is a dispute as to material fact that requires a trial." *Kellner v. Schultz*, 937 F. Supp. 2d 1319, 1325 (D. Colo. 2013). Although the existence of a duty is a question of law, this judgment cannot be made until disputes of fact have been resolved. *See, e.g., id.* ("At this juncture, the Court declines to assess the conflicting evidence submitted, leaving it for presentation at trial.").

Plaintiffs have not had meaningful opportunity to conduct discovery on relevant facts like the parties' relationships, foreseeability of the harms, or AMG's conduct while maintaining Plaintiffs' funds. Counsel Decl. ¶¶ 30-35. The facts currently known favor finding that AMG owed Plaintiffs a duty of reasonable care.

The harm in this case was foreseeable because AMG participated in a complex arrangement where it knew customer funds totaling over $110 million were pooled in accounts designated for the benefit of customers. AMG was on notice that it was handling funds belonging to third parties, creating foreseeable risks if the intermediary systems contained errors. Discovery is necessary to fully understand the foreseeability of the harms, which depends on AMG's knowledge and conduct. *See, e.g., Sewell v. Pub. Serv. Co. of Colorado*, 832 P.2d 994, 998 (Colo. App. Ct. 1991) (denying summary judgment on the issue of duty because there were disputed facts related to foreseeability); *Cooley v. Paraho Dev. Corp.*, 851 P.2d 207, 208 (Colo. App. 1992) (similar); *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 101 (N.Y. 1928) ("The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury."); *Arizona Pub. Serv. Co. v. Brittain*, 486 P.2d 176, 178 (Ariz. 1971) (similar).

Second, the social utility of AMG's conduct—participating in banking arrangements without adequate oversight of data reliability—is limited compared to the significant burden imposed on thousands of customers who lost their funds. Requiring AMG to exercise due diligence tracking customer entitlements would not impose an unreasonable burden, particularly given AMG's sophistication and the substantial fees it earned from the arrangement.

Finally, placing the burden of due diligence on AMG, rather than individual consumers, aligns with basic principles of risk allocation. AMG had superior knowledge of and control over

12

its systems, exclusive access to transaction data, and the ability to monitor the accuracy of Synapse's data systems. Consumers had no ability to oversee or verify the reliability of the data systems tracking their funds.

AMG does not analyze these relevant factors. Nor does it explain why such analysis would not be fact driven. Instead, it argues that a duty's existence is foreclosed solely because Plaintiffs are not AMG's customers. *See* Motion at 10-11 (citing *Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812 (Colo. App. 1999)). That assertion is contradicted by recent filings in parallel Synapse related litigation. *See Yotta Technologies, Inc. v. Evolve Bancorp, Inc.,* No. 3:24-cv-06456-TLT, Doc. 65 at 3 (N.D. Cal.). There, Evolve asserted that "Synapse arranged for each of Yotta's end users to enter into an individual Account Agreement" with Evolve. *Id.* Plaintiffs intend to conduct discovery on this issue but have not yet had adequate opportunity. Counsel Decl. ¶¶ 11-15.

Even if Plaintiffs lacked a direct relationship with AMG, that would not foreclose the existence of a legal duty. Courts recognize that banks still owe duties to non-customers under the circumstances of a particular case. *See, e.g., Rodriguez v. TBK Bank, SSB*, No. 17cv30682, 2017 WL 11637646 (Weld Cnty., Colo. Dist. Ct. Nov. 2, 2017) (duty was adequately alleged by non-customers despite *Weil*); *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1106-11 (S.D. Cal. 2024) (in a class action following the FTX bankruptcy, rejecting defendants' argument that "banks . . . do not owe a duty of care to non-customers" and sustaining negligence claim against bank that facilitated cryptocurrency transactions given "special relationship").[3]

---

[3] Even AMG's own authority—9 C.J.S. Banks and Banking § 246—acknowledges that this "no-duty" rule applies only to standard banking relationships and does not create absolute immunity. Instead, special circumstances can create duties, and banks may have enhanced obligations when they have knowledge of third-party interests. *See id.*

13

Plaintiffs are not merely seeking to hold AMG liable for nonfeasance—AMG's misfeasance contributed to the harm here. *See Am. Express Travel Related Servs. Co. v. Stevens*, 2013 WL 6670532, at *3 (D. Colo. December 18, 2013) (a bank may be held liable where its affirmative conduct caused or contributed to the injury); *see also Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087 (11th Cir. 2017) ("[A] bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation."). Entities have "a duty to use reasonable care with regard to their affirmative conduct and that such a duty extends to all who may foreseeably be injured if that conduct is negligently carried out." *Greenberg v. Perkins*, 845 P.2d 530, 537 (Colo. 1993).

