**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Lead Civil Action No. 1:24-cv-03259-DDD-NRN

*Consolidated with* 1:24-cv-03261-SBP; 1:24-cv-03262-SBP; 1:24-cv-03509-NRN; and 1:25-cv-00075-KAS

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, KAYLA MORRIS, TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD, DANIEL BREWER, PAUL TONNER, CORY ESPINOLA, STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD TODD HALE, and ALFRED ROTIMI, individually and on behalf of all similarly situated persons,

Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank; AMG NATIONAL TRUST BANK, a Colorado bank; and LINEAGE BANK, a Tennessee bank,

Defendants.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LINEAGE BANK'S MOTION TO DISMISS**

---

# TABLE OF CONTENTS

I. INTRODUCTION ....................1

II. LEGAL STANDARD ....................1

III. LINEAGE'S MOTION SHOULD BE DENIED BECAUSE IT ASSUMES COLORADO LAW GOVERNS ....................2

IV. PLAINTIFFS' CLAIMS ARE ADEQUATELY ALLEGED ....................2

- A. Lineage Continues to Retain Benefits Supporting an Unjust Enrichment Claim ....................2
- B. Plaintiffs State a Claim for Money-Had-and-Received ....................5
- C. Plaintiffs State a Negligence Claim Because Lineage Owed a Duty of Care ....................6
- D. Plaintiffs State a Claim for Conversion ....................10
- E. Plaintiffs State Claims for Accounting and Constructive Trust ....................12

V. PLAINTIFFS WITHDRAW THEIR BREACH OF FIDUCIARY DUTY CLAIM ....................12

VI. CONCLUSION ....................13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Express Travel Related Servs. Co.*,
2013 WL 6670532 (D. Colo. December 18, 2013) .......... 7, 8, 10

*Amegy Bank, N.A. v. Deutsche Bank, Ag.*,
2013 WL 12121328 (E.D. Tenn. Mar. 29, 2013) .......... 4, 6

*Bhatia v. Silvergate Bank*,
725 F. Supp. 3d 1079 (S.D. Cal. 2024) .......... 7, 8, 9

*Biscan v. Brown*,
160 S.W.3d 462 (Tenn. 2005) .......... 7

*BloomBank v. United Fid. Bank F.S.B.*,
113 N.E.3d 708 (Ind. Ct. App. 2018) .......... 3

*Broadnax v. Swift Transp. Co.*,
694 F. Supp. 2d 947 (W.D. Tenn. 2010) .......... 3, 6

*Coleman v. Sterling*,
2011 WL 1668956 (S.D. Cal. May 3, 2011) .......... 6

*Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*,
2018 WL 418566 (M.D. Tenn. Jan. 16, 2018) .......... 11

*Dias v. City and County of Denver*,
567 F.3d 1169 (10th Cir. 2009) .......... 1

*Duran v. Carris*,
238 F.3d 1268 (10th Cir. 2001) .......... 2

*Freeman Indus., LLC v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005) .......... 3

*Gutierrez v. Girardi*,
194 Cal. App. 4th 925 (2011) .......... 6

*Harris v. Smith*,
2020 WL 1893640 (Tenn. Ct. App. Apr. 16, 2020) .......... 12

*Hirsch v. Bank of Am.*,
107 Cal. App. 4th 708 (2003) .......... 4

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 2

*In re B & L Oil Co.*,
6 B.R. 731 (Bankr. D. Colo. 1985) .......... 6

*In re Canon Cameras Litig.*,
2006 WL 1751245 (S.D.N.Y. June 23, 2006) .......... 3

*In re Checking Account Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) .......... 11

*In re: Netgain Tech., LLC*,
2022 WL 1810606 (D. Minn. June 2, 2022) .......... 2

