**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Lead Case No.: 1:24-cv-03259-DDD-NRN

*Consolidated with* Case Nos. 1:24-cv-03261-SBP; 1:24-cv-03262-SBP, 1:24-cv-03509-NRN; and 1:25-cv-00075-KAS

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, KAYLA MORRIS, TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD, DANIEL BREWER, PAUL TONNER, CORY ESPINOLA, STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD TODD HALE, AND ALFRED ROTIMI, individually and on behalf of all similarly situated persons,

Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank;
AMG NATIONAL TRUST BANK, a Colorado bank;
LINEAGE BANK, a Tennessee bank,

Defendants.

---

**AMG NATIONAL TRUST BANK'S REPLY TO PLAINTIFFS' RESPONSE (ECF NO. 142) TO AMG'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 123)**

---

## INTRODUCTION

AMG held $110,290,040.10 in its Synapse Brokerage accounts per (1) the Synapse Trial Balance for AMG, (2) AMG's own internal reconciliation, and (3) AMG's external accounting expert. AMG has paid out more than 99.7% of that money to end users as instructed by its customer, Synapse Brokerage. After over a year of distributions, no recipient has challenged AMG's distributions as inaccurate. These undisputed facts are simple and easily verified by reviewing AMG's internal records, which AMG produced to Plaintiffs ***five months*** ago. Plaintiffs either haven't taken the time to review those records or have been unable to identify any errors, so instead they ask the Court to defer a summary judgment decision for nearly a year and a half. But five months is more than enough time to develop evidence in opposition to summary judgment—or at least to identify any ***specific*** discovery they claim is necessary to oppose AMG's motion, as required by Rule 56(d)—which Plaintiffs have not done. The Court should grant AMG's Motion for Summary Judgment.

## REPLY CONCERNING AMG'S UNDISPUTED FACTS

7-9, 15–16, 18, 20–21, 23–26, 28–30. Plaintiffs purport to dispute these facts based on lack of knowledge. But parties may not do so unless they state a "well-grounded request for additional discovery under Federal Rule of Civil Procedure 56(d)." DDD Civ. P.S. III.E.1.g.ii. As discussed below, Plaintiffs fail to identify any specific discovery they require to address these facts. Accordingly, these facts remain **undisputed**.

10–14, 25, 27. Although Plaintiffs purport to dispute these facts, Plaintiffs do not actually respond to them, nor do they provide a "brief factual explanation" for the denial. DDD Civ. P.S.

III.E.1.d (2019). Because Plaintiffs have failed to properly address these facts, they remain **undisputed**.

19, 22. Plaintiffs attempt to create a dispute by citing to a statement on Evolve's website claiming that Evolve's consultant, Ankura, found errors in Synapse's data for Evolve, which Plaintiffs speculate may affect Synapse's data for AMG. (*See* Opp'n ¶ 19, ECF No. 142.) Plaintiffs' citation to Evolve's website does not create a dispute. First, Plaintiffs have had Synapse's Trial Balance for AMG and all of AMG's internal records for months, so they could have (but apparently didn't) attempt to verify Synapse's data for AMG. (Decl. of I. Velickovic (Oct. 1, 2025) ¶ 5 & Ex. 1, Production Log; Seacrest Decl. ¶¶ 25–28 & Exs. 1–2, 36–42, ECF No. 125.) Second, Plaintiffs cannot create a genuine dispute of material fact by relying on a double-hearsay statement on a website. *See* Fed. R. Civ. P. 56(c)(2). Third, Plaintiffs' purported "fact" is irrelevant as to AMG—that is, even assuming Ankura did identify errors in Synapse's data for Evolve, that double-hearsay statement does not say Ankura found errors in Synapse's data for AMG. Accordingly, these facts remain **undisputed**.

31. In response, Plaintiffs offer argument, not evidence, that this fact depends on unverified knowledge, overlooks end users who "may" not know their account balances, and does not address the speculative "data reliability problems" described on Evolve's website. Plaintiffs' argument does not create a dispute. First, AMG's knowledge ***is*** verified: Mr. Seacrest's declaration was submitted under penalty of perjury. (Seacrest Decl. at 12.) Second, Plaintiffs offer no "factual explanation" for the denial or any "specific reference to … the record supporting the denial." DDD Civ. P.S. III.E.1.d. Third, Plaintiffs' reference to "data reliability problems" is based on

Evolve's statement about Ankura's findings as to Evolve, which are inadmissible double hearsay and irrelevant as to AMG. (*See supra* Reply Concerning AMG's Undisputed Facts ("RCUF") ¶¶ 19, 22.) Accordingly, this fact remains **undisputed**.

