**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Lead Civil Action No. 1:24-cv-03259-DDD-NRN

*Consolidated with* 1:24-cv-03261-SBP;
1:24-cv-03262-SBP; 1:24-cv-03509-NRN; and
1:25-cv-00075-KAS

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, KAYLA MORRIS, TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD, DANIEL BREWER, PAUL TONNER, CORY ESPINOLA, STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD TODD HALE, AND ALFRED ROTIMI, individually and on behalf of all similarly situated persons,

Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank; AMG NATIONAL TRUST, a Colorado bank; and LINEAGE BANK, a Tennessee bank,

Defendants.

---

**EVOLVE BANK & TRUST'S COMBINED RESPONSE AND OPPOSITION TO AMG NATIONAL TRUST BANK'S (DKT. 135) AND LINEAGE BANK'S (DKT. 137) MOTIONS TO DISMISS CROSSCLAIMS**

---

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. ARGUMENT ........ 5

A. DISPUTED - Evolve Has Standing To Bring Claims Against Lineage And AMG. ........ 5

B. DISPUTED - Evolve Has Adequately Stated Each Of Its Crossclaims Against AMG And Lineage. ........ 8

1. DISPUTED - Evolve States A Claim For Unjust Enrichment, Money Had And Received, And An Accounting. ........ 8

2. DISPUTED - Evolve States A Claim For Conversion. ........ 9

IV. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Byron v. York Inv. Co.*,
296 P.2d 742 (Colo. 1956) .......... 10

*De Aleman v. Allstate Fire & Cas. Ins. Co.*,
No. 20-cv-02852, 2021 WL 1962893 (D. Colo. Feb. 12, 2021) .......... 11

*McDonnell v. Colorado Real Est. Comm'n*,
361 P.3d 1138 (Colo. App. 2015) .......... 10

*Petrella v. Brownback*,
697 F.3d 1285 (10th Cir. 2012) .......... 7

*Salida Bldg. & Loan Ass'n v. Davis*,
64 P. 1046 (Colo. App. 1901) .......... 10

*Sprint Comms. Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) .......... 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

**Other Authorities**

Fed. R. Civ. P. 41(c)(1) .......... 8

U.S. CONST. art. III .......... 5

## I. INTRODUCTION

The Motions to Dismiss Evolve's Crossclaims Under Rules 12(b)(1) and 12(b)(6)—filed by AMG National Trust Bank ("AMG") on August 22, 2025, Dkt. No. 135 ("AMG MTD") and Lineage Bank ("Lineage") on August 29, 2025, Dkt. No. 137 ("Lineage MTD")—make, at their core, only a single argument (which they repackage in different guises): that because AMG and Lineage "distributed the funds [they were] holding … based on the ledgers provided by Synapse," that somehow immunizes them from any claim that they continue to hold funds wrongfully. AMG MTD 8; *see also* Lineage MTD 8. But AMG's and Lineage's reliance on Synapse's flawed ledgers is not a defense of their conduct, but a damning indictment of it. After all, the entire point of Evolve's crossclaims—indeed, the only reason that this lawsuit exists in the first place—is that Synapse's ledgers were materially inaccurate. And so by insisting that they stubbornly refused to depart from those incorrect ledgers, AMG and Lineage confess that their distributions were likewise inaccurate. And not just inaccurate, but well short of what independent expert analysis shows that AMG and Lineage actually owed—shortchanging not just end users, but also Evolve itself. As a result, AMG and Lineage continue to hold funds that are rightfully the property of Evolve—which they refuse to return.

Evolve's crossclaims are thus no different than those that courts have adjudicated from time immemorial: The defendant has the plaintiff's property and refuses to give it back. AMG's and Lineage's suggestion that this classic lawsuit for the return of wrongfully held properly somehow fails to give rise to standing or state a claim is patently meritless. AMG's and Lineage's motions to dismiss should be denied.

## II. <u>BACKGROUND</u>

This case arises out of the collapse of Synapse Financial Technologies, Inc. ("Synapse"). Synapse is a technology company that coordinated banking services for end users of financial technology platforms ("fintechs"). Crossclaims ¶¶ 7-8. Synapse, in other words, "functioned as a third-party intermediary" between the fintechs on one hand, and FDIC-insured banks like Evolve on the other, to allow the fintechs' end users to access the banks' services. *Id.*

Pursuant to this arrangement, when Evolve held funds belonging to the fintechs' end users, it did so in comingled "For Benefit of" ("FBO") accounts. Crossclaims ¶ 9. Synapse was contractually responsible for maintaining ledgers that tracked each end user's entitlement to funds within those comingled accounts, as well as for (among other things) receiving and communicating end user payment instructions and tracking the movement and location of end user funds within the broader Synapse ecosystem. Crossclaims ¶ 8.

