**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Lead Case No.: 1:24-cv-03259-DDD-NRN

*Consolidated with* Case Nos. 1:24-cv-03261-SBP; 1:24-cv-03262-SBP, 1:24-cv-03509-NRN; and 1:25-cv-00075-KAS

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH, COLIN SMITH, ROD GENDRON, KAYLA MORRIS, TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD, DANIEL BREWER, PAUL TONNER, CORY ESPINOLA, STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD TODD HALE, AND ALFRED ROTIMI, individually and on behalf of all similarly situated persons,

Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank;
AMG NATIONAL TRUST BANK, a Colorado bank;
LINEAGE BANK, a Tennessee bank,

Defendants.

---

**AMG NATIONAL TRUST BANK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS EVOLVE'S CROSS-CLAIMS**

---

# INTRODUCTION

Evolve asks this Court to permit claims against a co-defendant bank—with no contractual, fiduciary, business, or other legal relationship between the banks—based on a bizarre theory that would render banks potentially liable to other banks seeking to cover their own customers' overdraft amounts. Evolve's argument is essentially that Evolve allowed its end-user customers to overdraw their accounts, and an unrelated bank holding funds for different customers owes money to Evolve because Evolve's records are out of balance. (ECF No. 150 at 4-5.) In other words, Evolve argues that when Evolve allows its customers to overdraft Evolve accounts, a down-the-line bank where those funds may have been ultimately deposited (supposedly AMG) is somehow obligated to repay Evolve for the overdraft amounts. Not surprisingly, AMG cannot find a single authority—and Evolve has cited none—legitimizing such an argument, which lacks any legal or logical basis. The Court can and should reject it and dismiss Evolve's claims for lack of standing.

Additionally, Evolve argues dismissal is improper based on its allegations that AMG incorrectly distributed the money in the account of AMG's customer, Synapse Brokerage, to end users because Synapse's data with respect to funds held by Evolve contained errors. But Evolve never alleges—and it plausibly can't—that Synapse's data with respect to funds held by ***AMG*** contains errors. The undisputed record evidence shows that AMG's internal records and the Synapse data for AMG fully reconciled—indeed, that is why AMG has sought summary judgment on Plaintiffs' claims. (ECF No. 123.) And although Evolve points to its "independent expert analysis"—which Evolve has never produced in the case—Evolve never alleges that any "independent expert analysis" was performed with respect to ***AMG***'s data. And tellingly, Evolve never disclosed any data, declarations, or evidence on this issue.

Evolve also rightly abandons its contribution claim, the only claim Evolve ***could*** have filed against AMG ***if*** Evolve actually alleged that it had paid more than its "pro rata share of the common liability." *See* Colo. Rev. Stat. § 13-50.5-102(2).

Evolve's opposition does nothing to salvage its legally flawed cross-claims against AMG. The Court should grant AMG's Motion to Dismiss.

## ARGUMENT

### I. EVOLVE LACKS STANDING TO SUE AMG TO RECOVER EVOLVE'S CUSTOMERS' OVERDRAFT AMOUNTS.

In opposing AMG's motion to dismiss for lack of standing, Evolve offers a bizarre explanation for why AMG supposedly owes it money. (ECF No. 150 at 6.) Evolve says that it chose to "continue providing payment processing services to [its] End User[]" customers using "Evolve-issued debit cards," "even when the associated deposit account at Evolve lacked sufficient funds," resulting in those end users having a "negative balance" in their Evolve accounts. (*Id.* at 3, 6.) Evolve then argues that because it expected some of those negative balance accounts to be included in sweep transfers between the banks, AMG (or Lineage) owes Evolve the overdraft amounts. (*Id.* at 6.) This argument is non-sensical and contrary to well-established legal principles.

In an overdraft situation, if a customer overdraws his or her account, the bank can elect to pay the item, in which case the bank typically deducts the amount of the overdraft from the customer's next deposit. Essentially, the bank "charges" the customer's account, and it is the customer—not some other bank—who is "liable for the amount of an overdraft." Colo. Rev. Stat. § 4-4-401(a)-(b) (codifying Uniform Commercial Code provisions on banking). This makes eminent sense because when a bank permits a customer to overdraft his or her account, the bank is essentially agreeing to a temporary loan. *See, e.g.*, *Sayan v. Riggs Nat. Bank of Wash., D.C.*, 544 A.2d 267, 269 (D.C. 1988) ("[P]ayment of an overdraft by the bank carries with it an implicit agreement by the customer to repay the loan." (interpreting same section of the UCC)). Again, there is no authority even remotely suggesting that a down-the-line bank receiving the customer's funds is liable to the lending bank for an unpaid overdraft. If anyone owes Evolve money, it is the end users whose overdrafts Evolve agreed to cover.

