# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Lead Civil Action No. 24-cv-03259-DDD-NRN

*Consolidated with* 24-cv-03261-SBP; 24-cv-03262-SBP;
24-cv-03509-NRN; 25-cv-00075-KAS; 25-cv-03284-DDD

OLGA MARGUL, KELLI JO CLAXTON,
HENRY YEH, COLIN SMITH, ROD
GENDRON, KAYLA MORRIS, TIMOTHY
MILLER, DAWN SAQUIN, IMENE
HADDAD, DANIEL BREWER, PAUL
TONNER, CORY ESPINOLA, STEPHANIE
IZQUIETA, KATHERINE MAUL,
RICHARD TODD HALE, ALFRED
ROTIMI, and ASHLEY FELTON,
individually and on behalf of all similarly
situated persons,

      Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas
bank; AMG NATIONAL TRUST, a Colorado
bank; LINEAGE BANK, a Tennessee bank;
and EVOLVE BANCORP, INC., an Arkansas
limited liability company,

      Defendants.

---

## EVOLVE BANK & TRUST'S AND EVOLVE BANCORP, INC.'S MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.   BACKGROUND ................................................................................................................. 2

III.  LEGAL STANDARD.......................................................................................................... 4

IV.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE
      GRANTED ......................................................................................................................... 5

      A.    Plaintiffs' Fraud Claim Fails...................................................................................... 5

            1.    Plaintiffs fail to sufficiently allege falsity..................................................... 6

            2.    Plaintiffs fail to sufficiently allege actual reliance and causation............... 9

      B.    Plaintiffs Fail to State a Claim Under California Penal Code § 496. ...................... 9

V.    CONCLUSION................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alter v. DBLKM, Inc.*,
    840 F. Supp. 799 (D. Colo. 1993) ............................................................................................. 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................... 4

*Bristol Bay Prods., LLC v. Lampack*,
    312 P.3d 1155 (Colo. 2013) ...................................................................................................... 6

*Ehrlich v. FDIC*,
    357 F. Supp. 196 (N.D. Ill. 1973) ............................................................................................ 7

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
    238 Cal. App. 4th 200 (Cal. Ct. App. 2015) .......................................................................... 10

*Gee v. Pacheco*,
    627 F.3d 1178 (10th Cir. 2010) ................................................................................................ 4

*Hunnicutt v. Zeneca, Inc.*,
    2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) .................................................................... 12

*In re Collins Sec. Corp.*,
    998 F.2d 551 (8th Cir. 1993) .................................................................................................... 7

*Kravetz v. Bridge to Life, Ltd.*,
    2019 WL 13277431 (N.D. Ill. Mar. 8, 2019) ................................................................... 10, 11

*L.A. Turf Club Inc. v. US Racing*,
    2024 WL 5423013 (C.D. Cal. Oct. 18, 2024) .................................................................. 10, 11

*L5L Indus., Inc. v. Kiss Indus., LLC*,
    2022 WL 704705 (D. Colo. Jan. 21, 2022) .............................................................................. 5

*N. Ala. Salmon Co. v. Pillsbury*,
    174 Cal. 1 (Cal. 1916) ............................................................................................................ 10

*OptumRx PBM of Ill., Inc. v. Nat'l Benefit Builders, Inc.*,
    2025 WL 2636574 (D. Colo. Sept. 12, 2025) .......................................................................... 5

*Regions Bank v. Legal Outsource PA*,
    2015 WL 4164907 (M.D. Fla. July 9, 2015) ............................................................................ 7

*Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*,
    2024 WL 4003894 (C.D. Cal. June 5, 2024) ....................................................................... 10

*Shaw v. 17 West Mill St., LLC*,
    307 P.3d 1046 (Colo. 2013) ................................................................................................ 5

*Smith v. Pizza Hut, Inc.*,
    2011 WL 2791331 (D. Colo. July 14, 2011) ..................................................................... 12

