**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Lead Civil Action No. 24-cv-03259-DDD-NRN

*Consolidated with* 24-cv-03261-SBP; 24-cv-03262-SBP;
24-cv-03509-NRN; 25-cv-00075-KAS; 25-cv-03284-DDD

OLGA MARGUL, KELLI JO CLAXTON,
 HENRY YEH, COLIN SMITH, ROD
GENDRON, KAYLA MORRIS, TIMOTHY
MILLER, DAWN SAQUIN, IMENE
HADDAD, DANIEL BREWER, PAUL
TONNER, CORY ESPINOLA, STEPHANIE
IZQUIETA, KATHERINE MAUL,
RICHARD TODD HALE, ALFRED
ROTIMI, and ASHLEY FELTON,
individually and on behalf of all similarly
situated persons,

     Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas
bank; AMG NATIONAL TRUST, a Colorado
bank; LINEAGE BANK, a Tennessee bank;
and EVOLVE BANCORP, INC., an Arkansas
limited liability company,

     Defendants.

---

**DEFENDANTS EVOLVE BANK & TRUST'S AND EVOLVE BANCORP, INC.'S
ANSWER TO PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT**

---

Defendants Evolve Bank & Trust ("Evolve") and Evolve Bancorp, Inc. ("Bancorp"),

(collectively the "Evolve Defendants"), respectfully submit this Answer to Plaintiffs' Second

1

Amended Consolidated Class Action Complaint and Jury Trial Demand (the "SAC"). Evolve also separately asserts crossclaims against Defendants AMG National Trust ("AMG") and Lineage Bank ("Lineage").

Regarding the first unnumbered paragraph, the Evolve Defendants admit that Plaintiffs purport to bring their SAC "on behalf of themselves and all other similarly situated." The Evolve Defendants deny that any class should be certified or is appropriate. The Evolve Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegation that the allegations in the SAC are "based on Plaintiffs' personal knowledge of facts pertaining to themselves and upon information and belief, including further investigation conducted by Plaintiffs' counsel" and, therefore, deny the allegation.

Any allegations in the SAC not expressly admitted herein are denied. Moreover, the Evolve Defendants deny any factual allegations contained in the headings of the SAC unless specifically admitted herein.

## I.    NATURE OF ACTION

1.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they negligently monitored or mismanaged any funds belonging to any Plaintiff or putative class member. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 1 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 1.

2.    The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of whether "FinTechs are a growing sector of technology-based investing, money

management, and wealth accumulation platforms" and on that basis deny the allegation. The Evolve Defendants admit that certain FinTechs that contracted with Synapse Financial Technologies, Inc. ("Synapse"), such as Yotta Technologies, Inc. ("Yotta") and Juno by CapitalJ, Inc. ("Juno"), with whom certain named Plaintiffs purportedly opened accounts, are not banks. The Evolve Defendants admit that Evolve is a bank. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 2.

3.      The Evolve Defendants admit that Evolve is a bank that contracted with Synapse, which in turn contracted with FinTechs ("Synapse FinTechs"), such as Yotta and Juno, for Evolve to provide banking services to their customers. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 3 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 3.

4.      The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that they "fail[ed] to adequately monitor and safeguard" the funds of end users of Synapse FinTechs ("Synapse FinTech End Users") and that any of their actions "led to significant ledger discrepancies in account balances." Evolve admits that it discovered material irregularities in Synapse's recordkeeping and that Synapse's records could not be relied on to determine the amount of funds to distribute to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 4 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 4.

5.      The Evolve Defendants deny that a "class" exists because no class has been

certified in this matter. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of allegations regarding other Defendants in Paragraph 5 and, therefore, deny the same. The Evolve Defendants otherwise deny the allegations in Paragraph 5.

6.      The allegations in Paragraph 6 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations in Paragraph 6.

7.      The allegations in Paragraph 7 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations in Paragraph 7.

8.      The allegations in Paragraph 8 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations in Paragraph 8.

## II.    PARTIES

9.      As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.00 of Ms. Margul's funds were held at Evolve, and that her appeal of Evolve's reconciliation determination was denied. The Evolve Defendants lack information or knowledge

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and on that basis cannot admit or deny the same. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 9.

10. As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $2,034.93 of Ms. Claxton's funds were held at Evolve, and that it issued payment to her accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 and on that basis cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 10.

11. As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $2.43 of Mr. Yeh's funds were held at Evolve, and that it issued payment to him accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11 and on that basis cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 11.

12. As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.00 of Mr. Smith's funds were held at Evolve, and that his appeal of Evolve's reconciliation determination was denied. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and on that basis cannot

admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 12.

13. As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.00 of Mr. Gendron's funds were held at Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and on that basis cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 13.

14. As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $579.08 of Ms. Morris's funds were held at Evolve, and that it issued payment to her accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 14.

15. As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $11,936.98 of Mr. Miller's funds were held at Evolve, and that it issued payment to him accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 15.

16.     As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $38.43 of Ms. Saquin's funds were held at Evolve, and that it issued payment to her accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 16.

17.     As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $15,275.80 of Ms. Haddad's funds were held at Evolve, and that it issued payment to her accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 17.

18.     As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.71 of Mr. Brewer's funds were held at Evolve, and that it issued payment to him accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 18.

19.     As of the date of this Answer and based on information currently available to the

Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.04 of Mr. Tonner's funds were held at Evolve, and that it issued payment to him accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 19.

20.     As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.00 of Ms. Espinola's funds were held at Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20 and on that basis cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 20.

21.     As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $133.07 of Ms. Izquieta's funds were held at Evolve, and that it issued payment to her accordingly. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 21.

22.     As of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $0.42 of Ms. Maul's funds were held at Evolve, and that it issued payment to her accordingly.

The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and thus cannot admit or deny them. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 22.

23.     The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 23 and on that basis cannot admit or deny them.

24.     The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 24 and on that basis cannot admit or deny them.

25.     The allegations in Paragraph 25 set forth legal conclusions to which no response is required. To the extent a response is required, as of the date of this Answer and based on information currently available to the Evolve Defendants, the Evolve Defendants admit that Evolve's reconciliation process determined that $658.07 of Ms. Felton's funds were held at Evolve, that it issued payment to her accordingly, and that her appeal of Evolve's reconciliation determination was denied. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 and on that basis cannot admit or deny the same. To the extent a response is required, the Evolve Defendants otherwise deny the remaining allegations in Paragraph 25.

26.     The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 26 and on that basis cannot admit or deny them.

27.     Evolve admits that it is a bank chartered under the laws of the state of Arkansas. Evolve admits that its operational headquarters is located at 6000 Poplar Avenue, Memphis, Tennessee 38119. Evolve admits that its main office is located at 301 Shoppingway Boulevard,

9

West Memphis, Arkansas 72301. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 27.

28.     The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 28 and thus cannot admit or deny them.

29.     The allegations in Paragraph 29 set forth legal conclusions to which no response is required. To the extent a further response is required, Bancorp admits that the cited documents and statutes speak for themselves. Bancorp admits that it is a bank holding company organized under the laws of Arkansas. Bancorp admits that its corporate headquarters is located at 6000 Poplar Avenue, Suite 300, Memphis, Tennessee 38119. Bancorp admits that it owns Evolve. The Evolve Defendants deny the remaining allegations in Paragraph 29.

## III.    JURISDICTION AND VENUE

30.     The allegations in Paragraph 30 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 30 and thus deny the same.

31.     The allegation in Paragraph 31 sets forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "substantial part of the events giving rise to the claims herein occurred in this judicial district," but the Evolve Defendants do not contest that venue is proper.

32.     The allegations in Paragraph 32 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that they have "contacts in this district sufficient to subject [the Evolve Defendants] to personal jurisdiction of this district

as if this district were a separate state," that the Evolve Defendants "conduct substantial business in this District," and that a "substantial part of the acts and omissions complained of occurred in this District." Nonetheless, the Evolve Defendants do not contest the Court's exercise of personal jurisdiction over the Evolve Defendants in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of allegations regarding other Defendants in Paragraph 32 and thus cannot admit or deny them.