AMG did not merely fail to prevent Synapse's mismanagement—it actively participated in a complex system involving pooled customer funds. AMG's affirmative conduct included: (1) establishing and maintaining FBO accounts that it knew contained funds belonging to third parties; (2) accepting hundreds of millions of dollars in deposits through Synapse; (3) distributing over $110 million based on data that contains "material errors, contradictions, and irregularities"; and (4) continuing to hold $233,864.84.

These facts suggest the misfeasance discussed in cases like *Chang*, not the nonfeasance as in *Weil*. Questions regarding the parties' relationships and whether AMG had knowledge of problems with Synapse's ledgers – the same data that has now been identified as being systemically unreliable – requires discovery of AMG's internal communications, processes, and procedures. *See* Counsel Decl. ¶ 41. Therefore, it would be premature to resolve the question of duty now.

14

### 2.    Discovery is Essential to Challenge AMG's Core Assertions

AMG makes three core claims as "undisputed" despite insufficient discovery conducted to probe those facts: (1) AMG holds none of Plaintiffs' money, (2) AMG accurately distributed 99.7% of relevant funds, and (3) no end users have complained. Each assertion depends on the reliability of data and procedures that have not been subjected to independent expert analysis, and each conflicts with established systemic problems in the data sources AMG relies on.

### a.    AMG's Claim That It Holds No Plaintiffs' Money Cannot Be Verified Without Expert Analysis

AMG's assertion that it holds none of Plaintiffs' funds depends on Synapse's "Final Trial Balance's" accuracy and AMG's distribution based thereon. However, Ankura has identified problems with the Synapse ledger data after nearly a year of intensive analysis. *See* Counsel Decl. ¶ 22. The Synapse bankruptcy Trustee has similarly reported that "due to the many difficulties in accurately accounting for money movements and the immense complexity of any reconciliation, the exact amounts and sources of the shortfall have not been clearly established." *See* Trustee's Fifteenth Status Report, February 7, 2025, p. 4; Cranmer Decl. ¶ 12.

AMG's continued retention of $233,864.84 in undistributed funds undermines its claim that it holds no customer money and demonstrates ongoing uncertainty. *See* Seacrest Decl. ¶¶ 49-56. If AMG's distribution methodology were reliable, there would be no need to retain any funds pending "administrative difficulties in obtaining current end user confirmation and information." These undistributed funds suggest systemic issues with AMG's ability to identify rightful recipients—issues that likely affected distributed funds too.

Given the established reliability problems with Synapse's data, AMG's claim that its distributions were accurate cannot be accepted as undisputed fact. Plaintiffs' financial forensic

15

expert has conducted a preliminary review of the currently produced information, and has explained that a full reconciliation will take time and resources. *See generally* Cranmer Decl.; *see also* Trustee's Eleventh Status Report, October 22, 2024, Exhibit A.

### b. AMG's Distribution Accuracy Claims Require Independent Verification

AMG's assertion that it distributed funds to the correct recipients in the correct amounts cannot be verified without expert analysis of the data. AMG's claimed 99.7% distribution rate depends on several unverified assumptions: (1) the Synapse "Final Trial Balance" accurately identified all rightful recipients and amounts, (2) AMG properly implemented Synapse's distribution instructions, and (3) AMG's reconciliation processes were adequate to correct discrepancies. Each of these assumptions requires factual development.

The concentration of small-dollar balances among AMG's remaining undistributed accounts—with nearly half having balances under $1.00—indicate data processing errors that could have affected the accuracy of distributed amounts. *See* Seacrest Decl. ¶¶ 49-56. These patterns require expert analysis to confirm broader problems with the underlying data.