*Johnson v. Blendtec, Inc.*,
500 F. Supp. 3d 1271 (D. Utah 2020) .... 3

*Jones v. Varsity Brands, LLC*,
618 F. Supp. 3d 725 (W.D. Tenn. 2022) .... 4

*May v. Scott*,
388 F. Supp. 2d 828 (W.D. Tenn. 2005) .... 10, 11

*McAnulty v. Standard Ins. Co.*,
81 F.4th 1091 (10th Cir. 2023) .... 3

*PNC Multifamily Cap. Institutional Fund v. Bluff City Cmty. Dev. Corp.*,
387 S.W.3d 525 (Tenn. Ct. App. 2012) .... 11

*Process Specialties, Inc. v. Sematech, Inc.*,
2002 WL 35646610 (E.D. Cal. Jan. 18, 2002) .... 3

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) .... 1, 2

*Rodriguez v. TBK Bank, SSB*,
2017 WL 11637646 (Weld Cnty., Colo. Dist. Ct. Nov. 2, 2017) .... 7

*Sarsenstone Corp. v. Jewelinsk*i,
2012 WL 2513469 (Cal. Ct. App. June 28, 2012) .... 12

*Steelman v. Ford Motor Credit Co.*,
911 S.W.2d 720 (Tenn. Ct. App. 1995) .... 6

*Taco Bell, Inc. v. Lannon*,
744 P.2d 43 (Colo. 1987) .... 7

*Teselle v. McLoughlin*,
173 Cal.App.4th 156 (Cal. Ct. App. 2009) .... 12

Rules

Fed. R. Civ. P. 12(b)(6) .... 1

Other Authorities

C.J.S. Banks and Banking § 246 .... 7

# I. INTRODUCTION

The April 2024 collapse of Synapse Financial Technologies ("Synapse") left thousands of customers ("End Users") of financial technology platforms ("FinTechs") unable to access their funds held by multiple banks, including millions of dollars held by Defendants AMG National Trust Bank ("AMG"), Evolve Bank & Trust ("Evolve"), and Lineage Bank ("Lineage"). In the First Amended Consolidated Class Action Complaint ("Complaint"), Plaintiffs squarely allege they are End Users of various FinTechs, Plaintiffs' cash funds were deposited at the Defendant banks through the FinTech platforms by Synapse, Plaintiffs hold title to these funds, and, following Synapse's bankruptcy, the funds have not been returned in full to Plaintiffs. Compl. ¶¶ 6-21 (describing Plaintiffs' deposits and missing funds), ¶¶ 29-42 (explaining missing funds are held by one or more Defendants). The shortfall is estimated at $85 million. *Id.* ¶ 37.

In moving to dismiss, Lineage ignores these allegations and lays blame elsewhere. Lineage also believes Plaintiffs are simply out of luck and their cash funds—again, necessarily held by one or more Defendant banks—cannot be recovered from Lineage as a matter of law because Plaintiffs were not traditional depositors. Not so. Lineage's factual disagreement regarding the location of Plaintiffs' funds does not support dismissal at the pleadings stage. And because Plaintiffs, of course, are the rightful owners of their own cash funds, equity and good conscience require that Lineage return the remaining funds it possesses. Anything less would unjustly enrich Lineage.

# II. LEGAL STANDARD

Lineage's Motion is based on Fed. R. Civ. P. 12(b)(6). The Court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs. *Dias v. City and County of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009). A court "ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v.*

*Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008). "Plausible" does not mean "likely to be true" but only that "the allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001).

## III. LINEAGE'S MOTION SHOULD BE DENIED BECAUSE IT ASSUMES COLORADO LAW GOVERNS

As a threshold matter, Lineage exclusively argues failure to state a claim under Colorado law. But Plaintiffs do not reside in Colorado,[1] and Lineage is chartered and headquartered in Tennessee. Compl. ¶ 24. So, as against Lineage, Colorado law should not govern. The motion should be denied for this reason alone.