**RESPONSE CONCERNING PLAINTIFFS' DISPUTED FACTS**

32. AMG does not dispute that Evolve has posted a statement on its website claiming that its consultant, Ankura, has identified errors in Synapse's data for Evolve. That purported analysis has never been produced. Regardless, Plaintiff cannot create a dispute by citing that double-hearsay statement that is irrelevant as to AMG. (RCUF ¶¶ 19, 22.)

33–34. AMG does not dispute the quotations, which come from the Synapse Bankruptcy Trustee's Fifteenth Status Report. However, AMG ***has*** reconciled the Synapse Trial Balance with its own records and made payments accordingly—which Plaintiffs fail to dispute. (Seacrest Decl. ¶¶ 25–26, 36–42; Hall Decl. ¶¶ 7–11, ECF No. 123-16.) And Plaintiffs cannot avoid summary judgment based on inadmissible hearsay. Fed. R. Civ. P. 56(c)(2).

35–37. AMG disputes that any reconciliation as to AMG will require the additional year-and-a-half Plaintiffs seek. (*See* Seacrest Decl. ¶¶ 25–26, 36–42 (describing AMG's internal reconciliation); Hall Decl. ¶¶ 7–11 (describing AMG's expert's reconciliation).) Regardless, Plaintiffs have had the records necessary for reconciliation for ***months***. (Velickovic Decl. ¶¶ 9–10, Oct. 1, 2025.)

38. After AMG filed its Motion for Summary Judgment, Plaintiffs did not request additional transactional data or deposition discovery. (*Id.* ¶¶ 12–13.) With AMG's consent, Plaintiffs have had 51 days to respond to AMG's Motion. (*Id.* ¶ 14.)

39–40. Plaintiffs have had all of AMG's internal records necessary for reconciliation for nearly ***five months***. (*Id.* ¶¶ 9–10.)

## ARGUMENT

### I. PLAINTIFFS DO NOT MEET RULE 56(d).

"[R]elief under Rule 56(d) is not automatic." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Instead, to receive such relief, a party must submit an affidavit identifying "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts." *Adams v. C3 Pipeline Constr., Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (quotation omitted). Plaintiffs' request fails to meet Rule 56(d)'s requirements.

Plaintiffs offer two declarations: one by counsel, and one by their expert, Max Cranmer. Both declarations vaguely refer to the "monumental, time-consuming endeavor" of "tracing and unwinding" financial transactions to determine "the location of each Plaintiff's funds." (Stranch Decl. ¶ 22, ECF No. 143; *see also* Cranmer Decl. ¶¶ 18–20, ECF No. 144.) But they fail to identify what information Plaintiffs need from AMG, why they have not reviewed the information they've had for months, or how an additional year-and-a-half of discovery will help them figure it out.

Plaintiffs have not presented evidence and argument on these points because they can't. On May 7, 2025, AMG produced its bank statements and data from the Federal Reserve, which reconciles with AMG's own internal data. (Seacrest Decl. ¶¶ 25–28 & Exs. 1–2, 36–42; Velickovic Decl. ¶ 5 & Ex. 1, Oct. 1, 2025.) Plaintiffs have had the Synapse Trial Balance for AMG since July 28, 2025. (Seacrest Decl. ¶ 32 & Ex. 3.) Thus, Plaintiffs have already had five months to analyze

AMG's records to identify any inconsistencies or present evidence that AMG held more than it says it held or distributed amounts different than it says it distributed, and two months to verify that Synapse's Trial Balance reconciled to AMG's data.

Despite having ***months*** to analyze that data, Plaintiffs have identified ***no*** evidence to create a dispute. And they have not shown, as Rule 56(d) requires, the probable facts that are not available to them, why those facts cannot be presented from the materials they've had for months, or how additional time will enable them to obtain those facts. *Adams*, 30 F.4th at 968. Instead, they ask for another year-and-a-half to unearth some reason why AMG should remain in this lawsuit, during which time AMG will continue to suffer reputational and business harms associated with a lawsuit it doesn't belong in. Plaintiffs' Rule 56(d) request must be denied.

## II. PLAINTIFFS CITE NO ADMISSIBLE EVIDENCE TO CREATE A GENUINE DISPUTE OF MATERIAL FACT.

AMG reconciled its internal records with Federal Reserve records and then with the Synapse Trial Balance for AMG, all of which confirmed that AMG held $110,290,040.10 in the Synapse Brokerage accounts as of May 17, 2024. So, on Synapse Brokerage's instruction, AMG immediately began to distribute the funds—the precise relief Plaintiffs claim they want here. As of July 2025, AMG had distributed over $110,056,175.26—99.7%—with a tiny percentage left to distribute once AMG can confirm contact information. (Seacrest Decl. ¶¶ 25–26, 36–42, 43–45, 48, 54–56.)