In September 2023, the contract between Synapse and Evolve expired, and the relationship between the two parties entered into a wind-down period. Crossclaims ¶ 10. So, at the fintech and end users' election, Synapse began migrating certain fintechs and their end users to a different program, operated by its subsidiary Synapse Brokerage LLC ("Synapse Brokerage"), which partnered with banks other than Evolve, including AMG and Lineage, to supply banking services. Crossclaims ¶¶ 12-13. In other words, Synapse began a transition in which end users would stop receiving banking services from Evolve, and start receiving them from AMG and Lineage through Synapse Brokerage; the funds of end users who migrated ("Synapse Brokerage End Users") would likewise stop being stored with Evolve and start being stored with AMG and Lineage. *See id.* To that end, beginning in October 2023, Synapse directed the transfer of more than $300 million of

Synapse Brokerage End User funds from Evolve to AMG and Lineage. Crossclaims ¶ 16.

But the various pieces of that migration did not proceed in lockstep. To avoid disruption to Synapse Brokerage End User's ability to use their accounts during this transition period, Evolve continued to provide payment processing services on their behalf—i.e., process debits and credits made using their Evolve-issued debit cards—even after their funds had been transferred to AMG and Lineage. Crossclaims ¶¶ 17, 38-39. After all, the precise location of the end users' funds within the Synapse ecosystem was not relevant to Evolve's entitlement to them: When Evolve processed a payment on behalf of an end user—i.e., when it transferred Evolve's own funds to process a transaction on behalf of a Sypnase Brokerage End User whose funds were being held by AMG or Lineage—it became immediately entitled to an equal amount of the end user's funds regardless of where those funds resided. For this very reason, Synapse Brokerage operated a series of sweeps between Evolve, AMG, and Lineage to allocate funds across the ecosystem—for example, funds would be swept *from* Synapse Brokerage (i.e., AMG or Lineage) to cover debit transactions processed by Evolve. However, Synapse Brokerage's sweeps were irregular, unpredictable, and failed to accurately reconcile funds among the banks.

But before Synapse could sweep back all amounts owed to Evolve to cover Synapse Brokerage End User transactions processed by the bank, Synapse declared bankruptcy and cut off Evolve's access to its dashboard. Crossclaims ¶¶ 18-19, 39. Upon losing that access and without the ability to conduct the required compliance and diligence involved with processing financial transactions, Evolve (and AMG and Lineage) froze all account activity for Synapse Brokerage End Users. Crossclaims ¶¶ 20-21. Shortly thereafter, AMG and Lineage returned end user funds based on the Synapse ledgers. Crossclaims ¶¶ 30-32. But Evolve, concerned about the accuracy of

Synapse's records, hired an independent forensic expert to analyze vast amounts of "data provided by Synapse, Evolve data, and data from the Federal Reserve" to "conduct a comprehensive reconciliation to" reconstruct the amount owed to each end user, and where those funds were held. Crossclaims ¶ 24. Despite Evolve's repeated requests, AMG and Lineage refused to either participate, or share their own data to aid this effort. Crossclaims ¶¶ 28-29.

That analysis revealed that the Synapse ledgers were wildly inaccurate. Indeed, in multiple instances, they showed significant variation in end user account balances at Evolve from one day to the next, despite there being no corresponding real-world movement of funds. Crossclaims ¶ 22. The analysis also determined that (as a result of the payment processing described above) a number of users had negative balances in their accounts with Evolve, despite simultaneously having a positive balance with their fintech. Crossclaims ¶¶ 38-39. In other words, for many users, Evolve had processed payments—and thus gained an entitlement to those users' funds being held with AMG or Lineage—but had not received a corresponding transfer from those banks. Accordingly, Evolve "is owed funds by AMG and Lineage to cover the costs of such transactions." Crossclaims ¶ 39.[1] AMG and Lineage, however, have refused to transfer those funds to Evolve, notwithstanding its entitlement to those funds. *See, e.g.*, Crossclaims ¶ 49. Instead, AMG and Lineage insist that they have made distributions to end users "in reliance on the inaccurate Synapse ledgers." Crossclaims ¶¶ 30, 40. It is not hard to see why AMG and Lineage would so adamantly cling to Synapse's inaccurate ledgers—doing so has allowed them to "pa[y] out inaccurate amounts" that are "less than the proper amounts owed by each." Crossclaims ¶ 30. But merely

---

[1] Additionally—and separate and apart from the funds that AMG and Lineage owe Evolve—the analysis also revealed that "AMG and Lineage likely also owe [end users] additional funds as well." Crossclaims ¶ 40.

wanting to pay less than they owe is not a valid justification—especially when Lineage itself has admitted that "the Synapse-provided trial balance data is contradictory, does not match the flow of funds, and cannot be verified." Crossclaims ¶ 32. The fact remains that "any distribution based solely on Synapse's records would necessarily be incorrect and unreliable." Crossclaims ¶ 30.