So, although Evolve might have standing as to ***them*** (tellingly, Evolve has never identified any individual whom Evolve claims owes it money), Evolve's argument fails to plausibly allege standing ***against AMG***. Evolve is apparently suggesting that when a bank allows its customers to overdraw accounts, that bank can recover the overdraft amounts from another bank where those overdrawn funds may or may not ultimately land. There is no legal or logical basis for this

argument. There is no caselaw supporting it. Put bluntly, Evolve does not have standing to bring claims ***against AMG*** because it has not suffered an injury in fact fairly traceable to AMG. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

With no apposite authority in support of its position, Evolve retreats to arguing general standing buzzwords, contending that it suffered a "textbook injury" because it "paid out its own money," and that "AMG and Lineage 'caused' that injury" because they haven't paid Evolve the money Evolve lent its own customers in overdrafts. (ECF No. 150 at 5-6.) Again, under this theory there is no basis whatsoever to find Evolve has standing against AMG. If Evolve transferred money for end-users from Evolve to Synapse Brokerage's account at AMG, that money did not even belong to Evolve; it belonged to Evolve's customers. Evolve may be able to establish standing against that customer for the unpaid overdraft amount, but it has no standing against AMG. Evolve cites no authority holding that a bank is somehow liable for money transferred to its customer because the forwarding bank allowed its own customer to overdraw its account.

Indeed, Evolve barely cites any authority at all, but when it does Evolve cites general standing cases that have nothing to do with this situation. For example, Evolve cites *Sprint Communications Co., LP v. APCC Services, Inc.*, for the proposition that courts find standing where a party suffered an injury that "litigation will redress." (ECF No. 150 at 6.) In actuality, *Sprint Communications* addressed whether an assignee had standing to sue in federal court even though the assignee had promised to pay litigation proceeds to the assignor. 554 U.S. 269, 271 (2008). The Court concluded that it did because the redressability inquiry turns on "whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation—not on what the plaintiff ultimately intends to do with the money he recovers." *Id.* at 287. Evolve doesn't allege standing as an assignee, and AMG has made no argument that Evolve lacks standing on that basis. Evolve lacks standing against AMG because AMG doesn't owe Evolve money that Evolve lent to its own customers in the form of overdrafts.

Evolve also cites *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), for the proposition that an injury is "fairly traceable" to a defendant so long as the defendant was a "but for" cause of the plaintiff's alleged injuries. (ECF No. 150 at 7.) *Petrella* doesn't stand for that

proposition, but even if it did, Evolve has failed to plausibly allege an injury fairly traceable to AMG. The "but for" cause of Evolve's alleged injury is ***Evolve***'s decision to cover its own customers' overdrafts, and those customers' alleged failure to pay them back.

Again, AMG was not involved in any alleged harm to Evolve: Evolve's customers authorized transactions, and Evolve chose to honor them. Evolve's theory is that it has standing against AMG because AMG has failed to ***remedy*** that harm (*see* ECF No. 150 at 6), but AMG has no obligation to remedy that alleged harm—Evolve's customers do. *See* Colo. Rev. Stat. § 4-4-401(a)-(b); *Sayan*, 544 A.2d at 269.

Because Evolve fails to allege these most basic elements of standing, either in its cross-claims or in arguing its invented overdraft theory,[1] Evolve's cross-claims must all be dismissed.

## II. FOR SIMILAR REASONS, EVOLVE FAILS TO STATE CLAIMS FOR UNJUST ENRICHMENT, MONEY-HAD-AND-RECEIVED, AND ACCOUNTING.

Evolve argues that it has plausibly alleged claims for unjust enrichment, money-had-and-received, and accounting based on allegations that AMG is holding Evolve's money and allegations that AMG "adhere[d] to Synapse's inaccurate ledgers." (ECF No. 150 at 9.) Evolve's arguments fail.