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (Cal. 2011) ............................................................................................. 10

*Todd v. Hansen*,
    735 F. App'x 540 (10th Cir. 2018) ................................................................................... 4, 7

*United States ex rel. Lemmon v. Envirocare of Utah, Inc.*,
    614 F.3d 1163 (10th Cir. 2010) ........................................................................................ 5, 9

*United States v. Iverson*,
    818 F.3d 1015 (10th Cir. 2016) ........................................................................................... 7

*Wood v. Houghton Mifflin Harcourt Pub. Co.*,
    569 F. Supp. 2d 1135 (D. Colo. 2008) ................................................................................ 5

**Statutes**

12 U.S.C. § 1821 ..................................................................................................................... 7

**Codes**

Cal. Penal Code § 496 ..................................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 4

Fed. R. Civ. P. 8 .................................................................................................................. 5, 8

Fed. R. Civ. P. 9(b) ......................................................................................................... 1, 5, 8

**Regulations**

12 C.F.R. § 330.5 .................................................................................................................... 8

**Other Authorities**

Restatement (Second) of Torts (1977) ..................................................................................... 5

Restatement (Third) of Torts: Liab. for Econ. Harm (2020) ..................................................... 5

## I.    INTRODUCTION

Plaintiffs introduce several new and amended claims in their Second Amended Complaint ("SAC") as to Defendants Evolve Bancorp, Inc. ("Bancorp")[1] and Evolve Bank and Trust ("Evolve") (collectively the "Evolve Defendants"), two of which—Counts eight and ten—fail to state a claim upon which relief can be granted.

First, Plaintiffs' common law fraud claim (Count eight) fails to plead falsity and does not satisfy the heightened pleading standard required for fraud claims. Plaintiffs allege that a third party, Synapse Financial Technologies, Inc. ("Synapse"), failed to perform its contractual obligations and mismanaged tens of millions of dollars of end user funds when it failed to properly account for Plaintiffs' funds, including when it directed massive transfers from Evolve to other banks. Critically, Plaintiffs do not specifically allege what the Evolve Defendants did that was fraudulent. And though Plaintiffs suggest that Evolve misrepresented its status as an FDIC-insured financial institution, that is false. Evolve is and was at all relevant times FDIC-insured—a fact of which the Court can take judicial notice. Because falsity is an essential element of fraud, Count eight fails.

Moreover, any claim that Evolve's FDIC-insurance should have covered Synapse's malfeasance also fails as a matter of law. FDIC insurance is triggered only when a bank closes or fails—anything that happens pre-insolvency cannot result in deposit insurance coverage. Plaintiffs do not (because they cannot) allege that Evolve failed or approached insolvency. Thus, these claims too fail out of the gate. Further, any remaining fraud allegations are too vague to satisfy Federal Rule of Civil Procedure 9(b), which requires fraud claims be pled with specificity. Plaintiffs cannot plausibly allege actual reliance and causation, but the law requires pleading both. For one, Plaintiffs do not specify what they relied on. And while Plaintiffs allege that they would not have maintained their deposits at Evolve if they knew more, Plaintiffs cannot escape that

---

[1] Plaintiffs previously voluntarily dismissed Bancorp, Dkt. 107.

Synapse controlled the deposits and began migrating end user funds away from Evolve more than six months before declaring bankruptcy. Plaintiffs cannot plausibly allege that they maintained their funds at Evolve under false pretenses when (a) they explicitly authorized Evolve to accept transfer instructions from Synapse and their fintech; and (b) learned through various notices and communications that their funds were being transferred away from Evolve to the Synapse Brokerage Cash Management Program. Thus, Plaintiffs' fraud claim fails to articulate what conduct by the Evolve Defendants was fraudulent, reliance on that purported conduct, and how that alleged reliance caused any damage. The Court should dismiss Count eight with prejudice.