33.     The allegations in Paragraph 33 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny that they have "purposely availed [themselves] of the privilege of conducting activities in Colorado and should reasonably anticipate being haled into court in Colorado." Nonetheless, the Evolve Defendants do not contest the Court's exercise of personal jurisdiction over the Evolve Defendants in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of allegations regarding other Defendants in Paragraph 33 and thus cannot admit or deny them.

IV.     GENERAL ALLEGATIONS

**FinTech Platforms and Financial Accounts**

34.     The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 34 and thus cannot admit or deny them.

35.     The Evolve Defendants deny that they "partnered" directly with Synapse FinTechs. Evolve admits that it contracted with Synapse, which in turn contracted with Synapse FinTechs, for Evolve to provide banking services to certain Synapse FinTechs End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 35 and, therefore, deny the same. The Evolve

11

Defendants otherwise deny the remaining allegations in Paragraph 35.

36.    The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding what FinTech users "reasonably believed" and thus cannot admit or deny them. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 36.

**Synapse Financial Technologies, Inc. Collapses**

37.    The Evolve Defendants state that Synapse's founding date is publicly available. Evolve admits that under the applicable and effective Master Bank Services Agreements that successively governed Evolve's relationship with Synapse, Synapse was responsible for maintaining the account ledgers regarding the account information for Synapse FinTech End Users. Evolve further admits that it discovered material irregularities in Synapse's recordkeeping and that Synapse's records could not be relied upon to determine the amount of funds to distribute to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 37 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 37.

38.    Evolve admits that Synapse provided certain Synapse FinTechs (e.g., Yotta, Juno) customers with demand deposit account ("DDA") agreements that governed their interest-bearing consumer demand accounts made available by Evolve and that Synapse FinTech End Users whose funds were held at Evolve agreed to be bound by such terms. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 38 and, therefore, deny the same. The Evolve Defendants

12

otherwise deny the remaining allegations in Paragraph 38.

39.    The Evolve Defendants deny that Synapse or Synapse Brokerage opened Cash Management Accounts at Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 39 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 39.

40.    Evolve admits that Synapse FinTechs (e.g., Yotta, Juno) whose end user funds Synapse directed be deposited with Evolve were held in omnibus "for benefit of" accounts. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 40 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 40.

41.    The Evolve Defendants deny that they were a "Partner Bank" that provided banking services to Synapse Brokerage. Evolve admits that it relied on Synapse to maintain an accurate ledger of Synapse FinTech End User funds held at Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding the data that Synapse delivered to Synapse FinTechs and what Synapse FinTech End Users "relied on" and thus cannot admit or deny them. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 41 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 41.

42.    The Evolve Defendants admit that the cited documents speak for themselves. Evolve admits that it relied on Synapse to maintain an accurate ledger of Synapse FinTech End

User funds held at Evolve. Evolve admits that it discovered material irregularities in Synapse's recordkeeping and that Synapse's records could not be relied on to determine the amount of funds to distribute to Synapse FinTech End Users from Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42 and, therefore, deny the same. The Evolve Defendants deny the remaining allegations in Paragraph 42.

43.    The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding Synapse's decision-making. The Evolve Defendants deny the remaining allegations in Paragraph 43.

44.    The Evolve Defendants deny that they were "Program Banks" or "Partner Banks" that provided banking services to Synapse Brokerage. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 and, therefore, deny the same. The Evolve Defendants deny the remaining allegations in Paragraph 44.

45.    The Evolve Defendants admit that Synapse filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Central District of California on April 22, 2024. The remaining allegations purport to summarize information publicly reported in filings in such bankruptcy proceedings. The Evolve Defendants admit only that the cited documents speak for themselves and deny all allegations that are inconsistent with or mischaracterize them. The Evolve Defendants deny the remaining allegations in Paragraph 45.

46.    The Evolve Defendants deny that the Synapse bankruptcy process revealed any "significant failing" on the part of Evolve. The Evolve Defendants admit that the U.S. Trustee for

the Central District of California in the Synapse bankruptcy publicly reported on May 15, 2024, that Synapse was "grossly mismanaged." The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 46 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 46.

47.     The Evolve Defendants admit that the cited documents speak for themselves. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding non-parties in Paragraph 47, and, therefore, deny the same.

**Defendants Have Not Returned All Customer Funds**

48.     The Evolve Defendants deny that they were a "Partner Bank" that provided banking services to Synapse Brokerage. Evolve admits that it discovered material irregularities in Synapse's recordkeeping and that Synapse's records could not be relied on to determine the amount of funds to distribute to Synapse FinTech End Users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 48 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 48.

49.     The Evolve Defendants admit that the cited documents speak for themselves and

15

deny all allegations that are inconsistent with or mischaracterize them. Evolve admits that on November 12, 2024, it reported publicly that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve admits that it publicly reported that it initially completed its reconciliation efforts on October 18, 2024, and made the results of its reconciliation available to Synapse FinTech End Users on November 4, 2024, at the website reconciliationbyevolve.com. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. Evolve admits that it has publicly reported that it believes additional funds owed to Synapse FinTech End Users may have been in the custody of the other banks within the Synapse ecosystem. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 49.

50.    The Evolve Defendants admit that the cited documents speak for themselves. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 50 and, therefore, cannot admit or deny them.

51.    The Evolve Defendants deny that Synapse FinTech End User funds are "necessarily held by" the Evolve Defendants. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge

16

sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 51 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 51.

**The Failure to Maintain, Account, and Provide Access to Customer Funds Confirms Material Risk Management Failures**

52.     The allegations in Paragraph 52 set forth legal conclusions to which no response is required. To the extent a response is required, Evolve admits that it discovered material irregularities in Synapse's recordkeeping and that Synapse's records could not be relied on to determine the amount of funds to distribute to Synapse FinTech End Users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 52 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 52.

53.     The allegations in Paragraph 53 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants admit that the cited document speaks for itself and deny all allegations that are inconsistent with or mischaracterize it. The Evolve Defendants admit that the Federal Reserve Board issued a cease-and-desist order upon consent *In the Matter of Evolve Bancorp, Inc. & Evolve Bank & Trust*, Docket Nos. 24-012-B-HC and 24-012-B-SM on June 14, 2024. The Evolve Defendants otherwise deny the remaining allegations in

17

Paragraph 53.

54.    The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 54 and thus cannot admit or deny them.

55.    The allegations in Paragraph 55 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants admit that the statutes and regulations governing the activities of certain banking entities speak for themselves and deny all allegations that are inconsistent with or mischaracterize them. Evolve denies that it did not have "a plan in place for what to do in the event of operational issues at Synapse." Evolve admits that it declined to renew its contractual agreement with Synapse in September 2023 and entered a wind-down period at that time. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 55 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 55.

56.    The allegations in Paragraph 56 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 56 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 56.

57.    The allegations in Paragraph 57 set forth legal conclusions to which no response is required. To the extent a response is required, Evolve denies that it had any "lapse" in its "risk management." The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 57 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 57.

18

58.     The allegations in Paragraph 58 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that they were a "Partner Bank" that provided banking services to Synapse Brokerage. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 58 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 58.

59.     The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 59 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 59.

60.     The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that, for at least some Synapse FinTech End Users, Evolve's reconciliation process determined that the amount of their funds held at Evolve did not equal what was reflected as their Synapse FinTech balance at the time that Evolve froze activity for Synapse FinTech End Users on May 11, 2024. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 60 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 60.

61.     The Evolve Defendants deny that a "class" exists because no class has been

certified in this matter. The Evolve Defendants also deny that they are "keeping" any "remaining funds" that "belong" to any Plaintiff or putative class member. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 61 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 61.

**FDIC Insurance Misrepresentation**

62.     The Evolve Defendants deny the allegations in Paragraph 62.

63.     The allegations in Paragraph 63 set forth legal conclusions to which no response is required. The Evolve Defendants deny the allegations in Paragraph 63.

64.     The Evolve Defendants admit that the cited documents speak for themselves. To the extent a further response is required, the Evolve Defendants deny the remaining allegations in Paragraph 64.