### c. The "No Complaints" Assertion Is Misleading

AMG's claim that "no end user has complained about incorrect payment amounts" is fundamentally flawed. First, Plaintiffs *have* complained – they filed this lawsuit. Second, AMG relies on its own record-keeping, which has not been tested in discovery. Third, AMG fails to account for end users who may be unaware of the correct amounts owed, or who received over-payments and have not complained. AMG's self-serving view does not render its premature summary judgment motion proper.

16

### B.      Even if AMG's Facts Were True, Plaintiffs' Claims Survive

While Plaintiffs dispute the facts, AMG's characterization would not prove fatal to Plaintiffs' claims for conversion, unjust enrichment, or money-had-and-received. AMG's motion mischaracterizes the standards governing these claims and overlooks critical aspects of its conduct that support liability.

#### 1.      AMG's Conversion Defense Fails Under the Commercial Reasonableness Standard

AMG's assertion that it "cannot be held liable for conversion" simply by "following the instructions of its customer" fundamentally misunderstands Colorado conversion law and ignores the commercial reasonableness requirement that governs bank liability. While banks generally have the right to follow instructions, this right is not absolute and does not provide immunity from conversion liability when banks fail to exercise appropriate commercial due diligence.

The Tenth Circuit has held that banks cannot escape conversion liability merely by pointing to customer instructions absent good faith and commercial reasonableness. *Commercial Credit Corp. v. University Nat'l Bank of Fort Collins*, 590 F.2d 849, 851 (10th Cir. 1979). The court explained that while customer instructions may provide a defense, this defense is only available to banks that "establish, prima facie, [their] good faith and [their] lack of negligence" and show that they acted "in accordance with reasonable commercial standards." *Id.* Critically, "unless the commercial reasonableness of the bank's actions is established by the evidence, a plaintiff's negligence is irrelevant, for if both are negligent, the bank is strictly liable." *Id.*

Colorado courts recognize that banks must establish good faith and compliance with reasonable commercial standards as affirmative defenses. "[I]t is incumbent upon the depositary bank to plead and prove 'good faith' and compliance with 'reasonable commercial standards,' as

17

matters of affirmative defense." *Nat'l Surety Corp. v. Citizens State Bank*, 593 P.2d 362, 365 (Colo. App. 1978), *aff'd*, 612 P.2d 70 (Colo. 1980). The court emphasized that these are factual determinations that cannot be resolved without adequate factual development. *See also Cent., Inc. v. Cache Nat. Bank*, 748 P.2d 351, 354 (Colo. App. 1987) (affirming conversion judgment against bank that processed transactions without exercising appropriate commercial standards).

Here, AMG cannot establish the commercial reasonableness of its conduct without factual development that has not occurred. AMG distributed over $110 million based on Synapse's erroneous "Final Trial Balance." Whether AMG exercised appropriate due diligence before relying on this data, whether AMG received warnings about Synapse's data reliability, and whether AMG's verification procedures met industry standards are all factual questions that require discovery and expert analysis. *See* Counsel Decl. ¶¶ 31-36. AMG's motion improperly seeks conversion immunity based solely on the existence of customer instructions, without regard to the commercial reasonableness of following those instructions.

The timing of AMG's distributions relative to end users' withdrawal requests presents additional conversion issues that require factual development. Discovery is needed to determine when individual Plaintiffs attempted to withdraw their funds compared to when AMG distributed those funds to other recipients pursuant to Synapse's instructions. If AMG distributed Plaintiffs' money after Plaintiffs had requested withdrawals, this could constitute conversion regardless of whether AMG was following Synapse's instructions.

### 2.    AMG Continues to Retain Benefits Supporting Unjust Enrichment Claims

AMG's unjust enrichment defense fails because AMG concedes it retains $233,864.84 in customer funds. *See* Seacrest Decl. ¶¶ 49-56. Unjust enrichment occurs when a defendant

18

"received a benefit" and "the circumstances make it unjust for the defendant to retain the benefit without commensurate compensation." *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1107 (10th Cir. 2023). The retention of $233,864.84 in customer funds satisfies these elements, as this represents money that belongs to end users but that AMG continues to hold.