In any event, "choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action lawsuit" because it is fact intensive and requires inquiry on a claim-by-claim basis. *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *13-14 (D.N.J. Dec. 16, 2021); *In re: Netgain Tech., LLC*, No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *7 (D. Minn. June 2, 2022) (same). And Plaintiffs' claims are plausibly alleged under Tennessee, Colorado, or any other potentially applicable state law.

## IV. PLAINTIFFS' CLAIMS ARE ADEQUATELY ALLEGED

### A. Lineage Continues to Retain Benefits Supporting an Unjust Enrichment Claim

Unjust enrichment occurs when "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit

[1] Plaintiffs are residents of Arizona (Morris), California (Claxton and Yeh), Florida (Haddad), Illinois (Tonner), Indiana (Gendron), Maryland (Miller and Rotimi), Massachusetts (Margul), Michigan (Smith), Missouri (Maul), New York (Espinola and Izquieta), Oklahoma (Hale), Utah (Brewer), and Washington (Saquin). Compl. ¶¶ 6-21.

without commensurate compensation." *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1104 (10th Cir. 2023); *accord Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947, 952 (W.D. Tenn. 2010) ("The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable [ ] to retain the benefit without payment of the value thereof.'").

Here, Plaintiffs allege all three elements: (1) Lineage indirectly received cash funds from Plaintiffs through Synapse (Compl. ¶¶ 6-21, 30-36, 69-71); (2) the funds belong to Plaintiffs (*id.*); and (3) following Synapse's failure, Lineage has not returned these funds to Plaintiffs and it would be inequitable for Lineage to retain Plaintiffs' funds. *Id.* ¶¶ 39-42, 52, 72-75.

In response, Lineage argues its only customer was Synapse, and it did not receive funds directly from Plaintiffs, so there can be no unjust enrichment to Plaintiffs' detriment. Mot. at 9. That is wrong. It is well settled that unjust enrichment does not require a direct relationship or privity between the parties, and benefits can be conferred by third parties. *See, e.g., Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) ("A plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment" and "a plaintiff need not establish that the defendant received a direct benefit from the plaintiff") (Tennessee law); *In re Canon Cameras Litig.*, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006) (same) (New York law); *Process Specialties, Inc. v. Sematech, Inc.*, 2002 WL 35646610, at *19 (E.D. Cal. Jan. 18, 2002) ("there is no [privity] requirement under California law."); *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1292 (D. Utah 2020) (same) (Utah law); *BloomBank v. United Fid. Bank F.S.B.*, 113 N.E.3d 708, 729 (Ind. Ct. App. 2018) ("If a third person makes a payment to the defendant to

which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.”).

Thus, to remedy Lineage’s unjust enrichment, Plaintiffs do not need to allege they paid money directly to Lineage like traditional bank depositors. Plaintiffs’ superior legal interest in their own funds is sufficient. *Amegy Bank, N.A. v. Deutsche Bank, Ag*., 2013 WL 12121328, at *10 (E.D. Tenn. Mar. 29, 2013) (denying motion to dismiss unjust enrichment claim where third-party debtor wrongfully transferred proceeds to defendant Deutsche Bank because plaintiff Amegy Bank held superior claim); *Hirsch v. Bank of Am*., 107 Cal. App. 4th 708, 722 (2003) (“To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution.”); *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 725, 769-70 (W.D. Tenn. 2022), on reconsideration, 2023 WL 5662590 (W.D. Tenn. Aug. 31, 2023) (“it is plausible that the USASF retained some benefit from the registration fees that they indirectly received from Plaintiffs, even if some of those fees went to Varsity.”).