Plaintiffs present no evidence on which a "reasonable jury could return a verdict" for them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs instead offer only hearsay, which is insufficient. Fed. R. Civ. P. 56(c)(2); *Johnson v. Weld County, Colo.*, 594 F. 3d 1202, 1208–

10 (10th Cir. 2010). Specifically, they argue the "fatal flaw" in AMG's argument is its reliance on the Synapse Trial Balance, which they say has "errors" based only on Evolve's website statement that its consultant "Ankura has identified material errors, contradictions, and irregularities" in Synapse data. (Opp'n 1, ¶ 19.) But Evolve's ***out-of-court*** statement about Ankura's alleged ***out-of-court*** findings are double hearsay, and they do not and cannot create a disputed issue of fact. *See* Fed R. Evid. 801; *Johnson*, 594 F.3d at 1208–10.

And those hearsay statements say nothing about AMG. Evolve claims Ankura identified "instances where Synapse's transaction records … were contradicted by Federal Reserve records and Evolve's own transaction data." Evolve Bank & Trust, "An Open Letter to Our Open Banking Customers" (Nov. 4, 2024), https://reconciliationbyevolve.com/Open-Letters/An-Open-Letter-to-Our-Open-Banking-Customers-November-4-2024?portalid=0. That does not suggest any problem with Synapse's records regarding AMG. Indeed, Synapse's transaction records at AMG did not "contradict[]" Federal Reserve or AMG records: instead, for AMG, all three reconciled. (Seacrest Decl. ¶ 36.)

Because Plaintiffs' only attempt to create a disputed issue of fact relies on inadmissible (and irrelevant) hearsay, the Court should grant summary judgment for AMG.

## III. PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiffs' Negligence and Breach of Fiduciary Duty Claims Fail Because AMG Owes No Duties to Plaintiffs.

Plaintiffs argue that their duty-based claims are fact-dependent, and that they allege "misfeasance," not "nonfeasance," which precludes summary judgment. (Opp'n 11, 14.) Both arguments fail.

First, there is no need to address whether a duty arose under the *Taco Bell* factors because the law is well-settled that no duty exists. In *Weil v. First National Bank of Castle Rock*, the Colorado Court of Appeals considered whether a bank should be liable for negligence when two employees used unregistered trade names to embezzle funds from their employer, the non-customer plaintiff. 983 P.2d 812, 813 (Colo. App. 1999). The Court found no authority that supported recognizing a duty of care to noncustomers, and after also considering the *Taco Bell* factors, it declined to create such a duty because it would be "unreasonable to require banks to make" the kind of "independent investigation" the plaintiff sought. *Id.* at 814. Instead, it agreed with numerous courts that have held "a bank does not owe such duties of care to a noncustomer." *Id. Weil* is directly on point: AMG owes no duties to non-customers, like Plaintiffs, as a matter of law.

To avoid *Weil*, Plaintiffs try to recast their claims against AMG as "misfeasance," which fails. First, *Weil* does not draw a distinction between "misfeasance" and "nonfeasance." Rather, it holds without equivocation that banks do not owe duties of care to noncustomers. *Id.* Second, Plaintiffs' argument that AMG engaged in "misfeasance" by "distributing over $110 million dollars" is divorced from Plaintiff's allegations, which are that AMG "***fail[ed]*** to maintain and hold cash deposits" for Plaintiffs. (Compl. ¶ 79, ECF No. 115 (emphasis added).) Plaintiffs cannot just reframe their entire case theory to avoid summary judgment. Besides, Plaintiffs have not provided any evidence of ***any*** alleged failures (whether pled or not), despite having access to statements for months. Third, Plaintiffs' misfeasance caselaw is easily distinguishable. In those cases, the banks wrongly accused non-customers of fraud, *Rodriguez v. TBK Bank, SSB*, 2017 WL 11637646, at *3 (Colo. Dist. Ct. Nov. 2, 2017); allowed one customer's clients to deposit funds into

other customers' accounts, *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1108 (S. D. Cal. 2024); or deposited $170,000 into the wrong account, *American Express Travel Related Servs. Co., Inc. v. Stevens*, 2013 WL 6670532, at *1 (D. Colo. Dec. 18, 2013). Plaintiffs make no such allegations here. Rather, they allege that AMG failed to ***supervise*** its customer's allocation of funds, which is alleged nonfeasance, not misfeasance—a distinction that is irrelevant anyway. *See Weil*, 983 P.2d at 814. Finally, even if the Court accepts Plaintiffs' reframing of their claims, there is no dispute that AMG's distributions were accurate. (*See supra* Argument § II.)