Evolve thus brings its crossclaims in this action to require AMG and Lineage to make payments based not on Synapse's admittedly flawed ledgers, but based on what each actually owes to Evolve. At bottom, then, this is thus an exceptionally simple case: Evolve's expert analysis has concluded that AMG and Lineage each hold funds that belong to Evolve; Evolve is simply suing to get them back.

## III. ARGUMENT

### A. DISPUTED - Evolve Has Standing To Bring Claims Against Lineage And AMG.

A plaintiff establishes Article III standing by pleading facts showing that "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The classic example of when those requirements are satisfied is when "a defendant has caused … monetary injury to the plaintiff." *Id.* at 425. After all, "monetary harms" are "obvious[ly]" concrete, particularized, and actual. *Id.* And when they are caused by the defendant, they are easily redressed: by making the defendant pay back the plaintiff.

Evolve alleges that it has suffered exactly such a textbook injury at the hands of AMG and Lineage. Indeed, Evolve alleges expressly that "AMG and Lineage owe Evolve funds" that they currently hold in their possession, but which they have refused to turn over. Crossclaims ¶ 45.

Evolve also explains exactly how AMG and Lineage came to owe it that money: During the wind-down period between Evolve and Synapse, "Evolve continued to provide payment processing activities to Synapse Brokerage End Users" who had "overall positive balances with their" fintech—i.e., as long as those users had sufficient funds stored somewhere within the Synapse ecosystem—"even when the associated deposit account at Evolve lacked sufficient funds to cover the transaction(s)." *Id.* This resulted in a "negative balance" in many end users' accounts at Evolve—meaning that Evolve paid out its own money to cover those users' transactions, and gained an entitlement to the users' funds (held elsewhere within the Synapse ecosystem) in the same amount. *Id.* The "funds necessary to make Evolve whole" for those transactions—i.e., to pay Evolve back for the funds of its own that it outlaid to cover end users' payments—were held by "AMG and Lineage." *Id.* But AMG and Lineage have refused to allow those funds to be transferred to Evolve "to cover the negative balances" Evolve incurred by outlaying its own funds. *Id.* This case is thus exactly the kind in which courts routinely find standing: It is based "upon a concrete and particularized 'injury in fact,' namely, [AMG's and Lineage's] failure to pay" Evolve what they owe it; AMG and Lineage "'caused' that injury,'" and this "litigation will 'redress' that injury—if the suits are successful, [AMG and Lineage] will pay what they owe." *Sprint Comms. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008).

Those same allegations disprove AMG's and Lineage's assertion that "Evolve never alleges that Evolve had a legal entitlement to the funds at issue, or that AMG held and distributed money belonging to Evolve." AMG MTD 4; *see also* Lineage MTD 7 (arguing that Evolve makes "no plausible allegations that Evolve suffered any personal or individualized harm"). Indeed, AMG and Lineage seem to recognize this, eventually acknowledging that Evolve does, in fact,

allege that AMG and Lineage have "in [their] possession 'funds owed to Evolve.'" AMG MTD 5; Lineage MTD 7. While AMG and Lineage attack that allegation as "unsubstantiated," Lineage MTD 7, and "expressly contradicted by Evolve's other factual allegations, which all clearly state that the money Evolve transferred to AMG belonged to end users and not to Evolve," AMG MTD 5, those arguments too are disproved by the allegations just discussed, which explain exactly how AMG and Lineage came to owe Evolve money, and charge specifically that AMG and Lineage owe money *directly to Evolve itself*, not just to end users.

Nor is it an answer to insist, as AMG and Lineage do, that AMG and Lineage did only what "Synapse directed and authorized" as reflected in "Synapse's allegedly incorrect ledger." Lineage MTD 7-8; *see also* AMG MTD 4-5. After all, the entire point of Evolve's suit is that Synapse's ledgers were materially inaccurate, so the instructions that Synapse provided to AMG and Lineage about who to pay (and how much) failed to accurately reflect the full scope of those banks' debts—including the debts they owe to Evolve.