Evolve's unjust enrichment and money-had-and-received claims require Evolve to plausibly allege that AMG received a benefit at Evolve's expense "under circumstances that would make it unjust for [AMG] to retain the benefit." *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1107 (10th Cir. 2023) (unjust enrichment); *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1154 (10th Cir. 2023) (money-had-and-received). Evolve's accounting "claim" is not a separate claim for

[1] Although Evolve ***argues*** that it sent "its own" money to AMG, Evolve never ***alleges*** that it did so. (*See* ECF No. 132, Cross-Claim ¶ 45 (alleging only that Evolve processed transactions for end users, resulting in "negative balances").) While AMG has addressed Evolve's theory of injury substantively, the Court should also reject it because a party cannot rely on argument to supplement the failures of its pleadings (which Evolve has already once amended). *See Mullins v. City of Colo. Springs*, 575 F. Supp. 3d 1360, 1368 (D. Colo. 2021) ("[I]n deciding a motion to dismiss 'a federal court generally should not look beyond the confines of the complaint itself.'") (quotation omitted); *Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

relief at all. *Escobar, Inc. v. Barwest Grp., LLC*, No. 20-cv-02771-PAB-STV, 2021 WL 4319572, at *5 (D. Colo. Sept. 22, 2021) (Colorado courts do not "consider … an accounting to be a separate claim for relief" from unjust enrichment).

That Evolve chose to allow its own customers to overdraft their accounts does not provide any benefit to ***AMG***. If Evolve's customers received a benefit, those customers may be liable for any overdraft. *See* Colo. Rev. Stat. § 4-4-401(a)-(b) (a bank may charge "against the account ***of a customer*** an item that is properly payable from that account," and a customer who "benefited from the proceeds of the item" is "liable for the amount of an overdraft") (emphasis added).

Further, Evolve's unjust enrichment, money-had-and-received, and accounting claims fail for the separate reason that Evolve does not plausibly allege that AMG "retains" money belonging to Evolve. Evolve's theory that AMG continues to hold any money at all is based on argument—not plausible allegations—that "Evolve's expert analysis has concluded that AMG and Lineage each hold funds that belong to Evolve." (ECF No. 150 at 5.) Tellingly, that expert analysis has never been produced, and Evolve fails to plead (or argue or disclose) what funds AMG holds or in what amounts. Plus, Evolve's conclusory allegation is indisputably ***false***: AMG's undisputed record evidence submitted in support of summary judgment shows that AMG's internal records and the Synapse trial balance for AMG fully reconciled, and AMG paid out those funds. (ECF No. 123.) Evolve has never offered any evidence to contradict that record. Instead, Evolve's allegations are that it found mistakes only in Synapse's data for Evolve, but not for AMG. If Evolve had determined that AMG owed it money, surely it would be able to allege with some particularity how much and for what. It does not because it cannot.

AMG, unlike Evolve, did reconcile its records with Synapse's ledgers and has paid out 99.7% of the funds it held to Synapse's end users. Therefore, Evolve's unjust enrichment, money-had-and-received, and accounting claims all fail for the separate reason that AMG is, as Evolve admits, not unjustly retaining any money.

## III. EVOLVE FAILS TO STATE A CLAIM FOR CONVERSION.

Evolve makes two arguments in an effort to salvage its flawed conversion claim. First, although Evolve concedes it made no demand on AMG to return the allegedly converted property,

it argues no such requirement exists under Colorado law. Second, Evolve argues that it has plausibly alleged the remaining elements. Both arguments fail.

***First***, a conversion plaintiff must allege that the defendant "exercised dominion or control over property" that "belonged to" the plaintiff, without authorization. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012). Colorado law also requires plausible allegations that the plaintiff "demanded the return of the property" and that the defendant "refused to return it." *Id.*