Count ten—which alleges that the Evolve Defendants received or withheld stolen property in violation of California Penal Code § 496 fails for at least three reasons. First, California statutes presumptively do not apply to conduct outside the state. And nothing in the SAC is sufficient to displace that presumption. Evolve is not a California company, and the SAC cannot allege that Evolve either received or withheld property in California. Court after court has ruled that Section 496 does not apply extraterritorially on alleged facts like those here. Plaintiffs' failure to overcome the presumption against extraterritoriality requires dismissal. Second, the claim fails to adequately allege knowledge that the property at issue was stolen. Third, non-California Plaintiffs lack standing to bring a claim under Section 496 against Evolve, and the claim must at least be dismissed as to Plaintiffs Margul, Smith, Gendron, Morris, Miller, Saquin, Haddad, Brewer, Tonner, Espinola, Izquieta, Maul, Hale, Rotimi, and Felton.

Accordingly, this Court should dismiss Counts 8 and 10 with prejudice.

## II.   BACKGROUND

Plaintiffs' new causes of action against the Evolve Defendants involve the relationship between Evolve, as an FDIC-insured bank, and Synapse, as a financial-technology provider, on the one hand, and between Synapse and multiple financial-technology ("fintech") companies, on the other. A fintech may offer FDIC-insured deposit products to its customers (e.g., end users such as Plaintiffs) only through an FDIC-insured bank. SAC ¶ 35. In most cases, the fintech's product

(usually a website or mobile application) could not interface directly with bank systems. *Id.* Synapse, a financial technology intermediary, solved that problem by using an application program interface ("API") to allow information to flow between the fintech and the bank. *Id.* ¶¶ 35, 37-39. But Synapse did more than just translate data between systems: it was the only entity with complete visibility into the entire ecosystem, maintaining separate contractual relationships with the fintechs and with the banks. *Id.* ¶¶ 35, 37, 41. All transactions had to pass through Synapse's interface; it was the only party with full access to information and data at both ends of this process. *Id.* ¶¶ 3, 37, 41, 71. Further, Synapse was contractually obligated to monitor the transaction data and maintain the ledger for each fintech's end user funds. *Id.* ¶ 37 ("Synapse managed the account ledgers."), ¶ 41 ("[T]he FinTechs and Partner Banks, in turn, relied in part on Synapse to keep track of users' funds."). Synapse failed at that duty spectacularly.

Synapse should have maintained appropriate records of each end user's respective deposit balance (and their corresponding transactions and totals) within for-the-benefit-of ("FBO") accounts at Evolve and other banks in the Synapse ecosystem. *Id.* ¶¶ 41-42. Though end users may have deposited funds at Evolve through their respective fintech app, Plaintiffs do not allege that any fintechs—including those listed in the SAC (e.g., Yotta, Juno, Mainvest)—had contractual relationships with Evolve. Nor can they. All contractual privity started and ended with Synapse. And it was incumbent on Synapse to maintain the accounting ledger for those funds for its respective fintech clients. *Id.* ¶¶ 3, 37, 41.

In September 2023, Synapse and Evolve began winding down their relationship. *Id.* ¶¶ 43-44. Thereafter, Synapse began transitioning fintechs wishing to retain their relationship with Synapse away from Evolve to Synapse's newly established Cash Management Program, which was run by its wholly owned subsidiary, broker-dealer Synapse Brokerage LLC ("Synapse Brokerage"). *Id.* ¶¶ 39, 43, 44. In April 2024, Synapse filed for bankruptcy and soon thereafter revoked access to its ledger. *Id.* ¶ 45. The bankruptcy proceedings revealed that Synapse

3

mismanaged millions in end user funds. *Id.* ¶¶ 45-46.

Plaintiffs' allegations go to Synapse's malfeasance: "the failure of a startup technology provider left several banks unable to process accounts worth over $250 million." *Id.* ¶ 57. Synapse was that technology provider, and it failed; Synapse's failure prevented many institutions (including a federal bankruptcy court-appointed trustee) from accounting for significant end user funds. *Id.* ¶¶ 4, 45-47, 51, 55.