65.     The allegations in Paragraph 65 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants admit that the cited regulation speaks for itself. The Evolve Defendants deny the remaining allegations in Paragraph 65.

66.     The allegations in Paragraph 66 set forth legal conclusions to which no response is

required. To the extent a further response is required, the Evolve Defendants deny the allegations of Paragraph 66.

67.    The allegations in Paragraph 67 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants admit that the cited documents in footnote 6 speak for themselves. The Evolve Defendants deny the remaining allegations of Paragraph 67.

68.    The allegations in Paragraph 68 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations of Paragraph 68.

69.    The allegations in Paragraph 69 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations of Paragraph 69.

70.    The allegations in Paragraph 70 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations of Paragraph 70.

**Defendants' Statutory Duties (Alleged by Plaintiff Felton's Action)**

71.    The Evolve Defendants admit that pursuant to the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve, the Synapse End Users' accounts were established in and located in Tennessee. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 71 and, therefore, deny the same. Evolve otherwise denies the remaining allegations in Paragraph 71.

72.     The allegations in Paragraph 72 set forth legal conclusions to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations of Paragraph 72.

## V.    CLASS ACTION ALLEGATIONS

73.     The Evolve Defendants admit that Plaintiffs seek to certify a class and subclass but deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 73.

74.     The Evolve Defendants admit that Plaintiffs seek to certify a class and subclass but deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 74.

75.     The allegations in Paragraph 75 consist of a reservation of rights to which no response is required. To the extent that a response is required, the Evolve Defendants deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 75.

76.     The allegations in Paragraph 76 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent that a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 76.

77.     The allegations in Paragraph 77 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that any class or subclass should be certified or is appropriate and deny

22

the remaining allegations in Paragraph 77.

78. The allegations in Paragraph 78 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegation that "Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions" and that they "intend to diligently prosecute this action" and, therefore, deny the same. The Evolve Defendants deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 78.

79. The allegations in Paragraph 79 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 79.

80. The allegations in Paragraph 80 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that any class or subclass should be certified or is appropriate and deny the remaining allegations in Paragraph 80.

VI.    CAUSE OF ACTION

**FIRST CAUSE OF ACTION**
**MONEY HAD AND RECEIVED**
**(Against All Defendants)**

81. The Evolve Defendants answer Paragraph 81 by referring to, and incorporating by

reference, their answers to Paragraphs 1 through 80.

82. The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to truth of the allegations in Paragraph 82 and, therefore, deny the same.

83. The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 83 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 83.

84. The allegations in Paragraph 84 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations

regarding other Defendants in Paragraph 84 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 84.

85.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that they have not returned funds belonging to FinTech end users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 85 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 85.

86.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they have "refused access" to funds of FinTech end users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 86 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 86.

87.     The allegations in Paragraph 87 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they have in their possession money that "belongs to" any Plaintiff or putative class member. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 87 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 87.

## SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Against All Defendants)

88.     The Evolve Defendants answer Paragraph 88 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 87.

89.     The allegations in Paragraph 89 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent a further response is required, the Evolve Defendants deny the allegations in Paragraph 89.

90.     The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 90 and, therefore, deny the same.

91.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 91 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 91.

92.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 92 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 92.

93.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that they have not returned funds belonging

to FinTech end users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 93 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 93.

94. The allegations in Paragraph 94 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that they have been "unjustly enriched" and that they have "retained cash deposits" belonging to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 84 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 94.

95. The allegations in Paragraph 95 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they have been "unjustly enriched by accruing interest and deriving profit from" Synapse FinTech End Users or that they have "use[d]" Synapse FinTech End User funds without authorization. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User

funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users, inclusive of accrued interest due under the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve on those amounts. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 95 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 95.

96.    The allegations in Paragraph 96 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that they have "ret[ained]" money belonging to Fintech end users or that they have acted "unjust[ly]" or "inequitabl[y]." The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 96 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 96.

97.    The allegations in Paragraph 97 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they engaged in any "misconduct" or that any Plaintiff or putative class member is entitled to any relief, including restitution and/or disgorgement. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 97 and, therefore, deny the same. The Evolve Defendants otherwise deny the

remaining allegations in Paragraph 97.

### THIRD CAUSE OF ACTION
### NEGLIGENCE
### (Against All Defendants)

98.     The Evolve Defendants answer Paragraph 98 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 97.

99.     The allegations in Paragraph 99 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they had a "special relationship" with any Plaintiff or putative class member or that they had any "duties" to the same beyond those set forth by the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 99 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 99.

100.    The allegations in Paragraph 100 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 100.

101.    The allegations in Paragraph 101 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve denies that it owed any duty to any Synapse Fintech End User beyond those set forth by the Synapse Fintech End Users' applicable and effective Deposit Agreement with Evolve. The Evolve Defendants lack information or

knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 101 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 101.

102.    The allegations in Paragraph 102 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they inflicted "harm" on Synapse FinTech End Users or that any alleged harms were "reasonably foreseeable." The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 102 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 102.

103.    The allegations in Paragraph 103 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 103 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 103.

104.    The allegations in Paragraph 104 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal

31

Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users, inclusive of accrued interest due under the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve on those amounts. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 104 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 104.

105.    The allegations in Paragraph 105 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that any Synapse FinTech End User is entitled to damages for "emotional distress, anxiety, and fear" as a result of any action by the Evolve Defendants. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 105 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 105.

106.    The allegations in Paragraph 106 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that any Synapse FinTech End User is entitled to damages or interest. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 106.

**FOURTH CAUSE OF ACTION**
**CONVERSION**
**(Against All Defendants)**

107.    The Evolve Defendants answer Paragraph 107 by referring to, and incorporating by

reference, their answers to Paragraphs 1 through 106.

108.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of allegations regarding other Defendants in Paragraph 108 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 108.

109.    The allegations in Paragraph 109 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of allegations regarding other Defendants in Paragraph 109 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 109.

110.    The allegations in Paragraph 110 set forth legal conclusions to which no response

33

is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. Evolve further admits that, as a result of the appeals process associated with its reconciliation process, certain Synapse FinTech End Users requested additional funds from Evolve. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of allegations regarding other Defendants in Paragraph 110 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 110.

111.    The allegations in Paragraph 111 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve denies that it "refused to return the property" deposited with Evolve "upon proper demand" or that Evolve "wrongfully disposed of the property" deposited by Synapse FinTech End Users. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and

34

advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. Evolve further admits that, as a result of the appeals process associated with its reconciliation process, certain Synapse FinTech End Users requested additional funds from Evolve, and that certain of those appeals were denied. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 111 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 111.

112. The allegations in Paragraph 112 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they engaged in any "misconduct" as described in the SAC. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations, as well as the allegations regarding other Defendants in Paragraph 112 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 112.

113. The allegations in Paragraph 113 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they engaged in any "misconduct" as described in the SAC or that any Synapse FinTech End User has been "injured" by their actions. The Evolve Defendants lack information or knowledge sufficient

to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 113 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 113.

114. The allegations in Paragraph 114 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 114.

114 [sic]. The allegations in Paragraph 114[sic] set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that they "converted" any funds. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 114[sic] and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 114[sic].

115. The allegations in Paragraph 115 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that Synapse FinTech End Users have been "damaged" by their actions. The Evolve Defendants admit that Plaintiffs purport to seek "all available remedies," but the Evolve Defendants, however, deny that any Synapse FinTech End Users are entitled to any relief, including the specific remedies listed. The Evolve Defendants further admit that Plaintiffs' claim for "punitive damages" is improper. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 115 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 115.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

116.    The Evolve Defendants answer Paragraph 116 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 115.

117.    The allegations in Paragraph 117 set forth legal conclusions to which no response is required. To the extent a further response to the allegations in Paragraph 117 is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 117 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 117.

118.    The allegations in Paragraph 118 set forth legal conclusions to which no response is required. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 118 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 118.

119.    The allegations in Paragraph 119 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 119.

120.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack

information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 120 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 120.

121.    The allegations in Paragraph 121 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 121.

122.    The allegations in Paragraph 122 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 122 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 122.