AMG's unjust enrichment liability extends beyond the principal amounts to include the benefits AMG derived from holding and using customer funds while those customers were denied access to their money. As alleged, "Defendants have also been unjustly enriched by accruing interest and deriving profits from the unauthorized use of Plaintiffs' and the Class's funds." *See* Dkt. 115 ¶ 74. Between when customers first attempted to access their funds and when AMG finally distributed money, AMG had the use and benefit of substantial customer deposits that generated interest and other benefits. That AMG may have eventually distributed principal amounts does not eliminate its unjust enrichment from the interim use of those funds.

This benefit analysis is particularly significant given the extended timeline here. The Synapse collapse occurred in April 2024, but AMG did not begin distributions until much later, and continues to hold funds. During this entire period, AMG has had the benefit of customer funds while customers have been denied access to their own money, creating precisely the type of inequitable retention that unjust enrichment law is designed to address.

### 3.    Money-Had-and-Received Claims Survive Wrongful Distribution

AMG's defense to the money-had-and-received claim misunderstands this cause of action and relies on inapposite authority. AMG relies on caselaw in which a defendant returns money to the party who originally paid it, rather than distributing customer funds in the wrong amounts to

19

potentially wrong recipients. *See Coast Trading Company, Inc. v. Parmac, Inc.*, 587 P.2d 1071

(Wash. Ct. App. 1978).

Money-had-and-received claims can succeed even when defendants have distributed funds

to third parties, particularly when the distributions were improper. The common-law action of

assumpsit arises "where one has received money which in equity and good conscience he ought to

pay over to another" and "is still viable" under the UCC. *Nat'l Surety Corp.*, 593 P.2d at 365. Both

conversion and money-had-and-received claims could be maintained against a bank that had

wrongfully paid customer funds to third parties. *Id.*; *see also Philpott v. Super. Ct.*, 1 Cal. 2d 512,

521-22 (1934) (privity not required "to prevent A's unjust enrichment at B's expense"); *Hirsch v.*

*Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003) ("To confer a benefit, it is not essential that money

be paid directly to the recipient by the party seeking restitution.").

*In re B & L Oil Co.* provides relevant guidance, holding that "a cause of action for money

had and received may be maintained by the plaintiff to whom money is owed directly against a

defendant to whom money was erroneously paid by a third party." 46 B.R. 731, 735 (Bankr. D.

Colo. 1985). "[T]he fact that the plaintiff has a right of action against the third party, by whom

payment was made, does not destroy the plaintiff's cause of action against the defendant who

received the money." *Id.* This principle applies here, where AMG received Plaintiffs' money from

Synapse and then potentially distributed it to wrong recipients.

The key question under Colorado law is whether AMG has money "which, in equity and

good conscience" is Plaintiffs'. *See McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1154 (10th Cir. 2023).

This inquiry is not resolved because AMG claims to have distributed the funds according to

Synapse's instructions. If those instructions were inaccurate and resulted in distributions to wrong

recipients, then AMG's receipt and redistribution of Plaintiffs' money would support money-had-and-received liability.

Furthermore, AMG concededly retains $233,864.84 in undistributed customer funds, which directly supports money-had-and-received claims for end users whose money comprises that retained amount. Whether additional Plaintiffs are entitled to recovery depends on the accuracy of AMG's prior distributions—an open factual question.

## VI.    CONCLUSION

Plaintiffs respectfully request the Court to deny AMG's motion without prejudice to renewal after completing discovery.

Dated: September 17, 2025

Respectfully submitted,

*/s/ M. Anderson Berry*

M. Anderson Berry
Gregory Haroutunian
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

Gary M. Klinger
Alexander E. Wolf
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
*gklinger@milberg.com*
*awolf@milberg.com*

J. Gerard Stranch, IV

21

**STRANCH, JENNINGS &
GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*

*Interim Co-Lead Counsel*

22

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standards III(A)(2) in that this pleading contains 5,499 words.

Dated: September 17, 2025                               */s/ M. Anderson Berry*

**CERTIFICATE OF SERVICE (CM/ECF)**

I certify that on September 17, 2025, I caused the foregoing to be electronically filed with

the Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

                                               */s/ M. Anderson Berry*

23