Next, according to Lineage, “the Complaint [never] alleges that Lineage ever held Plaintiffs’ specific funds.” Mot. at 9. This ignores the Complaint’s allegations. Plaintiffs allege their funds are currently held by one or more Defendants (which includes Lineage), and discovery is needed to identify the extent to which Lineage holds those funds. *E.g.*, Compl. ¶ 50 (“Plaintiffs and Class Members, through their accounts with various FinTechs, deposited money into Defendants which they have been unable to access for months.”); ¶ 52 (“Plaintiffs’ and Class Members’ remaining funds are still in Defendants’ hands and Defendants are acting so as to keep said funds despite those funds belonging Plaintiffs and Class Members.”). The fact that Plaintiffs cannot unwind the Synapse ledger at the pleadings stage—a feat Defendants have not yet accomplished—does not support dismissal. Rather, Plaintiffs “are left without access to their cash

deposits and with no clear ability to discern which of the Defendants holds their money, but their money is necessarily held by one or more of the Defendants." *Id.* ¶ 42.

Lineage also argues its "receipt of funds from Synapse—its actual customer" was not unjust, and there is nothing "inequitable for Lineage to retain any such benefit." Mot. at 9-10. Stated differently, according to Lineage, Plaintiffs do not hold superior title to *their own funds* because the funds were deposited using intermediaries. This, too, ignores Plaintiffs' core allegations. Again, Plaintiffs are End Users of the FinTechs; and the FinTechs partnered with Defendants who, in turn, maintained custody of *Plaintiffs' funds*. Compl. ¶¶ 30, 50. "In other words, the FinTechs allowed their customers (i.e., ordinary members of the public) to deposit cash into Defendants through the FinTechs' online platforms, mediated by Synapse, and Defendants maintained custody of these funds." *Id.* ¶ 30. Plaintiffs also allege Lineage knew the deposits were for the benefit of Plaintiffs and other End Users, and Synapse was only the "middleman"—which is why Lineage admittedly returned some funds directly to End Users. *Id.* ¶¶ 32, 36, 39, 41.

What is more, Lineage's unjust enrichment liability extends beyond the principal amounts to include the benefits Lineage derived from holding and using customer funds while those customers were denied access to their money. As alleged, "Defendants have also been unjustly enriched by accruing interest and deriving profits from the unauthorized use of Plaintiffs' and the Class's funds." Compl. ¶ 74. Between when customers first attempted to access their funds and when Lineage finally distributed money, Lineage had the use and benefit of substantial customer deposits that generated interest and other benefits. That Lineage may have partially distributed principal amounts does not eliminate its unjust enrichment from the interim use of those funds.

**B. <u>Plaintiffs State a Claim for Money-Had-and-Received</u>**

Plaintiffs' money had and received claim is plausibly alleged for the same reasons as their unjust enrichment claim. As Lineage acknowledges, money had and received exists to prevent

unjust enrichment. Mot. at 10. *Accord Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947, 952 (W.D. Tenn. 2010) (denying motion to dismiss and noting "A claim for money had and received is the equivalent of a claim for unjust enrichment under Tennessee law."); *Steelman v. Ford Motor Credit Co*., 911 S.W.2d 720, 724 (Tenn. Ct. App. 1995) ("An action for money had and received . . . may be maintained where one receives money or its equivalent under such circumstances that in equity and good conscience he ought not to retain and in justice and fairness it belongs to another."); *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011) (same); *Coleman v. Sterling*, 2011 WL 1668956, at *3 (S.D. Cal. May 3, 2011) (employer stated claim where it mistakenly paid bonuses to employees who refused to return the money).

Lineage's defense to the money had and received claim misunderstands this cause of action. The critical inquiry is whether Lineage had money which "in equity and good conscience" is Plaintiffs'. It makes no difference that Plaintiffs' money was indirectly delivered to Lineage with Synapse's assistance. *See Amegy Bank, N.A.*, 2013 WL 12121328, at *10 (denying motion to dismiss where "Defendants received $246,049.50 of Plaintiff's proceeds due to [a third party's] wrongful acts"). Additionally, the claim can succeed even when defendants have distributed funds to third parties, particularly when the distributions were improper or incorrect. "[A] cause of action for money had and received may be maintained by the plaintiff to whom money is owed directly against a defendant to whom money was erroneously paid by a third party." *In re B & L Oil Co.* 6 B.R. 731, 735 (Bankr. D. Colo. 1985). "[T]he fact that the plaintiff has a right of action against the third party, by whom payment was made, does not destroy the plaintiff's cause of action against the defendant who received the money." *Id.*