### B. Plaintiffs' Conversion Claim Fails Because AMG Did Not Wrongfully Deprive Them of Property.

Plaintiffs argue that AMG seeks "immunity" based on customer instructions. (Opp'n 18.) Plaintiffs invoke a strawman. AMG's actual argument is that Plaintiffs cannot prove conversion because AMG did not deprive them of any of their property and does not hold their money. (Mot. 18.) *See Comm'l Cred. Corp. v. Univ. Nat'l Bank of Fort Collins*, 590 F.2d 849, 852 (10th Cir. 1979). Plaintiffs don't and can't dispute these facts.

Plaintiffs also contend AMG must prove its conduct was commercially reasonable, citing a series of inapposite cases. Two of Plaintiffs' cases concern a ***statutory*** conversion claim that applies when a bank wrongly pays a forged check. *Natl'l Sur Corp. v. Citizens State Bank*, 593 P.2d 362, 364 (Colo. App. 1978) (discussing former Colo Rev. Stat. § 4-3-419(1)(c) (1973)); *Central, Inc. v. Cache Nat. Bank*, 748 P.2d 351, 353 (Colo. App. 1987) (same). Plaintiffs bring no claim under that statute, which has no applicability here and was amended over 30 years ago to eliminate "commercial reasonableness." Colo. Rev. Stat. § 4-3-420. The only other case Plaintiffs cite (and misquote), *Commercial Credit Corporation v. University National Bank of Fort Collins*, also offers no

support. There, a bank assigned checks from one account holder to another, and the Tenth Circuit found that that assignment was ***not*** conversion. 590 F.2d at 852.

**C. Plaintiffs Cannot Maintain an Unjust Enrichment Claim.**

Plaintiffs' unjust enrichment claim also fails. Apparently conceding that AMG has distributed 99.7% of the funds it held to end users, Plaintiffs claim that AMG's retention of less than 0.3% constitutes unjust enrichment. (Opp'n 19.) That is insufficient because unjust enrichment occurs only when it is "unjust for the defendant to retain the benefit." *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1107 (10th Cir. 2023). It is undisputed that AMG has retained those funds not as a benefit to itself, but because it has been unable to find contact information for end users. (Seacrest Decl. ¶¶ 54–56.) When AMG obtains that information, it will promptly return those funds. (*Id.* ¶ 56.) Plaintiffs' argument demonstrates the absurdity of its claims—if AMG distributes the money, it must have done so negligently; if AMG holds the money for too long, it must be liable for conversion and unjust enrichment. Plaintiffs' other unjust-enrichment theory—that AMG received a benefit from "interest" is not supported by either the caselaw or the record: Plaintiffs cite no cases and no evidence to support this argument, and so, it too fails.

**D. Plaintiffs' Money-Had-and-Received Claim Fails.**

Finally, Plaintiffs argue that they can maintain a money-had-and-received claim even though AMG distributed funds to end users (Opp'n 20.) Plaintiffs primarily rely on *In re B&L Oil Co.*, a 40-year-old bankruptcy case applying West Virginia law, which found that the plaintiff "failed to establish" a money-had-and-received claim against a bank. 46 B.R. 731, 739 (Bankr. D. Colo. 1985.) There, the plaintiff had given the money to a third party, who then gave it to a bank.

But when the bank kept the funds to satisfy the third party's debt, the court found the plaintiff could sue the third party, ***not*** the bank. *Id.* That situation has no analogy here. Plaintiffs also return to *National Surety*, which did not involve distributions at all. 593 P.2d at 365. Plaintiffs' legal argument that AMG may be liable for money-had-and-received ***if*** it incorrectly distributed the money it held fails as a matter of law. It also fails as a matter of fact, given Plaintiffs do not dispute that AMG correctly distributed the funds according to the Synapse Trial Balance.

## CONCLUSION

The Court should grant summary judgment in favor of AMG.

Dated: October 1, 2025

Respectfully submitted,

*s/ Iva Velickovic*

Hugh Q. Gottschalk
Eric L. Robertson
Iva Velickovic
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, Colorado 80202
Phone: 303.244.1800
Fax: 303.244.1879
Email: gottschalk@wtotrial.com
robertson@wtotrial.com
velickovic@wtotrial.com

*Attorneys for Defendant AMG National Trust*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standards III(A)(2) in that this pleading contains exactly 2700 words.

Dated: October 1, 2025

*s/ Iva Velickovic*

**CERTIFICATE OF SERVICE (CM/ECF)**

I certify that on October 1, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Iva Velickovic*