And contrary to what Lineage says (AMG rightly does not make this argument), the injury that Evolve has suffered from AMG's and Lineage's decision to unyieldingly adhere to Synapse's flawed ledger is not "traceable *to Synapse* alone." *Compare* Lineage MTD 8, *with* AMG MTD 4-5. An injury is "fairly traceable" to a defendant so long as the defendant was a "'but for' cause of [the] plaintiff['s] alleged injuries." *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012). And here, AMG and Lineage were undoubtedly a "but for" cause of Evolve's injury—but for AMG's and Lineage's refusal to pay Evolve what it is owed, Evolve would not have been harmed.

Evolve's standing here is thus about as straightforward as it comes: AMG and Lineage are

holding money that they should have paid Evolve, but they refuse to make those payments. Evolve is thus injured by AMG's and Lineage's refusal; that harm is caused by AMG and Lineage; and it would be remedied by a judgment requiring AMG and Linage to pay Evolve what they owe. AMG's and Lineage's motions to dismiss for lack of standing should be denied.[2]

### B. DISPUTED - Evolve Has Adequately Stated Each Of Its Crossclaims Against AMG And Lineage.[3]

#### 1. *DISPUTED - Evolve States A Claim For Unjust Enrichment, Money Had And Received, And An Accounting.*

Disposing of AMG's and Lineage's spurious standing arguments goes a long way towards resolving their arguments on the merits as well. Indeed, the only merits arguments that AMG and Lineage make regarding Evolve's claims for unjust enrichment, money had and received, and an accounting are simple rehashes of their earlier (incorrect) assertions that (1) Evolve failed to allege that AMG and Lineage are holding money owed *to Evolve* as opposed only to end users; and (2) AMG and Lineage simply adhered to the (admittedly inaccurate) Synapse ledgers. *See* AMG MTD 9 (arguing, as to **unjust enrichment**, that "the money … at AMG was not Evolve's money to begin with" and that "AMG has returned funds to … end users based on the ledgers provided by Synapse"); Lineage MTD 10 (arguing, as to unjust enrichment, that "the funds at issue belonged to End Users" and that Evolve's "funds are not involved in this dispute"); AMG MTD 10 (arguing, as to **money had and received**, that "Evolve does not (and cannot) allege that AMG received any money belonging to Evolve"); Lineage MTD 11 (arguing, as to money had and received, that

---

[2] Because Evolve plainly has standing based on the monetary harm that AMG and Lineage have inflicted on it, AMG's and Lineage's separate discussions of other harms that Evolve suffered (e.g., its reputational harm) are entirely beside the point. AMG MTD 5-6; Lineage MTD 8.

[3] Evolve hereby gives notice that it voluntarily dismisses its crossclaim for contribution without prejudice, pursuant to Fed. R. Civ. P. 41(c)(1).

"Evolve does not plausibly allege that Lineage was ever in possession of Evolve's money"); AMG MTD 10-11 (arguing, as to **accounting**, that "Evolve's claim for an accounting fails because Evolve cannot state a claim for unjust enrichment"); Lineage MTD 11-12 (arguing, as to accounting, that "Evolve "fail[s] to plausibly allege that Lineage possesses any of Evolve's funds").

But as already explained, Evolve alleged specifically that AMG and Lineage are holding money that they owe to Evolve itself, not to end users. *See supra* § A. And AMG's and Lineage's adherence to Synapse's inaccurate ledgers is inculpatory, not exculpatory, as it only underscores that AMG and Lineage have failed to pay out all that they owe—including to Evolve. *See id.* AMG's and Lineage's repetition of their earlier failed standing arguments thus gets them no further when it comes to the merits. And because these recycled arguments are the only ones they offer as to why Evolve's claims for unjust enrichment, accounting, and money had and received should be dismissed, the result is the same: AMG's and Lineage's motions to dismiss those claims should be denied for the same reasons as their motions to dismiss for lack of standing.

### 2. *DISPUTED - Evolve States A Claim For Conversion.*

AMG and Lineage also repeat the same arguments with respect to Evolve's conversion claim. AMG MTD 8 (arguing, as to **conversion**, that "Evolve has not alleged and cannot plausibly allege the property in question belonged to it" and that "AMG distributed the funds it was holding to end users based on the ledgers provided by Synapse"); Lineage MTD 12 (arguing as to conversion that Evolve "do[es] not plausibly allege that Lineage possessed funds belonging to Evolve" because "the disputed funds belonged to End Users" and that "Synapse authorized and directed the transfer of funds"). For the reasons already given, those arguments continue to fail.

The only unique argument that AMG and Lineage make with respect to Evolve's conversion claim is their assertion that Evolve "never alleges that Evolve demanded the return of any money from AMG [and Lineage] or that AMG [and Linage] refused to return it." AMG MTD 8; Lineage MTD 13 (arguing that Evolve failed to "satisfy the 'demand for return' element of a conversion claim").