Despite this authority, Evolve argues that "demand and refusal are never necessary" for "unlawful" conversion, based on *Salida Building & Loan Ass'n v. Davis*, 64 P. 1046, 1046 (Colo. App. 1901). Evolve overstates this case. In *Salida Building and Loan*, the Court of Appeals explained that, where a defendant comes into possession of property unlawfully—i.e., because the defendant ***stole*** it—a demand is not necessary because "the circumstances are [already] sufficient to prove conversion." 64 P. at 1046. But where "the defendant acquired possession of the [property] ***lawfully***"—as was the case in *Salida Building and Loan*—"an allegation of a demand and refusal was … necessary to make the complaint good." *Id.* at 1046-47. (emphasis added). Plaintiffs' other case, *McDonnell v. Colorado Real Estate Commission*, follows this principle too. There, the Court of Appeals agreed that a demand was not necessary because the defendant, an HOA president, had embezzled money. 361 P.3d 1138, 1147 (Colo. App. 2015). That is, because the defendant "withdrew [the] funds without authorization" and "used [them] for non-HOA purposes," the circumstances "were sufficient to prove conversion without proof of a demand or refusal." *Id.*

Here, by contrast, Evolve never alleges that AMG unlawfully converted any property. To the contrary, Evolve's allegations must mean that Evolve ***agreed*** to allow its end user customers to overdraft their accounts and ***agreed*** to the transfer of funds to other banks. (ECF No. 132, Cross-Claim ¶ 45 ("Evolve processed debits and withdrawals for Synapse Brokerage End Users … ***in accordance with Synapse Brokerage End Users' and Synapse's instruction***.") (emphasis added).) Because this is not a case in which the defendant came into possession of the funds unlawfully, "an allegation of a demand and refusal was … necessary to make the complaint

good." *Salida Bldg. & Loan*, 64 P. at 1046-47. Evolve plausibly alleges neither. (ECF No. 132, Cross-Claim ¶ 71.)

Evolve also argues that, to the extent a demand is required, Evolve's request that AMG "participate in a reconciliation process"—ostensibly to pay funds to end users, not Evolve—is sufficient to meet the demand requirement. (ECF No. 150 at 11.) Not so. Colorado law requires that the plaintiff "demand[] the return of the property." *L-3 Commc'ns Corp.*, 863 F. Supp. 2d at 1081. Evolve does not make that allegation.

***Second***, Evolve also fails to plausibly allege the other elements of conversion. Specifically, Evolve never alleges that AMG continues to hold any money—much less Evolve's. (*See, e.g.*, ECF No. 132, Cross-Claim ¶ 30 ("AMG ... returned funds to Synapse Brokerage End Users"); *id.* ¶ 35 (admitting that Evolve "cannot determine the extent to which" AMG owes it money).)

Because Evolve cannot allege AMG continues to hold any money, Evolve retreats to arguing that its "independent expert analysis" shows AMG's distributions to end users were wrong. (ECF No. 150 at 1.) But the "independent expert analysis" that Evolve trots out in argument (but never as evidence) shows no such thing, according to Evolve's own allegations. Evolve alleges that its "expert" reconciled "data provided by Synapse, Evolve data, and data from the Federal Reserve ... for transactions at Evolve." (ECF No. 132, Cross-Claim ¶ 24.) It "did not subdivide Synapse Brokerage End User ecosystem balances by institution, with the exception of the Evolve balance." (*Id.* ¶ 25.) So, it could not "determine[] the extent to which AMG ... owe[s] ... other Synapse ecosystem banks[] funds." (*Id.* ¶ 35.) In short, Evolve's "expert" analysis says nothing about AMG.

Because Evolve has not plausibly alleged that AMG "exercised dominion or control" over any property "belong[ing] to" Evolve, it fails to state a claim for conversion. *L-3 Commc'ns Corp.*, 863 F. Supp. 2d at 1081.

## CONCLUSION

For these reasons, the Court should dismiss Evolve's cross-claims against AMG in their entirety and with prejudice.

Dated: November 7, 2025

Respectfully submitted,

*s/ Eric L. Robertson*

Hugh Q. Gottschalk
Eric L. Robertson
Iva Velickovic
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, Colorado 80202
Phone: 303.244.1800
Fax: 303.244.1879
Email: gottschalk@wtotrial.com
robertson@wtotrial.com
velickovic@wtotrial.com

*Attorneys for Defendant AMG National Trust*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standards III(A)(2) in that this pleading contains 2,700 words.

Dated: November 7, 2025 *s/ Eric L. Robertson*

**CERTIFICATE OF SERVICE (CM/ECF)**

I certify that on November 7, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Eric L. Robertson*