The SAC adds a common law fraud claim that alleges FDIC insurance misrepresentations. But the only representation alleged is one on end users' Account Statements (made by Plaintiffs' fintech) that Evolve is a "Member[] FDIC," and the same representation on Evolve's website stating that it is an "FDIC Insured backed by the full faith and credit of the United States Government." *Id.* ¶¶ 63-64. That representation was and remains true.

The SAC also adds a claim under Section 496 of the California Penal Code—for withholding stolen property on the basis that Plaintiffs allegedly deposited funds into Synapse accounts "domiciled in California" and that Evolve allegedly withheld property from end users that had been "obtained under false pretenses constituting theft." *Id.* ¶¶ 161, 163-64. Setting aside that funds could not be deposited into "Synapse accounts" because funds could be deposited only at a bank, the SAC lacks any allegation that Evolve knew Plaintiffs' property was "stolen."

## III.    LEGAL STANDARD

A district court must dismiss a complaint under Rule 12(b)(6) for failure to state a claim where the plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept "well-pleaded factual allegations" as true but need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A court may also consider materials incorporated into the complaint by reference and any matters subject to judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). A court "need not credit statements contradicted by" judicially noticeable facts. *Todd v. Hansen*, 735 F. App'x 540, 541 (10th Cir. 2018).

4

"It is well-established in the Tenth Circuit that Rule 9(b)'s heightened standard applies to any claim sounding in fraud." *OptumRx PBM of Ill., Inc. v. Nat'l Benefit Builders, Inc.*, 2025 WL 2636574, at \*17 (D. Colo. Sept. 12, 2025) (internal quotation marks omitted). That standard requires plaintiffs to allege the "who, what, when, where and how of the alleged claims." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.    Plaintiffs' Fraud Claim Fails.

Plaintiffs have added a common law fraud claim against only the Evolve Defendants.[2] *See* SAC, Count Eight. The elements of fraud are: "(1) that the defendant made a false representation of a material fact; (2) that the party making the representation knew it was false; (3) that the party to whom the representation was made did not know of the falsity; (4) that the representation was made with the intent that it be acted upon; and (5) that the representation resulted in damages." *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135 (D. Colo. 2008); *see also Shaw v. 17 W. Mill St., LLC*, 307 P.3d 1046 (Colo. 2013).[3]

A fraud claim also requires plausible allegations of actual reliance. *Alter v. DBLKM, Inc.*, 840 F. Supp. 799, 811 (D. Colo. 1993) ("[S]ubstitute theories of reliance are not available

---

[2] In doing so, Plaintiffs impermissibly conflate Evolve and Bancorp. *See L5L Indus., Inc. v. Kiss Indus., LLC*, 2022 WL 704705, at \*2 (D. Colo. Jan. 21, 2022) (explaining that "[g]roup pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants"). Plaintiffs allege no representation by Bancorp, much less a false one on which Plaintiffs reasonably relied. Instead, Plaintiffs rest on a conclusory assertion that Bancorp knew of the purported "deficiencies" at Evolve and "failed to exercise its authority" and that the Evolve Defendants conspired or acted jointly as to all allegations. SAC ¶ 29. Because that flimsy allegation does not survive scrutiny under Rule 8, it cannot satisfy Rule 9(b).