123.    The allegations in Paragraph 123 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that Synapse FinTech End Users have been "damaged" by the Evolve Defendants' actions. The Evolve Defendants admit that Plaintiffs purport to seek "all available remedies," but the Evolve Defendants deny that any Synapse FinTech End Users are entitled to any relief, including the specific remedies listed. The Evolve Defendants further admit that Plaintiffs' claim for "punitive damages" is improper. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding other Defendants in Paragraph 123 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 123.

38

## SIXTH CAUSE OF ACTION
### ACCOUNTING
### (Against All Defendants)

124.    The Evolve Defendants answer Paragraph 124 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 123.

125.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 125 and, therefore, deny the same.

126.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 126 and, therefore, deny the same.

127.    Evolve denies that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge

sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 127 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 127.

128.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve denies that it has not returned funds belonging to Synapse FinTech End Users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 128 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 128.

129.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 129 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in

40

Paragraph 129.

130.    The allegations in Paragraph 130 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that they have "failed to provide an accounting and/or sufficient information and documentation concerning the amount and location" of Synapse FinTech End User funds. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. Evolve admits that it is seeking data and information from other banks that were part of the Synapse ecosystem to conduct an ecosystem-wide reconciliation to determine the location of additional Synapse FinTech End User funds. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 130 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 130.

131.    The allegation in Paragraph 131 sets forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that any Plaintiff or putative class member is entitled to any relief, including an "accounting" regarding the "amount and location of their funds." The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants

in Paragraph 131 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 131.

132.    The allegations in Paragraph 132 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that any Plaintiff or putative class member has suffered any "damage" as a result of the Evolve Defendants' actions. The Evolve Defendants further deny any "wrongdoing" on the Evolve Defendants' part. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 132 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 132.

## SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE TRUST
### (Against All Defendants)

133.    The Evolve Defendants answer Paragraph 133 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 132.

134.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants lack information or knowledge sufficient to form a belief as to truth of the remaining allegations in Paragraph 134 and, therefore, deny the same.

135.    The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations

regarding other Defendants in Paragraph 135 and, therefore, deny the same.

136. The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. Evolve admits that Synapse directed that funds of certain end users of Synapse FinTechs (e.g., Yotta, Juno) be held at Evolve for some period of time during Evolve's contractual relationship and wind-down period with Synapse. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 136 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 136.

137. The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants deny that they have not returned funds belonging to Synapse FinTech End Users. Evolve admits that it hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse FinTech End User funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. Evolve further admits that, as a result of that reconciliation process, Evolve returned funds held at Evolve to Synapse FinTech End Users. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants

in Paragraph 137 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 137.

138. The allegations in Paragraph 138 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that any Plaintiff or putative class member is entitled to any relief, including a constructive trust. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 138 and, therefore, deny the same. The Evolve Defendants otherwise deny the remaining allegations in Paragraph 138.

139. The allegations in Paragraph 139 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants also deny that any Plaintiff or putative class member is entitled to any relief, including a constructive trust. The Evolve Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations regarding other Defendants in Paragraph 139 and, therefore, deny the same. The Evolve Defendants deny the remaining allegations in Paragraph 139.

## EIGHTH CAUSE OF ACTION
### COMMON LAW FRAUD
### (Against Evolve Defendants)

140. The Evolve Defendants answer Paragraph 140 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 139.

141. The allegations in Paragraph 141 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in

Paragraph 141.

142.     The allegations in Paragraph 142 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 142.

143.     The allegations in Paragraph 143 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 143.

144.     The allegations in Paragraph 144 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 144.

145.     The allegations in Paragraph 145 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 145.

146.     The allegations in Paragraph 146 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 146.

147.     The allegations in Paragraph 147 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 147.

148.     The allegations in Paragraph 148 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 148.

149.    The allegations in Paragraph 149 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 14.

## NINTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (Against the Evolve Defendants)

150.    The Evolve Defendants answer Paragraph 150 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 149.

151.    The allegations in Paragraph 151 consist of Plaintiffs' characterization of their claims and terminology to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 151.

152.    The allegations in Paragraph 152 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 152.

153.    The allegations in Paragraph 153 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 153.

154.    The allegations in Paragraph 154 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 154.

155.    The allegations in Paragraph 155 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 155.

156.    The allegations in Paragraph 156 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 156.

157.    The allegations in Paragraph 157 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 157.

158.    The allegations in Paragraph 158 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 158.

159.    The allegations in Paragraph 159 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 159.

**TENTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA PENAL CODE § 496**
**(Against Defendants)**

160.    The Evolve Defendants answer Paragraph 160 by referring to, and incorporating by reference, their answers to Paragraphs 1 through 159.

161.    The allegations in Paragraph 161 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants admit that pursuant to the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve, the Synapse End Users' accounts were established in and located in Tennessee. The Evolve Defendants deny the remaining allegations in Paragraph 161.

162.    The allegations in Paragraph 162 set forth legal conclusions to which no response

47

is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 162.

163.    The allegations in Paragraph 163 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 163.

164.    The allegations in Paragraph 164 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 164.

165.    The allegations in Paragraph 165 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants deny the allegations in Paragraph 165.

166.    The allegations in Paragraph 166 set forth legal conclusions to which no response is required. To the extent a response is required, the Evolve Defendants admit that Plaintiffs purport to seek "trebled damages and attorney's fees" but deny that any Synapse FinTech End Users are entitled to any relief from the Evolve Defendants. The Evolve Defendants deny the remaining allegations in Paragraph 166.

## VII.    PRAYER FOR RELIEF

The Evolve Defendants deny that a "class" exists because no class has been certified in this matter. The Evolve Defendants admit that Plaintiffs seek the relief identified in this paragraph, but deny that any Plaintiff or class putative class member is entitled to any relief, including but not limited to the relief identified in this paragraph. The Evolve Defendants otherwise deny the remaining allegations in this paragraph and that any Plaintiff is entitled to the relief sought therein.

## VIII.  DEMAND FOR JURY TRIAL

The Evolve Defendants admit that Plaintiffs seek a jury trial but deny that they are entitled to trial by jury of their claims. The Evolve Defendants otherwise deny the remaining allegations in this paragraph.

## AFFIRMATIVE AND OTHER DEFENSES[1]

Subject to the responses above, the Evolve Defendants allege and assert the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

### First Affirmative Defense

Plaintiffs' SAC fails to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims may not be properly maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

### Third Affirmative Defense

Plaintiffs and members of the putative class have not suffered any injury-in-fact or any damages or have already received a complete remedy.

---

[1] By asserting affirmative defenses, the Evolve Defendants do not waive any arguments or objections regarding the sufficiency of Plaintiffs' or the putative class's claims. The Evolve Defendants expressly reserve all rights to challenge the legal and factual basis of Plaintiffs' and the putative class's allegations and do not relieve any Plaintiff or putative class member of their burden to prove their case in accordance with applicable law. The Evolve Defendants' assertion of affirmative defenses should not be construed as an admission of liability or as a concession regarding the merits of Plaintiffs' or the putative class's claims.

**Fourth Affirmative Defense**

Plaintiffs' SAC is barred, in whole or in part, by the terms of any applicable agreements between Evolve and Plaintiffs and/or Evolve and the putative class members.

**Fifth Affirmative Defense**

The Evolve Defendants do not owe any Plaintiff or putative class members any duties, beyond those set forth by the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve.

**Sixth Affirmative Defense**

To the extent the Evolve Defendants are found to owe any duties to any Plaintiff or putative class member, beyond those set forth by the Synapse FinTech End Users' applicable and effective Deposit Agreement with Evolve, the Evolve Defendants breached no duty.

**Seventh Affirmative Defense**

Plaintiffs' SAC is barred, in whole or in part, to the extent Plaintiffs and/or the putative class members seek relief for conduct occurring outside the applicable statutes of limitations.

**Eighth Affirmative Defense**

The Evolve Defendants, after conducting a reconciliation of Synapse FinTech End User funds held at Evolve, have returned Synapse FinTech End User funds held and thus do not have possession of funds claimed by any Plaintiff or putative class member.