**C. <u>Plaintiffs State a Negligence Claim Because Lineage Owed a Duty of Care</u>**

Lineage's sole basis to dismiss the negligence claim (no duty of care) should be rejected, particularly at the pleadings stage. Mot. at 5-6. As a general matter, it is true that banks ordinarily

do not owe a duty of care to non-customers. But an exception exists—even in the absence of a direct relationship—where, as here, a "special relationship" is formed between the bank and non-customer. *See, e.g., Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1106-11 (S.D. Cal. 2024) (in a class action following the FTX bankruptcy, rejecting defendants' argument that "banks . . . do not owe a duty of care to non-customers" and sustaining negligence claim against bank that facilitated cryptocurrency transactions given "special relationship"); *Rodriguez v. TBK Bank, SSB*, No. 17cv30682, 2017 WL 11637646, at *3-4 (Weld Cnty., Colo. Dist. Ct. Nov. 2, 2017) ("the Court finds and concludes that the Defendants owed a duty to the Plaintiffs irrespective of whether they were 'customers'" of bank); *see also Biscan v. Brown*, 160 S.W.3d 462, 479 (Tenn. 2005) ("The special relationship doctrine carves out an exception to the general rule that there is no duty to act for the protection of a third party.").[2]

A finding of duty requires analysis of several non-dispositive factors, including "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987); *Biscan*, 160 S.W.3d at 479 ("public policy considerations" are also "crucial" under Tennessee law).

For example, in *Am. Express Travel Related Servs. Co.*, 2013 WL 6670532 (D. Colo. December 18, 2013), American Express made "erroneous deposits" into defendants/cross-plaintiffs' account at Wells Fargo Bank. *Id.*, at *1. When a dispute arose regarding the extent of the

[2] Even Lineage's own authority—9 C.J.S. Banks and Banking § 246—acknowledges that this "no-duty" rule applies only to standard banking relationships and does not create absolute immunity. Instead, special circumstances can create duties, and banks may have enhanced obligations when they have knowledge of third-party interests. *See id.*

error, cross-plaintiffs pursued a "counterclaim for negligence based on the hardship caused by [American Express's] erroneous deposits." *Id.* The court declined to dismiss the negligence claim and rejected the argument that banks never owe a duty to non-customers. *Id.*, at *2-4. The court reasoned American Express owed "a duty to exercise reasonable care when depositing money" because (1) it is foreseeable that "commingling of the account holder's funds with those of the responsible depositor is likely to cause logistical and legal difficulties" resulting in harm; (2) "neither the magnitude of the burden of guarding against erroneous deposits nor the consequences of placing this burden on banks is so considerable as to preclude imposition of a duty"; and (3) "When innocent individuals are injured by erroneous deposits they can neither predict nor protect against, and financial institutions can, by taking reasonable measures, prevent the erroneous deposits, the financial institution is in a far better position to prevent a loss to both itself and the individual victim." *Id.*, at *3-4.

Similarly, in *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1106-11 (S.D. Cal. 2024), plaintiffs adequately alleged defendant Silvergate Bank owed non-customers a duty of care where the non-customers' funds were misplaced or misappropriated. There, plaintiffs were end users of the FTX cryptocurrency exchange. *Id.* at 1105-06. Defendant Silvergate Bank processed currency transfers that "drove new customers to FTX and new deposits to Defendants." *Id.* at 1110; *see id.* at 1105-06. In declining to dismiss the negligence claim, the court reasoned in part: (1) "Plaintiffs, as FTX customers, were the intended beneficiaries of the Defendants' SEN platform, which was designed to facilitate and speed up crypto transactions," so the transactions were intended to affect plaintiffs; (2) "[i]t was foreseeable that allowing FTX customer funds to be deposited into non-FTX accounts would lead to fraud and harm the owners of those funds"; (3) "Plaintiffs' injury is certain" as "$8.9 billion of FTX customer funds remain missing"; (4) Silvergate Bank benefited

from the transactions via "income from transaction fees and interest on money deposited in FTX accounts"; and (5) as a matter of public policy, Silvergate Bank's ability to facilitate cryptocurrency transactions "created a 'seismic shift' in the crypto industry." *Id.* at 1108-11.