As an initial matter, though, Colorado[4] courts have made clear for over a hundred years that "'[f]or the purposes of an action for unlawful conversion, demand and refusal are never necessary.'" *McDonnell v. Colorado Real Est. Comm'n*, 361 P.3d 1138, 1147 (Colo. App. 2015) (quoting *Salida Bldg. & Loan Ass'n v. Davis*, 64 P. 1046, 1046 (Colo. App. 1901)). Rather, "[c]onversion is 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another'"—whether or not the person who is wrongfully deprived of their property demands it back or not. *Id.* ¶ 38 (quoting *Byron v. York Inv. Co.*, 296 P.2d 742, 745 (Colo. 1956)). Making such a demand can be useful, as a way "to furnish evidence of the conversion"—after all, if a plaintiff demands their property, and the defendant refuses to relinquish it, that can be powerful evidence that the defendant wrongfully converted it. *Id.* ¶ 40. But is has never been essential. AMG's and Lineage's argument thus fails on this ground alone.

In any event, as Lineage ultimately admits, Evolve does allege that "AMG and Lineage wrongfully refused to return the funds owed to Evolve upon proper demand." Crossclaims ¶ 72;

[4] In its motion to dismiss, AMG contends that Colorado law applies to Evolve's crossclaims (despite acknowledging that Evolve is not a resident of Colorado). AMG MTD 7 n.2. Similarly, Lineage relies on Colorado law in moving to dismiss Evolve's crossclaims. *See* Lineage MTD. While Evolve does not take a position on the applicable law at this stage of the litigation (and does not concede that Colorado law applies to its claims), for purposes of AMG's and Lineage's motions to dismiss, Evolve applies Colorado law to demonstrate that AMG and Lineage's arguments are meritless, even under their cited law.

Lineage MTD 13. While Lineage asserts that this allegation somehow does not count because it is "based on 'information and belief,'" its cited authority says exactly the opposite. *De Aleman v. Allstate Fire & Cas. Ins. Co.*, No. 20-cv-02852, 2021 WL 1962893, at *4 (D. Colo. Feb. 12, 2021) ("Plaintiff argues that she is permitted to make allegations based 'upon information and belief.' The Court agrees that this is true."), *cited at* Lineage MTD 13. Lineage fares no better with its claim that Evolve's allegation is "conclusory." Indeed, as Lineage itself recognizes, Evolve elaborates by alleging specifically that "Evolve requested Lineage [and AMG] to 'participate in an ecosystem-wide reconciliation,' or to 'provide the critical data necessary for Evolve to conduct an ecosystem-wide reconciliation,'" which Lineage and AMG refused. Lineage MTD 13 (quoting Crossclaims ¶¶ 28, 29, 48, 58, 71, 81). While Lineage writes these requests off as "seeking data, not return of property," that is disproved by the very allegations that Lineage quotes—while the latter request asked for "data," the former asked for Lineage's and AMG's "participat[ion]" in a reconciliation process, whereby Evolve would be made whole (through Lineage's and AMG's relinquishment of Evolve's funds that they were holding). Lineage MTD 13. Accordingly, even if pleading a demand were a necessary element of a conversion claim (and it is not), Evolve has satisfied that requirement here.

The Court should thus deny AMG's and Lineage's motions to dismiss Evolve's conversion claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny AMG's and Linage's Motions to Dismiss.

Dated: October 10¸ 2025

Respectfully submitted,

*/s/ Aravind Swaminathan*
Aravind Swaminathan
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel: 206-839-4300
Fax: 206-839-4301
aswaminathan@orrick.com

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: 212-506 3546
Fax: 212-506-5151
mrshapiro@orrick.com

Diana S. Fassbender
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037-3202
Tel: 202-339-8400
Fax: 202-339-8500
dszego@orrick.com

David G. Mayhan
Sarah Smyth O'Brien
BUTLER SNOW LLP
1801 California Street, Suite 5100
Denver, CO 80202
Tel: 720-330-2300
David.Mayhan@butlersnow.com
Sarah.Obrien@butlersnow.com

Daniel W. Van Horn
BUTLER SNOW LLP
6075 Poplar Ave #500
Memphis, TN 38119
Tel: 901-680-7331
Danny.VanHorn@butlersnow.com

Amisha R. Patel
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel: 202-339-8457
Fax: 617-880-1801
apatel@orrick.com

*Attorneys for Defendant Evolve Bank & Trust*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Aravind Swaminathan*
Aravind Swaminathan

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2025, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Aravind Swaminathan*
Aravind Swaminathan