[3] For purposes of this Motion, the Evolve Defendants apply Colorado law while all reserving all arguments regarding choice of law. The Evolve Defendants are citizens of Arkansas and Tennessee, and Plaintiffs are citizens of 15 states: Arizona, California, Florida, Illinois, Indiana, Maryland, Massachusetts, Michigan, Missouri, New York, Oklahoma, Utah, and Washington. The common law fraud analysis and result is the same no matter which jurisdiction's law applied. *See* Restatement (Second) of Torts §§ 525, 537 (1977) (citing authorities from many jurisdictions); Restatement (Third) of Torts: Liab. for Econ. Harm §§ 9, 11 (2020) (similar).

under the common law; a plaintiff must prove actual reliance as an essential element of a fraud claim."). That showing requires not just actual reliance but "the reasonableness of that reliance, and that [the] reliance caused [the] damages." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013).

Plaintiffs allege only that the Evolve Defendants represented that Evolve was FDIC-insured. SAC ¶ 64. Plaintiffs assert that: (1) end users understood this representation to mean that their funds were FDIC-insured and individually protected up to $250,000 "in the event of any disruption" (*id.* ¶ 142); (2) this representation was "false, or at minimum misleading" because FDIC insurance was not available for these accounts (*id.* ¶¶ 143-47); and (3) Plaintiffs relied on this representation to their detriment because they maintained their deposits at Evolve (*id.* ¶¶ 148-49). These conclusory allegations are insufficient to state a fraud claim against the Evolve Defendants.

### 1.    *Plaintiffs fail to sufficiently allege falsity.*

Plaintiffs tellingly do not clarify which specific alleged misrepresentation induced Plaintiffs' reliance or how that reliance was reasonable and to Plaintiffs' detriment. Indeed, rather than articulating the precise statements by the Evolve Defendants on which they apparently relied, Plaintiffs collect various statements—nearly all made by third parties—to impugn the Evolve Defendants. But the only actual statement alleged to have been made by Evolve itself was that it was FDIC insured. And Plaintiffs point to *no* statement by Bancorp on which they relied, because none exist.

This obfuscation cannot hide the fundamental defect with Plaintiffs' fraud claim—that Evolve is in fact an FDIC-insured bank. Put simply, the statement is not false. Evolve is and always has been a member FDIC. *See* FDIC, BankFind Suite (#1299),

6

https://tinyurl.com/bdexhyvy.[4]  *See Todd*, 735 F. App'x 540 (noting that a court need not credit allegations contradicted by judicially noticeable facts).  But Plaintiffs cannot, as a matter of law, recover from the Evolve Defendants for statements allegedly made by others: most of Plaintiffs' allegations concern what fintechs told their end users, and allegedly deceptive statements by those fintechs about their customers' transition away from Evolve to Synapse Brokerage accounts.  *See, e.g.*, SAC ¶ 67 n.6.

Worse, Plaintiffs' reasoning misunderstands how FDIC insurance works.  FDIC insurance is triggered when a covered institution is "closed on account of inability to meet the demands of its depositor."  12 U.S.C. § 1821.  As the FDIC explains, "FDIC deposit insurance protects bank customers in the event that an FDIC-insured depository institution fails."  FDIC, Deposit Insurance FAQs, available at https://www.fdic.gov/resources/deposit-insurance/faq; *see also In re Collins Sec. Corp.*, 998 F.2d 551, 555 n.6 (8th Cir. 1993) ("[D]eposit insurance may never be recovered if the bank is solvent because deposit insurance is intended to cover only losses caused by insolvency . . . ."); *Ehrlich v. FDIC*, 357 F. Supp. 196, 197-98 (N.D. Ill. 1973) (concluding that there can be no recovery of deposit insurance when the bank "is not closed").  Thus, because Evolve has neither failed nor become insolvent, FDIC insurance is unavailable in any event.  To the extent Plaintiffs claim they were misled to believe otherwise, that would implicate the statements made to them by their fintechs or Synapse, as Evolve's only alleged representation (as alleged by Plaintiffs) was its status as an FDIC-insured institution.  SAC ¶¶ 63-64.  Indeed, Plaintiffs' only support for their allegation that they were misled on this score is attributed to bad