**Ninth Affirmative Defense**

To the extent Plaintiffs and/or the putative class members failed to take reasonable steps to mitigate their alleged damages, their recovery must be barred or diminished accordingly.

**Tenth Affirmative Defense**

Plaintiffs' SAC is barred, in whole or in part, by the equitable doctrines of unclean hands, waiver, and/or estoppel.

**Eleventh Affirmative Defense**

Plaintiffs' SAC is barred, in whole or in part, by Plaintiffs' and putative class members' assumption of risk to the extent they had prior knowledge of, and chose to participate in, the conduct of which they now complain.

**Twelfth Affirmative Defense**

Plaintiffs and/or the putative class members expressly or impliedly assented to or ratified the disposition of their property by the Synapse FinTechs to whom they gave such property or by Synapse.

**Thirteenth Affirmative Defense**

Plaintiffs' SAC is barred or limited, or should be reduced, by negligence or fault of Plaintiffs and/or the putative class members, under the doctrine of contributory and/or comparative fault.

**Fourteenth Affirmative Defense**

The damages sustained by Plaintiffs and/or the putative class members, if any, were actually and proximately caused by Plaintiffs' and/or the putative class members' contributory and/or comparative fault such that any recovery is barred or proportionately reduced by applicable law.

51

**Fifteenth Affirmative Defense**

The damages purportedly sustained by Plaintiffs and/or the putative class members, if any, were actually and proximately caused by the negligence of third parties such that any recovery is barred or proportionately reduced by applicable law. *See, e.g.,* The Evolve Defendants' Designation of Non-Parties at Fault, ECF No. 66 (filed Feb. 20, 2025).

**Sixteenth Affirmative Defense**

Any damages purportedly sustained by Plaintiffs and/or the putative class members, if any, are reduced by the amount, if any, by which Plaintiffs and/or the putative class members received payment from any collateral source, including but not limited to from the other named Defendants in this action, other entities in the Synapse ecosystem, or the Consumer Financial Protection Bureau ("CFPB").

**Seventeenth Affirmative Defense**

Any damages sustained by Plaintiffs and/or any putative class members were proximately caused by the actions and omissions of that individual or of others, including but not limited to Synapse, the other Defendants in this action, or other entities in the Synapse ecosystem, and those actions and omissions were the sole cause of the alleged damages. In other words, the Evolve Defendants plead that independent, intervening, or suspending acts and omissions are a complete bar to this action.

**Eighteenth Affirmative Defense**

Plaintiffs' SAC improperly pleads punitive damages in direct violation of Colo. Rev. Stat. § 13-21-102(1.5)(a).

**Nineteenth Affirmative Defense**

Plaintiffs fail to plead any facts sufficient to support their claim for "nominal, punitive, and statutory damages" and their claim for attorneys' fees.

**Twentieth Affirmative Defense**

Plaintiffs' SAC is barred, in whole or in part, because the damages sought against the Evolve Defendants would violate their due process rights under the United States Constitution.

**Twenty-First Affirmative Defense**

To the extent that Plaintiffs and/or the putative class seek to extrapolate liability, causation, or damages on a class-wide basis without requiring each putative class member to prove liability, causation, and damages to establish each individual's claims, Plaintiffs' class claims are barred, in whole or in part, by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, as well as the Seventh Amendment's guarantee of a jury trial.

**Twenty-Second Affirmative Defense**

Plaintiffs' SAC is barred, in whole or in part, by the economic loss rule.

**RESERVATION OF RIGHTS**

The Evolve Defendants do not waive any applicable defense and expressly reserve the right to amend this Answer or to assert and to rely upon any such other applicable defenses that may become available through discovery and as this action proceeds. In particular, but not without limitation, in the event this action is certified as a class action, the Evolve Defendants reserve the right to amend this Answer to assert defenses that may be available under the law applicable to the claims of any class member.

## JURY DEMAND

The Evolve Defendants request a trial by jury on all issues so triable.

## EVOLVE'S CROSSCLAIMS AGAINST CO-DEFENDANTS AMG & LINEAGE

### I.    JURISDICTION AND VENUE

1.    Plaintiffs have alleged that this Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a proposed class action in which (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

2.    Evolve's crossclaims are proper under Fed. R. Civ. P. 13(g) because they arise from the same transaction or occurrence that is the subject matters of Plaintiffs' SAC. This Court may therefore exercise supplemental jurisdiction over its crossclaims. 28 U.S.C. § 1367(a); Fed. R. Civ. P. 13(a).

3.    Plaintiffs have alleged that venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

### II.    PARTIES

4.    Evolve Bank & Trust ("Evolve") is a bank chartered under the laws of the state of Arkansas. Evolve's operational headquarters is located at 6000 Poplar Avenue, Memphis, Tennessee 38119, and its main office is located at 301 Shoppingway Boulevard, West Memphis, Arkansas 72301.

5.    AMG is a bank chartered under the laws of the United States, whose corporate

headquarters and principal place of business is located at 1155 Canyon Boulevard, Suite 310, Boulder, Colorado 80302.

6.     Lineage is a bank chartered under the laws of the state of Tennessee whose corporate headquarters and principal place of business is located at 3359 Aspen Grove Drive, Franklin, Tennessee 37067.

## III.    FACTUAL BACKGROUND

7.     Evolve contracted with Synapse Financial Technologies, Inc. ("Synapse") for Evolve to provide banking services to certain end users of various financial technology platforms that partnered with Synapse ("Synapse Fintechs"). The end users of the Synapse Fintechs are referred to as "Synapse Fintech End Users."

8.     As part of this business relationship, Synapse functioned as a third-party intermediary between FDIC-insured bank Evolve, on the one hand, and Synapse Fintechs, like Yotta Technologies, Inc. ("Yotta") and Juno by CapitalJ, Inc. ("Juno"), on the other. As the middleman brokering this relationship, Synapse was contractually responsible for opening deposit accounts, receiving and communicating end user payment instructions, and tracking the movement and location of end user funds within the Synapse ecosystem by maintaining accurate ledgers. To fulfill these roles, Synapse provided Evolve with access to its Dashboard system, which Evolve relied upon to access critical information about end users' account activity.

9.     Synapse Fintech End User funds were held in "For Benefit of" accounts at Evolve, which collectively held the funds for the benefit of Synapse Fintech platforms' end users.

10.     The contract between Evolve and Synapse expired in September 2023, and the relationship entered into a wind-down period at that time.

11.     Upon information and belief, as result of the wind-down of Evolve and Synapse's business relationship, Synapse worked to secure alternative banking service providers to hold Synapse Fintech End User funds.

12.     To that end, upon information and belief, Synapse utilized its Cash Management Program, which was offered by Synapse Brokerage LLC ("Synapse Brokerage"), a registered broker-dealer and wholly-owned subsidiary of Synapse, and managed by Synapse.

13.     Upon information and belief, FDIC-insured banks AMG National Trust ("AMG"), Lineage Bank, N.A. ("Lineage"), and American Bank, N.A. ("American") were designated by Synapse as program banks of Synapse Brokerage and provided banking services to Synapse Fintech End Users that migrated to the Cash Management Program ("Synapse Brokerage End Users"). Evolve did not enter into a program bank agreement with Synapse Brokerage and was not a program bank or partner financial institution of Synapse Brokerage.

14.     Some Synapse Fintechs, including Yotta and Juno, elected to continue their partnership with Synapse and migrated to the Cash Management Program offered by Synapse Brokerage beginning in or around the Fall of 2023.

15.     Upon information and belief, in or around October 2023, Synapse began to transition the funds of Synapse Brokerage End Users away from Evolve. Evolve received migration-related instructions from Synapse, and processed those instructions, as authorized by the Deposit Agreement governing the relationship between Synapse Fintech End Users and Evolve.

16.     Upon information and belief, beginning in or around October 2023, Synapse directed the transfer of more than $300 million away from Evolve to Synapse Brokerage program banks.

56

17. To avoid disruption to Synapse Brokerage End User accounts during the transition period, Evolve provided payment processing services to Synapse Brokerage End Users, including processing certain transactions on their behalf. In connection with these activities, Evolve maintained certain funds of Synapse Brokerage End Users for payment processing-related activities.