Against this backdrop, and under the unique circumstances at bar, Plaintiffs plausibly allege a special relationship supporting a duty of care.

First, the harm in this case was foreseeable because Lineage participated in a complex arrangement where it knew customer funds totaling over $250 million were pooled in accounts, designated for the benefit of End Users of various FinTechs, and facilitated by Synapse. Compl. ¶¶ 1-4, 29-36, 48, 50. Lineage was also on notice that it was handling funds belonging to third-party consumers, creating foreseeable risks if the intermediary systems contained errors. *Id.*

Second, the social utility of Lineage's conduct—participating in banking arrangements without adequate oversight of data reliability—is limited compared to the significant burden imposed on thousands of customers who lost their funds. *Id.* ¶¶ 43, 45-52 (explaining failure to independently track and provide access to End User funds). Requiring Lineage to exercise due diligence in tracking customer entitlements would not impose an unreasonable burden, particularly given Lineage's sophistication and the substantial fees or interest it earned from the arrangement.

Third, placing the burden of due diligence on Lineage, rather than individual End Users, aligns with basic principles of risk allocation. Lineage had superior knowledge of and control over its systems, exclusive access to transaction data, and the ability to monitor the accuracy of Synapse's data systems. Consumers, by comparison, had no ability to oversee or verify the reliability of the data systems tracking their funds. *Id.* ¶¶ 33-36 (explaining "Fintech users relied on the FinTechs and Partner Banks to account for users' funds").

Fourth, Lineage's (and the remaining Defendants') association with Synapse created a "seismic shift" in the FinTech industry. Defendants' pooled banking services enabled End Users to sign up with and deposit money through various FinTechs—a "growing sector of technology-based investing, money management, and wealth accumulation platforms" which "are not themselves banks . . . meaning they cannot maintain custody of customer funds." *Id.* ¶¶ 2-5.

Fifth, Plaintiffs are not merely seeking to hold Lineage liable for nonfeasance—Lineage's misfeasance also contributed to the harm. *See Am. Express Travel Related Servs. Co.* 2013 WL 6670532, at *3 (a bank may be held liable where its affirmative conduct caused or contributed to the injury). Lineage did not merely fail to prevent Synapse's mismanagement—it actively participated in a complex system involving pooled customer funds. Lineage's affirmative conduct included: (1) establishing and maintaining Demand Deposit Accounts (DDA) and For Benefit Of Accounts (FBO) which it knew contained pooled funds belonging to third-party End Users; (2) accepting tens of millions of dollars in End User deposits through Synapse; and (3) distributing End User funds based on Synapse data that contains material errors, contradictions, and irregularities. *E.g.*, Compl. ¶¶ 33-36 (describing accounts at the Defendant banks), ¶ 37 (noting $85 million shortfall), ¶ 38 ("Synapse and Defendants did not maintain accurate ledgers, leading to incorrect customer fund balances"), ¶ 41 (describing Lineage's public letter following Synapse's bankruptcy which confirms Lineage knew funds belonged to End Users).

Lineage does not analyze these relevant factors. Nor does it explain why such analysis would not be fact driven, or why it is not premature to resolve the question of duty now. Accordingly, Plaintiffs' negligence claim should not be dismissed.