---

[4] The Court can and should take judicial notice of Evolve's FDIC-insured status.  *See Regions Bank v. Legal Outsource PA*, 2015 WL 4164907, at *4 & n.2 (M.D. Fla. July 9, 2015) (taking judicial notice of a bank's FDIC insurance via citation to BankFind listing on FDIC website); *see also United States v. Iverson*, 818 F.3d 1015, 1028 (10th Cir. 2016) (O'Brien, J., concurring) ("We can and should take judicial notice of the banks' federally insured status during the relevant events.").

acts by Juno.  *Id.* ¶ 67.[5]  Because no set of facts concerning FDIC coverage can support Plaintiffs' fraud claim, the Court should dismiss it with prejudice.

Plaintiffs further conflate statements from different entities to suggest that Evolve misrepresented end user account statements.  Tellingly, however, Plaintiffs never allege any facts showing any *actual* misrepresentations by Evolve.[6]  Instead, Plaintiffs allege in conclusory fashion that the "Evolve Defendants made intentional representations of fact to Plaintiffs, members of the FDIC Representation Subclass, and the Class.  Specifically: the real-time account balances of end users, viewable through the FinTech platforms, on a daily basis until May 11, 2024."  SAC ¶ 141.

This cannot support a fraud claim.  First, Plaintiffs' allegation doesn't identify a misstatement, misrepresentation, or anything false or fraudulent.  Rather, it alleges that Evolve made an "intentional representation"—in other words, a statement.  Second, it alleges that real-time account balances were "viewable through the FinTech platforms."  *Id.* ¶ 141(a).  In other words, the ***fintechs*** made those statements to Plaintiffs—not Evolve.  Plaintiffs' conclusory allegation presumes that Evolve controlled the information provided by the fintech platforms, but account balance information came to the fintechs through Synapse—not the Evolve Defendants.

Plaintiffs are no more successful in alleging that "Evolve omitted or failed to conspicuously disclose to Plaintiffs and the Class that their cash deposits were not protected from loss caused by mismanagement, misplacement, and/or fraud."  SAC ¶ 146.  This vague generalization fails Rule 8's requirements, let alone the heightened pleading standards of Rule 9(b).  At bottom,

---

[5] Plaintiffs' reliance on 12 C.F.R. § 330.5 is similarly misplaced.  First, that regulation concerns deposit ownership and fiduciary relationships.  It would apply *only if* Evolve failed.  Moreover, the regulation never mentions FBO accounts or suggests that any of Evolve's relevant FBO accounts would not have been covered had Evolve failed (or should be covered absent a bank failure).  These allegations underscore that Plaintiffs' concern is not with the Evolve Defendants— neither misrepresented Evolve's FDIC coverage.

[6] Plaintiffs do allege that what they received from Evolve through reconciliation differed from their account balances, but those account balances were all provided by the fintechs to their customers, presumably based on what Synapse was telling them.  None of the balances or statements were alleged to have been provided by Evolve.  *See, e.g.*, SAC ¶¶ 9-25.

Plaintiffs' allegation fails to sufficiently plead the "what" and "how" of this fraud allegation and further dooms their fraud claim.  *Lemmon*, 614 F.3d at 1172.

### 2.    *Plaintiffs fail to sufficiently allege actual reliance and causation.*

Any allegation of fraud—no matter its premise—also fails because Plaintiffs cannot establish reliance or causation.  Plaintiffs allege damage based on their purported decision to maintain their funds at Evolve:

> Evolve omitted and failed to conspicuously disclose to Plaintiffs and the Class that their cash deposits were not protected from loss caused by mismanagement, misplacement, and/or fraud.  Had Evolve disclosed those facts, Plaintiffs and the Class would have been aware of it and acted differently, including withdrawing their funds or refusing to deposit in the first instance.