18. Upon information and belief, Synapse attributed monies to Evolve on the Synapse ledgers by adjusting values on the ledgers without an actual accompanying transfer of funds from AMG or Lineage to Evolve.

19. On April 22, 2024, Synapse filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court in the Central District of California.

20. On May 11, 2024, Synapse revoked Evolve's access to Synapse's Dashboard system. Synapse provided no prior notice to Evolve of the access revocation.

21. Upon discovering that access to the Dashboard had been revoked on the morning of May 11, 2024, Evolve was forced to freeze account activity for Synapse Fintech End Users as of May 11, 2024.

22. Upon information and belief, AMG and Lineage also froze the movement of funds held on behalf of Synapse Brokerage End Users at or around the same time.

23. Synapse failed in its responsibilities to keep current and accurate records related to Synapse Fintech End Users' funds; to promptly and regularly review and reconcile the end user deposit ledger it maintained pursuant to its contract with Evolve; and to provide Evolve access to the Dashboard system such that Evolve could view, edit, and manage end user account records, balances, and transactions. Synapse's failures led to material irregularities and inconsistencies in

the deposit ledger generated by Synapse for Synapse Brokerage End Users with funds held at Evolve. In multiple instances, the ledgers provided by Synapse showed significant differences in Synapse Brokerage End Users' balances at Evolve from one day to the next, without a corresponding movement of funds.

24.     Upon information and belief, Synapse's failure to maintain accurate ledgers and Synapse's ensuing bankruptcy created a ripple effect that resulted in the inability to rely on Synapse's ledgers to determine the financial institution at which Synapse Brokerage End User funds were held. These failures resulted in Synapse Brokerage End Users not having access to their funds while impacted depository institutions (i.e., Evolve and the Synapse Brokerage program banks) attempted to determine the balances actually owed to Synapse Brokerage End Users.

25.     Evolve hired Ankura Consulting Group, an independent global expert services and advisory firm, to conduct a comprehensive reconciliation to determine the amount of Synapse Brokerage End Users' funds held at Evolve, which involved reconciliation of data provided by Synapse, Evolve data, and data from the Federal Reserve. The reconciliation encompassed over 100 million transaction records from Synapse's MongoDB database, Evolve's own records, and Federal Reserve transaction records for transactions at Evolve, with approximately 10 terabytes of Synapse data alone.

26.     Ankura analyzed the Synapse and Evolve data to track the flow of funds in and out of Synapse Brokerage End Users' accounts to accurately calculate each Synapse Brokerage End User's balance. Ankura then reconstructed Synapse Brokerage End Users' balances transaction by transaction from the Synapse data. Ankura further isolated Evolve-related transactions to calculate

58

an Evolve-specific Synapse Brokerage End User balance held at Evolve from the Synapse data. The reconciliation did not subdivide Synapse Brokerage End User ecosystem balances by institution, with the exception of the Evolve balance, because Ankura did not have access to transaction-level data from Synapse Brokerage program banks. As a result of that reconciliation process, Evolve began returning funds held at Evolve to Synapse Brokerage End Users in November 2024.

27.    Neither AMG, Lineage, nor American have disclosed that they retained an independent firm to conduct this type of analysis.

28.    Throughout the Synapse bankruptcy proceedings, Evolve advocated for a comprehensive, ecosystem-wide reconciliation of Synapse Brokerage End User balances across all financial institutions that were part of the Synapse ecosystem. That would allow Evolve to accurately calculate the true Synapse ecosystem balance of each Synapse Brokerage End User and the institution(s) that holds the funds comprising that balance.

29.    Despite Evolve's repeated requests, AMG and Lineage refused to participate in a comprehensive ecosystem-wide reconciliation.

30.    Despite Evolve's repeated requests, AMG and Lineage refused to share critical data and information necessary for Evolve to undertake, at its own cost, a comprehensive ecosystem-wide reconciliation.

31.    Upon information and belief, AMG and Lineage returned funds to Synapse Brokerage End Users based on the ledgers provided by Synapse that contained significant material inaccuracies. Accordingly, any distribution based solely on Synapse's records would necessarily be incorrect and unreliable. Further, because these distributions were based on Synapse's

59

inaccurate ledgers, upon information and belief, AMG and Lineage paid out inaccurate amounts and/or less than the proper amounts owed by each to Synapse Brokerage End Users.

32.    AMG has stated that AMG's records reconciled with Synapse's ledgers and Synapse Brokerage End User balances and that it has paid more than 99.7% of funds to Synapse Fintechs and end users as directed.[2] But Synapse's ledgers were inaccurate and did not include funds actually owed by AMG to Synapse Brokerage End Users. Moreover, AMG has stated that "calculating specific end users balances **by bank** was impossible because Synapse often directed large bulk bank-to-bank transfers of funds that bore no relationship whatsoever to specific individual end users or their transactions."[3] Accordingly, upon information and belief, AMG paid less than the total amount of Synapse Brokerage End User funds that it properly owes because it improperly relied on the inaccurate Synapse ledgers.

33.    Lineage has asserted the Synapse-provided trial balance data is contradictory, does not match the flow of funds, and cannot be verified at the fintech platform level or at the individual end-user level based on information available to Lineage.[4] Lineage also asserted that Synapse assigned (apparently, on an arbitrary basis) millions in missing funds to partner banks in its post-bankruptcy final trial balance, and that the final trial balance reflects millions of missing funds in the Synapse ecosystem.[5] For that reason, Lineage asserted that it and the partner banks lack a clear

---

[2] ECF No. 171 ¶ 29.

[3] *In re: Synapse Financial Technologies, Inc.,* No. 1:24-bk-10646-MB, ECF No. 453 at 16 (C.D. Cal. Bankr. Nov. 12, 2024), Ex. A to Trustee's Third Status Report, Joint Status Update from AMG National Trust ("AMG") and Lineage Bank ("Lineage") (emphasis in original).

[4] *In re: Synapse Financial Technologies, Inc.,* No. 1:24-bk-10646-MB, ECF No. 287 at 26 (C.D. Cal. Bankr. June 20, 2024), Ex. C to Trustee's Third Status Report, Lineage Bank, Status Report to Chapter 11 Trustee.

[5] *Id.*

understanding of the exact amount or the origin of the purported shortfall. Lineage further asserted that this uncertainty complicates any attempt to fairly allocate Synapse Brokerage End User funds among Evolve, Lineage, and AMG.[6] Accordingly, upon information and belief, Lineage paid less than the total amount of Synapse Brokerage End User funds that it properly owes because it improperly relied on the inaccurate Synapse ledgers.

34.     For a subset of Synapse Brokerage End Users, Evolve's reconciliation determined that Evolve held the total amount of their Synapse ecosystem balance, and Evolve paid those end users the full amount of funds held by Evolve by March 2025.

35.     However, for a larger subset of Synapse Brokerage End Users, Evolve's reconciliation determined that it did not hold any of their funds or that Evolve held only a portion of their total Synapse ecosystem balance.

36.     Without a comprehensive, ecosystem-wide reconciliation, Evolve cannot determine the extent to which AMG and Lineage owe Synapse Brokerage End Users, or other Synapse ecosystem banks, funds deposited by end users in the Cash Management Program during and after the wind-down period.

37.     A number of Synapse Brokerage End Users have complained to Evolve that the amounts they received from Evolve, Lineage, and/or AMG are incorrect. Upon information and belief, Evolve was the only one of the three banks to engage a third party to perform a reconciliation based on transaction-level information, rather than the inaccurate Synapse ledgers. Accordingly, because Evolve has made payments to Synapse Brokerage End Users based on its reconciliation results, Evolve does not hold additional funds of Synapse Brokerage End Users, and

---

[6] *Id.*

61

any portions of Synapse Brokerage End Users' ecosystem balances that remain unpaid are necessarily held by either AMG or Lineage (or a combination thereof).