### D. <u>Plaintiffs State a Claim for Conversion</u>

Conversion "is the appropriation of [a] thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *May v. Scott*, 388 F. Supp. 2d 828,

838 (W.D. Tenn. 2005). "In order to be liable for conversion, a defendant 'need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so; good faith is generally immaterial.'" *Id.* "Identifiable funds are deemed a chattel for purposes of conversion, and conversion may be established where a party shows ownership or the right to possess specific, identifiable money." *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, 2018 WL 418566, at *2 (M.D. Tenn. Jan. 16, 2018). *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1322-23 (S.D. Fla. 2010) (collecting cases from multiple states allowing conversion claims premised on plaintiffs' "right to possess the funds in their bank accounts upon demand to the bank, and they have alleged that Defendants wrongfully took funds from their accounts so that Plaintiffs were unable to possess and use those funds"). Even "a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for 'receiving a chattel.'" *PNC Multifamily Cap. Institutional Fund v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (citing Rest. (2d) of Torts § 223(d)).

Here, Plaintiffs allege they and the Class "owned and had a right to possess the cash funds deposited with Defendants" and Defendants have "wrongfully refused to return the property deposited by Plaintiffs and the Class upon proper demand." Compl. ¶¶ 87, 89. That is sufficient.

Lineage wrongly claims Plaintiffs never demanded the return of their funds. Plaintiffs demanded and continue to demand return of their funds from all Defendant banks, (Compl. ¶¶ 6-21 (explaining Defendants' refusal to return Plaintiffs' deposits and the specific sums at issue)), and to this day, Lineage refuses. Regardless, "Proof of a demand and refusal is not essential to recovery if a conversion is otherwise shown, as where the defendant denies the plaintiff's title and sets up ownership and a right of possession, or where an unlawful taking is established." *PNC Multifamily Cap. Institutional Fund*, 387 S.W.3d at 554.

Therefore, Plaintiffs' conversion claim should proceed.

### E. Plaintiffs State Claims for Accounting and Constructive Trust

Whether as standalone causes of action or remedies, Plaintiffs' requests for an accounting and constructive trust are appropriate. An accounting is warranted where "some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal.App.4th 156, 179-80 (Cal. Ct. App. 2009). A "fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting. The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." *Id.* (citations omitted).

Similarly, courts may impose a constructive trust "where a person acquires property knowing that another is entitled to its benefits." *Harris v. Smith*, 2020 WL 1893640, at *6 (Tenn. Ct. App. Apr. 16, 2020). *See also Sarsenstone Corp. v. Jewelinsk*i, 2012 WL 2513469, at *15-16 (Cal. Ct. App. June 28, 2012) ("[A] constructive trust may be imposed in practically any case" including "a constructive trust over money").

Here, Plaintiffs allege they "and the Class each deposited funds at one or more of Defendants through the FinTech platforms," Defendants had in their possession those funds belonging to Plaintiffs and the Class, and Defendants have not returned those funds to Plaintiffs and the Class. *E.g.,* Compl. ¶¶ 42, 102-04, 111-13. An accounting and imposition of a constructive trust upon any accounts held by Lineage that contain funds belonging to Plaintiffs and the Class is necessary.

## V. PLAINTIFFS WITHDRAW THEIR BREACH OF FIDUCIARY DUTY CLAIM

Plaintiffs withdraw their fiduciary duty claim and request dismissal without prejudice.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit Lineage's motion should be denied.

Dated: September 29, 2025

Respectfully submitted,

*/s/ Gary M. Klinger*

Gary M. Klinger
Alexander E. Wolf
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
*gklinger@milberg.com*
*awolf@milberg.com*

M. Anderson Berry
Gregory Haroutunian
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*

*Interim Co-Lead Counsel*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standards III(A)(1) in that this pleading contains 3,957 words.

Dated: September 29, 2025 *<u>/s/ Gary M. Klinger</u>*

**CERTIFICATE OF SERVICE (CM/ECF)**

I certify that on September 29, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*<u>/s/ Gary M. Klinger</u>*