SAC ¶ 146.  The problem is Plaintiffs' own admission that their deposits had already been transferred away from Evolve in the fall of 2023.  Specifically, Plaintiffs allege that Synapse had been sweeping end user funds from Evolve and to other banks months before its bankruptcy:

> From September 2023 through May 2024, Synapse Brokerage [a wholly owned subsidiary of Synapse] operated a cash management program where customer funds were supposedly swept from banks like Evolve to multiple "Program Banks" or "Partner Banks" to maximize FDIC coverage, including AMG and Lineage (referred to as "DDA Bank 2" in regulatory filings).

*Id.* ¶ 44.  Thus, Plaintiffs cannot plausibly plead that they relied on any representation by the Evolve Defendants to maintain funds at Evolve.  And nothing on the face of the SAC suggests that any representation by the Evolve Defendants induced Plaintiffs to act differently in choosing whether to initiate or maintain their relationship with the fintechs.

Because Count eight fails to state a claim that cannot be cured, it should be dismissed with prejudice.

### B.    Plaintiffs Fail to State a Claim Under California Penal Code § 496.

The SAC adds a claim that the Evolve Defendants received or withheld stolen property under Section 496 of the California Penal Code.  *See* SAC ¶¶ 160-66.  These allegations similarly fail.  A claim under Section 496 requires pleading facts showing "(1) that the particular property

was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew that the property was stolen." *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 213 (Cal. Ct. App. 2015).  Plaintiffs cannot carry that pleading burden here for three reasons.

First, Section 496 does not apply extraterritorially, and the allegedly actionable conduct here occurred outside California.  Second, Plaintiffs fail to sufficiently allege that the Evolve Defendants knew the property at issue was stolen.  And third, at the very least, each non-California Plaintiff lacks standing to assert this claim.

*Extraterritoriality.* Plaintiffs' claim fail because the Evolve Defendants neither received nor withheld stolen property in California. California courts have long recognized a presumption against extraterritoriality. *See N. Ala. Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (Cal. 1916); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (Cal. 2011).

Applying that presumption, courts have repeatedly ruled that Section 496 does not apply outside California. *See, e.g.*, *L.A. Turf Club Inc. v. US Racing*, 2024 WL 5423013, at *6-7 (C.D. Cal. Oct. 18, 2024); *Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, 2024 WL 4003894, at *4 (C.D. Cal. June 5, 2024); *Kravetz v. Bridge to Life, Ltd.*, 2019 WL 13277431, at *2-3 (N.D. Ill. Mar. 8, 2019).  In fact, though it did not reach the issue given its conclusion that the first-to-file doctrine supported dismissing or transferring claims in favor of this very proceeding, another federal court considering an identical Section 496 claim arising out of identical facts by one of the same Plaintiffs (Felton) here against Evolve observed that Evolve's arguments supporting dismissal of that claim, including extraterritoriality, were "*very* persuasive." Order at 4 n.8, *Felton v. Evolve Bank & Tr. et al.*, CV 24-10317-GW-AJRx (C.D. Cal. Oct. 16, 2025), Dkt. No. 94 (emphasis in original).[7]

---

[7] In seeking dismissal, Evolve raised the same extraterritoriality argument it does here. *See* Mot. to Dismiss at 20–21, *Felton v. Evolve Bank & Tr. et al.*, CV 24-10317-GW-AJRx (C.D. Cal. Aug. 11, 2025), Dkt. No. 73.

The repleaded allegations here remain deficient.  The Evolve Defendants are citizens of Arkansas and Tennessee.  *See* SAC ¶¶ 27-29.  Plaintiffs' attempt to tether their claim to California fails: it is of no moment whether Plaintiffs deposited funds "via the FinTechs," in accounts alleged to be "domiciled in California," or where Synapse "administered the underlying account structures."  SAC ¶ 161.  That is because a Section 496 violation "occurs not when property is stolen but when a 'person . . . buys or receives' stolen property or 'conceals, sells, withholds, or aids in concealing, selling, or withholding' stolen property."  *Kravetz*, 2019 WL 13277431, at *3 (quoting Cal. Penal Code § 496(a)).  Plaintiffs cannot allege that the Evolve Defendants withheld funds in California without alleging any conduct by them in California when there was none.  *See, e.g.*, *L.A. Turf Club*, 2024 WL 5423013, at *7 (dismissing Section 496 claim where the plaintiffs' "allegations that [d]efendants received bets which either pertained to California racetracks or originated from California residents [were] insufficient to demonstrate that the challenged conduct, as opposed to the resulting harm, occurred in California").  Because the alleged withholding of funds did not occur in California, no liability under Section 496 can attach.