38.     As a result of AMG and Lineage's reliance on the inaccurate Synapse ledgers in distributing Synapse Brokerage End User funds, a number of Synapse Brokerage End Users have sought return of their funds from Evolve, when in fact, their funds were or are held at either AMG or Lineage (or at a combination of both). Accordingly, Evolve has spent (and continues to incur) significant expenses to defend itself against such claims, despite the fact that it is AMG and Lineage that owe such funds. Evolve continues to suffer significant economic injury, as well as reputational injury and injury to its goodwill due to these false claims.

39.     Evolve's reconciliation also determined that a number of users had a negative balance in their account at Evolve, as of the time of the account freezes, despite simultaneously having a positive balance with their Synapse FinTech. This is due to the fact that Evolve continued to provide payment processing activities to Synapse Brokerage End Users during Evolve's wind-down period with Synapse, and thereby, Evolve continued to process debits and other withdrawals for Synapse Brokerage End Users, even when the associated deposit account lacked sufficient funds to cover the transaction(s).

40.     For these users, Evolve processed significant debits and withdrawals of Synapse Brokerage End User funds during the wind-down period, and Synapse failed to sweep the corresponding amount of funds into Evolve to cover those transactions. Therefore, for certain Synapse Brokerage End Users, the balance in their Evolve deposit account, at the time of the May 2024 freeze, was negative, despite the fact that their Synapse Fintech platform may have reflected a positive balance. This demonstrates that Evolve processed debits and withdrawals for Synapse

Brokerage End Users and is owed funds by AMG and Lineage to cover the costs of such transactions.

41.     Upon information and belief, Evolve's reconciliation results confirm that AMG and Lineage owe Evolve funds—some of which AMG and Lineage have improperly distributed to Synapse Brokerage End Users in reliance on the inaccurate Synapse ledgers. AMG and Lineage likely also owe Synapse Brokerage End Users additional funds as well; however, such funds are separate and distinct from the funds that AMG and Lineage owe Evolve to cover Evolve's payment processing activities during the wind-down period.

## IV.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### MONEY HAD AND RECEIVED
### (Against AMG and Lineage)

42.     Evolve restates the preceding allegations as if set forth herein.

43.     During Evolve's contractual wind-down period with Synapse, Synapse directed the transfer of certain Synapse Fintech End User balances from Evolve to Synapse Brokerage, which Synapse represented had program bank relationships with AMG and Lineage.

44.     To avoid disruption to Synapse Fintech End Users during this transition period, Evolve temporarily provided payment processing services to Synapse Fintech End Users whose funds were transferred to Synapse Brokerage at Synapse's direction. In connection with these activities, Evolve held certain Synapse Brokerage End User funds for the purposes of processing payment activity associated with their accounts and, at Synapse's direction, transferred and/or received funds on behalf of Synapse Brokerage End Users.

45.     Upon information and belief, AMG and Lineage, in reliance on inaccurate Synapse

ledgers, paid out monies to Synapse Brokerage End Users after May 2024, which amounts were also necessarily inaccurate because they did not sufficiently account for funds transferred between Evolve and the Synapse Brokerage program banks in connection with Synapse's administration of the Cash Management Program.

46.     Evolve's reconciliation also determined that a number of users had a negative balance in their account at Evolve, as of the time of the account freezes, despite simultaneously having an overall positive balance with their Synapse Fintech. This is due to the fact that Evolve continued to provide payment processing activities to Synapse Brokerage End Users during Evolve's wind-down period with Synapse, and thereby, Evolve continued to process debits and other withdrawals for Synapse Brokerage End Users with overall positive balances with their Synapse Fintech, even when the associated deposit account at Evolve lacked sufficient funds to cover the transaction(s). Upon information and belief, Synapse attributed monies to Evolve on the Synapse ledgers by adjusting values on the ledgers without an actual accompanying transfer of funds from AMG or Lineage to Evolve. In such cases, AMG and Lineage held the Synapse Brokerage End User funds necessary to make Evolve whole. Because Evolve processed debits and withdrawals for Synapse Brokerage End Users in this manner, in accordance with Synapse Brokerage End Users' and Synapse's instructions, AMG and Lineage owe Evolve funds to cover the negative balances resulting from such transactions.

47.     As a result of AMG and Lineage's reliance on the inaccurate Synapse ledgers in distributing Synapse Brokerage End User funds, a number of Synapse Brokerage End Users have sought return of their funds from Evolve, when in fact, their funds were or are held at either AMG or Lineage (or at a combination of both). Accordingly, Evolve has spent (and continues to incur)

significant expenses to defend itself against such claims, despite the fact that it is AMG and Lineage that owe such funds. Evolve continues to suffer significant economic injury, as well as reputational injury and injury to its goodwill due to these false claims.

48.    Upon information and belief, AMG and Lineage have in their possession funds owed to Evolve.

49.    Despite Evolve's repeated requests, AMG and Lineage have refused to participate in an ecosystem-wide reconciliation or to provide a complete and useable set of critical data necessary for Evolve to conduct an ecosystem-wide reconciliation.

50.    Upon information and belief, AMG and Lineage have refused access to funds owed to Evolve.

51.    Accordingly, as more fully set forth above, AMG and Lineage have in their possession money which in equity and good conscience belongs to Evolve. That money should be refunded to Evolve.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(Against AMG and Lineage)**

52.    Evolve restates the preceding allegations as if set forth herein.

53.    During its contractual wind-down period with Synapse, Synapse directed the transfer of certain Synapse Fintech End User balances from Evolve to Synapse Brokerage, which Synapse represented had program bank relationships with AMG and Lineage.

54.    To avoid disruption to Synapse Fintech End Users during this transition period, Evolve temporarily provided payment processing services to Synapse Fintech End Users whose funds were transferred to Synapse Brokerage at Synapse's direction. In connection with these

activities, Evolve held certain Synapse Brokerage End User funds for the purposes of processing payment activity associated with their accounts and, at Synapse's direction, transferred and/or received funds on behalf of Synapse Brokerage End Users.

55.    Upon information and belief, AMG and Lineage, in reliance on inaccurate Synapse ledgers, paid out monies to Synapse Brokerage End Users after May 2024, which amounts were also necessarily inaccurate because they did not sufficiently account for funds transferred between Evolve and the Synapse Brokerage program banks in connection with Synapse's administration of the Cash Management Program.

56.    Evolve's reconciliation also determined that a number of users had a negative balance in their account at Evolve, as of the time of the account freezes, despite simultaneously having an overall positive balance with their Synapse Fintech. This is due to the fact that Evolve continued to provide payment processing activities to Synapse Brokerage End Users during Evolve's wind-down period with Synapse, and thereby, Evolve continued to process debits and other withdrawals for Synapse Brokerage End Users with overall positive balances with their Synapse Fintech, even when the associated deposit account at Evolve lacked sufficient funds to cover the transaction(s). Upon information and belief, Synapse attributed monies to Evolve on the Synapse ledgers by adjusting values on the ledgers without an actual accompanying transfer of funds from AMG or Lineage to Evolve. In such cases, AMG and Lineage held the Synapse Brokerage End User funds necessary to make Evolve whole. Because Evolve processed debits and withdrawals for Synapse Brokerage End Users in this manner, in accordance with Synapse Brokerage End Users' and Synapse's instructions, AMG and Lineage owe Evolve funds to cover the negative balances resulting from such transactions.

57.    As a result of AMG and Lineage's reliance on the inaccurate Synapse ledgers in distributing Synapse Brokerage End User funds, a number of Synapse Brokerage End Users have sought return of their funds from Evolve, when in fact, their funds were or are held at either AMG or Lineage (or at a combination of both). Accordingly, Evolve has spent (and continues to incur) significant expenses to defend itself against such claims, despite the fact that it is AMG and Lineage that owe such funds. Evolve continues to suffer significant economic injury, as well as reputational injury and injury to its goodwill due to these false claims.

58.    Upon information and belief, AMG and Lineage have in their possession funds owed to Evolve.

59.    Despite Evolve's repeated requests, AMG and Lineage have refused to participate in an ecosystem-wide reconciliation or to provide the critical data necessary for Evolve to conduct an ecosystem-wide reconciliation.