**Insufficient pleading.** Plaintiffs' Section 496 claim also fails to allege that the Evolve Defendants knew Plaintiffs' property was purportedly stolen.  *Cf.* Cal. Penal Code § 496(a). Though Plaintiffs allege that the Evolve Defendants "knew" a collection of irrelevant facts—e.g., that "Synapse was having problems" or that Plaintiffs "expected their funds would be safeguarded," SAC ¶ 165—they fail to allege that the Evolve Defendants knew the key fact under Section 496: that the funds were "stolen" when it purportedly withheld them.

**Lack of Standing.** Even if the Section 496 claim could survive for any Plaintiffs, non-California Plaintiffs lack standing to bring it.  Acknowledging this, Plaintiffs protest that "[a]t minimum, Cal. Penal Code § 496 applies to California Plaintiffs Claxton, Yeh, and other end users residing in California."  SAC ¶ 162.  But "a named plaintiff in a putative class action 'does not have standing to allege claims on his own behalf under the laws of states where he has never lived

11

or resided because he has not suffered an injury under those laws, nor is he protected by those laws.'" *Hunnicutt v. Zeneca, Inc.*, 2012 WL 4321392, at \*5 (N.D. Okla. Sept. 19, 2012) (quoting *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at \*8 (D. Colo. July 14, 2011)). Thus, the Section 496 claim must be dismissed at least as to the non-California Plaintiffs.

## V.    CONCLUSION

Plaintiffs have not shown that they deserve a fourth attempt to correct the deficiencies in their allegations. Thus, the Court should dismiss counts eight and ten with prejudice.

Dated: April 15, 2026

David G. Mayhan
Sarah Smyth O'Brien
BUTLER SNOW LLP
1801 California Street, Suite 5100
Denver, CO 80202
Tel: 720-330-2300
David.Mayhan@butlersnow.com
Sarah.Obrien@butlersnow.com

Daniel W. Van Horn
BUTLER SNOW LLP
6075 Poplar Ave #500
Memphis, TN 38119
Tel: 901-680-7331
Danny.VanHorn@butlersnow.com

Respectfully submitted,

*/s/ Aravind Swaminathan*
Aravind Swaminathan
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel: 206-839-4300
Fax: 206-839-4301
aswaminathan@orrick.com

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: 212-506 3546
Fax: 212-506-5151
mrshapiro@orrick.com

Diana S. Fassbender
Amisha R. Patel
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037-3202
Tel: 202-339-8400
Fax: 202-339-8500
dszego@orrick.com
apatel@orrick.com

*Attorneys for Defendant Evolve Bank & Trust*

12

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Aravind Swaminathan*
Aravind Swaminathan

13

## CERTIFICATE OF CONFERRAL

Counsel for Evolve Bank & Trust and Evolve Bancorp, Inc. telephonically conferred with counsel for Plaintiffs regarding the relief requested in this motion as required by Judge Domenico's Practice Standard III(G)(1).   The parties addressed whether the asserted deficiencies are correctable by amendment and counsel for Evolve represented its position that they are not. Plaintiffs stated that they oppose the relief requested.

*/s/ Aravind Swaminathan*
Aravind Swaminathan

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2026, I caused the foregoing document to be electronically

filed using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Aravind Swaminathan*
Aravind Swaminathan