60.    Upon information and belief, AMG and Lineage have refused access to funds owed to Evolve.

61.    Upon information and belief, AMG and Lineage have been unjustly enriched in retaining funds owed to Evolve.

62.    Upon information and belief, AMG and Lineage have also been unjustly enriched by accruing interest and deriving profits from the unauthorized retention and use of funds owed to Evolve.

63.    AMG and Lineage's retention of these funds owed to Evolve under these circumstances is unjust and inequitable.

64.    As a direct and proximate cause of AMG and Lineage's misconduct, Evolve is

entitled to injunctive relief and restitution, disgorgement, interest, and other available damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### CONVERSION
### (Against AMG and Lineage)

65.     Evolve restates the preceding allegations as if set forth herein.

66.     During its contractual wind-down period with Synapse, Synapse directed the transfer of certain Synapse Fintech End User balances from Evolve to Synapse Brokerage, which Synapse represented had program bank relationships with AMG and Lineage.

67.     To avoid disruption to Synapse Fintech End Users during this transition period, Evolve temporarily provided payment processing services to Synapse Fintech End Users whose funds were transferred to Synapse Brokerage at Synapse's direction. In connection with these activities, Evolve held certain Synapse Brokerage End User funds for the purposes of processing payment activity associated with their accounts and, at Synapse's direction, transferred and/or received funds on behalf of Synapse Brokerage End Users.

68.     Upon information and belief, AMG and Lineage, in reliance on inaccurate Synapse ledgers, paid out monies to Synapse Brokerage End Users after May 2024, which amounts were also necessarily inaccurate because they did not sufficiently account for funds transferred between Evolve and the Synapse Brokerage program banks in connection with Synapse's administration of the Cash Management Program. Because these distributions were based on the inaccurate Synapse ledgers, AMG and Lineage paid out less than the proper amounts owed by each to Synapse Brokerage End Users. These distributions were incorrect and unauthorized because they were made in reliance on the inaccurate Synapse ledgers.

68

69.    Evolve's reconciliation also determined that a number of users had a negative balance in their account at Evolve, as of the time of the account freezes, despite simultaneously having an overall positive balance with their Synapse Fintech. This is due to the fact that Evolve continued to provide payment processing activities to Synapse Brokerage End Users during Evolve's wind-down period with Synapse, and thereby, Evolve continued to process debits and other withdrawals for Synapse Brokerage End Users with overall positive balances with their Synapse Fintech, even when the associated deposit account at Evolve lacked sufficient funds to cover the transaction(s). Upon information and belief, Synapse attributed monies to Evolve on the Synapse ledgers by adjusting values on the ledgers without an actual accompanying transfer of funds from AMG or Lineage to Evolve. In such cases, AMG and Lineage held the Synapse Brokerage End User funds necessary to make Evolve whole. Because Evolve processed debits and withdrawals for Synapse Brokerage End Users in this manner, in accordance with Synapse Brokerage End Users' and Synapse's instructions, AMG and Lineage owe Evolve funds to cover the negative balances resulting from such transactions.

70.    As a result of AMG and Lineage's reliance on the inaccurate Synapse ledgers in distributing Synapse Brokerage End User funds, a number of Synapse Brokerage End Users have sought return of their funds from Evolve, when in fact, their funds were or are held at either AMG or Lineage (or at a combination of both). Accordingly, Evolve has spent (and continues to incur) significant expenses to defend itself against such claims, despite the fact that it is AMG and Lineage that owe such funds. Evolve continues to suffer significant economic injury, as well as reputational injury and injury to its goodwill due to these false claims.

71.    Upon information and belief, AMG and Lineage have in their possession funds

owed to Evolve.

72.     Despite Evolve's repeated requests, AMG and Lineage have refused to participate in an ecosystem-wide reconciliation or to provide the critical data necessary for Evolve to conduct an ecosystem-wide reconciliation.

73.     Upon information and belief, AMG and Lineage wrongfully refused to return the funds owed to Evolve upon proper demand.

74.     Evolve did not consent to the misconduct described herein.

75.     The converted amounts are specifically identifiable and in a fixed amount.

76.     As a result of the foregoing actions of AMG and Lineage, Evolve has been damaged in an amount to be proven at trial. Evolve seeks all available remedies including general damages, special damages, injunctive relief, attorneys' fees, and costs.

## FOURTH CLAIM FOR RELIEF
### ACCOUNTING
### (Against AMG and Lineage)

77.     Evolve restates the preceding allegations as if set forth herein.

78.     During its contractual wind-down period with Synapse, Synapse directed the transfer of certain Synapse Fintech End User balances from Evolve to Synapse Brokerage, which Synapse represented had program bank relationships with AMG and Lineage.

79.     To avoid disruption to Synapse Fintech End Users during this transition period, Evolve temporarily provided payment processing services to Synapse Fintech End Users whose funds were transferred to Synapse Brokerage at Synapse's direction. In connection with these activities, Evolve held certain Synapse Brokerage End User funds for the purposes of processing payment activity associated with their accounts and, at Synapse's direction, transferred and/or

70

received funds on behalf of Synapse Brokerage End Users.

80.     Upon information and belief, AMG and Lineage, in reliance on inaccurate Synapse ledgers, paid out monies to Synapse Brokerage End Users after May 2024, which amounts were also necessarily inaccurate because they did not sufficiently account for funds transferred between Evolve and the Synapse Brokerage program banks in connection with Synapse's administration of the Cash Management Program.

81.     Upon information and belief, AMG and Lineage have in their possession funds owed to Evolve.

82.     Despite Evolve's repeated requests, AMG and Lineage have refused to participate in an ecosystem-wide reconciliation or to provide the critical data necessary for Evolve to conduct an ecosystem-wide reconciliation.

83.     Upon information and belief, AMG and Lineage have not returned the funds owed to Evolve in full, and until such time, are improperly benefitting from and/or profiting off of funds that are owed to Evolve in its own right and on behalf of Synapse Brokerage End Users.

84.     Upon information and belief, AMG and Lineage have not provided access to the funds owed to Evolve.

85.     AMG and Lineage have refused to provide an accounting and/or sufficient data, information, and documentation concerning the amount and location of funds owed to Evolve.

86.     Evolve is entitled to an accounting as it pertains to the amount and location of the Synapse Brokerage End User funds.

87.     A remedy at law is inadequate because, without an accounting, Evolve is unable to verify the extent of damage incurred as a result of AMG and Lineage's wrongdoing.

## V.    **PRAYER FOR RELIEF**

WHEREFORE, Evolve prays for relief as follows:

a.    An award to Evolve of restitution, disgorgement, interest and/or other equitable relief, including without limitation, the imposition of a constructive trust;

b.    An injunction ordering AMG and Lineage to participate in an ecosystem-wide reconciliation to determine the amount and location of funds owed to Evolve;

c.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by AMG and Lineage's conduct;

d.    Reasonable expenses, costs, and attorneys' fees;

e.    Pre- and post-judgment interest, to the extent allowable; and

f.    For such further relief that the Court may deem just and proper.

Dated: April 15, 2026

David G. Mayhan
Sarah Smyth O'Brien
BUTLER SNOW LLP
1801 California Street, Suite 5100
Denver, CO 80202
Tel: 720-330-2300
David.Mayhan@butlersnow.com
Sarah.Obrien@butlersnow.com

Daniel W. Van Horn
BUTLER SNOW LLP
6075 Poplar Ave #500
Memphis, TN 38119
Tel: 901-680-7331
Danny.VanHorn@butlersnow.com

Respectfully submitted,

*/s/ Aravind Swaminathan*
Aravind Swaminathan
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel: 206-839-4300
Fax: 206-839-4301
aswaminathan@orrick.com

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: 212-506 3546
Fax: 212-506-5151
mrshapiro@orrick.com

Diana S. Fassbender
Amisha R. Patel
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037-3202
Tel: 202-339-8400
Fax: 202-339-8500
dszego@orrick.com
apatel@orrick.com

*Attorneys for Defendant Evolve Bank & Trust*

73

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2026, I caused the foregoing document to be electronically

filed using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Aravind Swaminathan*
Aravind Swaminathan