IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Lead Civil Action No. 24-cv-03259-DDD-NRN

*Consolidated with* 24-cv-03261-SBP; 24-cv-03262-SBP; 24-cv-03509-NRN; 25-cv-00075-KAS, and 25-cv-03284-DDD

OLGA MARGUL, KELLI JO CLAXTON,
HENRY YEH, COLIN SMITH, ROD
GENDRON, KAYLA MORRIS, TIMOTHY
MILLER, DAWN SAQUIN, IMENE HADDAD,
DANIEL BREWER, PAUL TONNER, CORY
ESPINOLA, STEPHANIE IZQUIETA, AND
KATHERINE MAUL, individually and on behalf
of all similarly situated persons,

     Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas
bank; AMG NATIONAL TRUST BANK, a Colorado bank; and
LINEAGE BANK, a Tennessee bank,

     Defendants.

---

**ORDER ON PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER
(ECF No. 177)**

---

**N. REID NEUREITER
United States Magistrate Judge**

     This matter comes before the Court on Plaintiffs' Motion to Amend the Scheduling Order ("Motion to Amend"), ECF No. 177, filed on March 27, 2026, and referred to this Court by Chief Judge Daniel D. Domenico on March 28, 2026, ECF No. 178. Defendant AMG National Trust ("AMG") filed its response to the Motion to Amend on April 10, 2026. ECF No. 181. The other Defendants in the case do not oppose the Motion to Amend, which seeks to extend discovery and other related deadlines

approximately eight months, with fact and class discovery closing January 15, 2027, as opposed to under the current schedule, when fact and class discovery is set to close on May 15, 2026. The original Scheduling Order anticipated a discovery period that would last roughly one year, through May 15, 2026. *See* ECF No. 102.

## I.    Background and Asserted Need for Amendment

This action arises from the collapse of Synapse Financial Technologies, Inc. ("Synapse"), a financial technology ("FinTech") intermediary that facilitated the deposit of consumer funds across multiple bank partners, including Defendants AMG, Evolve Bank & Trust and Evolve Bancorp, Inc. (collectively, the "Evolve Defendants"), and Lineage Bank ("Lineage"). According to Plaintiffs, the collapse of Synapse left hundreds of thousands of consumers unable to access their funds and created a complex, multi-party dispute over the location and disposition of those funds.

Per the affidavit of Plaintiffs' counsel, ECF No. 177-1, submitted in support of the Motion to Amend, the financial transactions at issue in this case are extraordinarily complex. The case involves the tracing and reconciliation of deposits held in pooled For Benefit Of ("FBO") accounts across multiple banks, involving hundreds of millions of dollars in consumer funds. Based on discovery to date, the relevant data produced by the parties and third parties—including transaction records, account ledgers, internal communications, and bank statements—amounts to over ten terabytes of information. According to Plaintiffs' counsel's affidavit, the volume and complexity of the data has required, and will continue to require, substantial expert analysis, and tracing the movement of funds across multiple banks, FinTech platforms, and FBO accounts—over multiple years and through a bankruptcy proceeding—is a task that even well-resourced

2

parties have not been able to complete. Neither the court-appointed Synapse bankruptcy trustee nor any of the Defendants—each of whom has access to their own records and substantial resources—has completed a full reconciliation of the relevant transactions. *See* ECF No. 177-1.

Plaintiffs say they have been diligently pursuing discovery since the entry of the Scheduling Order in the case and that document production is ongoing. But, "[g]iven the volume of data involved and the complexity of the transactions at issue, the review and analysis of produced documents is ongoing and requires significant time and resources." *Id*. ¶ 7. There is also the need for third-party discovery, including from Synapse's bankruptcy estate, FinTech platform operators, and other entities with knowledge of the relevant financial transactions. According to Plaintiff's counsel, coordinating this third-party discovery in a multi-defendant case of this complexity requires additional time beyond what was contemplated when the original Scheduling Order was entered. *Id*. ¶ 8. In Plaintiffs' counsel's judgment, the eight-month extension of deadlines reflects what is "reasonably necessary" to complete fact discovery; obtain, review, and analyze additional documents; take depositions of key witnesses; and provide expert witnesses with the time necessary to analyze the evidence and prepare proper expert reports on the complex financial transactions at issue. *Id*. ¶ 12.

Beyond the claimed extreme complexity of the financial transactions that require further analysis, Plaintiffs also say an extension is justified because they have added new California Penal Code claims against the Evolve Defendants which may require investigation into Evolve's state of mind and knowledge. There is also a mediation anticipated in July of this year.

## II.    Defendant AMG's Opposition

AMG opposes the requested extension, pointing out that the Scheduling Order has been in place for eleven months and Plaintiffs have made no meaningful progress in "untangling" the financial transactions at the heart of this dispute. AMG argues that the complexities of the transactions were apparent from the very beginning of this case, and they were disclosed in the Synapse bankruptcy hearings that began in May 2024. Plaintiffs have just not devoted the time or the resources necessary to figure out where all the money went. Per AMG, "Plaintiffs' suggestion that they don't have the records they need is nothing more than an excuse for more than a year of inaction." ECF No. 181 at 3.

AMG has a strong interest in discovery being closed in this case. It has filed a motion for summary judgment which seeks to show that it has distributed all (or almost all) funds for end users according to Synapse Brokerage's instructions and the final trial balance provided to AMG after Synapse declared bankruptcy. In addition to arguing that it owed no duty to Plaintiffs (because its contractual relationship was with Synapse Brokerage), AMG asserts that there is no evidence that it is holding any of Plaintiffs' money because it was all distributed to the end users. *See* ECF No. 171. Of course, Plaintiffs have filed a Rule 56(d) declaration arguing that more discovery is needed to test the reliability of the data on which AMG was relying and the accuracy of AMG's distribution methodology. Plaintiffs state that this requires more analysis of terabytes of data, depositions of AMG's personnel, and third-party discovery. *See* ECF No. 179 at 16.

4

AMG also argues that extending discovery here for another eight months is unfairly prejudicial to AMG because it extends the potential class period, which will "negatively impact AMG's financial disclosures, employee morale, and acquisition, client, prospective client, and regulatory discussions." ECF No. 181 at 3.

## III.    Analysis

The Scheduling Order may be amended but "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, this standard requires the movant to show the "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (quotations omitted). And while the district court is afforded broad discretion in managing the pretrial schedule, total inflexibility towards a party's request to amend is undesirable. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1253–54 (10th Cir. 2011). Ultimately, the power to extend or reopen discovery rests within the sound discretion of the District Court. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

In deciding whether to amend a scheduling order, courts generally examine the following factors: (1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id*.; *see also Bagher v. Auto-Owners Ins. Co.*, No. 12-cv-00980-REB-KLM, 2013 WL 5417127, at *2 (D. Colo. Sept. 26, 2013) (analyzing the Smith factors in the context of amending a scheduling order).

Regarding the first factor, the matter is not currently set for trial. Of course, in this District, that will always be the case when a party wants to extend the discovery deadline and files a motion within the deadline because, with rare exceptions, cases are not set for trial until discovery is closed and dispositive motions are ruled upon. Accordingly, the Court gives little weight to this particular factor. Extending discovery by eight months will prevent the trial date from being set for another eight months or more.

As to the second factor, two Defendants do not oppose the extension, although AMG does. AMG's opposition weighs against the extension of the deadline, although the weight of this factor, too, is complicated by the circumstances. AMG has moved for summary judgment, believing it needs no more discovery to establish its defense. Plaintiffs have filed a declaration explaining why more discovery is needed to be able to fairly respond to AMG's motion for summary judgment. *See* ECF No. 180. That issue, like AMG's motion for summary judgment, is currently before Judge Domenico. If Judge Domenico decides that Plaintiffs need more discovery to respond to the motion for summary judgment, then Plaintiffs will be entitled to take that discovery. If, on the other hand, Judge Domenico decides that he has enough information to decide the summary judgment, and Plaintiffs are not entitled to more discovery to be able to respond, then whether this Court grants an extension of discovery deadlines is irrelevant, at least for purposes of the AMG summary judgment motion, because Judge Domenico will rule based on the record he has in front of him.

On the prejudice to the non-moving party, yes, AMG will be prejudiced by having to respond to Plaintiffs' additional discovery, prepare witnesses for deposition, and retain opposing experts. But the issue is whether AMG will be *unfairly* or *unduly*

6

prejudiced. Had Plaintiffs been more aggressive with their discovery efforts to date, AMG would have had to incur these costs. AMG's main claim to unfair prejudice is that extending the deadlines and the potential class period will "negatively impact AMG's financial disclosures, employee morale, and acquisition, client, prospective client, and regulatory discussions," but this claim of prejudice seems more speculative and conjectural than tangible.

On the diligence of the Plaintiffs in figuring out the complicated financial transactions during the time allotted in the original Scheduling Order, Plaintiffs have submitted an affidavit explaining they have been diligent but that the underlying data set is enormous. Hundreds of thousands of consumers were alleged victims of this scheme, and resolving the case involves tracing and reconciling the funds of those persons, totaling hundreds of millions of dollars across multiple banks. The produced data, per Plaintiffs' counsel's affidavit, amounts to over ten terabytes of information. ECF No. 177-1. The Court is not in the position to question Plaintiffs' counsel's representations and even AMG does not dispute the magnitude of the task. AMG just says that Plaintiffs knew about the complexity of the problem from the very beginning, have engaged in relatively little discovery, and should have worked harder to figure out the money tracing over the past eleven months. *See* ECF No. 181 at 6 ("Stated simply, they have had relevant documents for months and, for whatever reason, they simply have not invested the 'time and resources' to evaluate those documents.").

On balance, the Court finds that the arguments for extending the various deadlines in this case outweigh the arguments against. In particular, the prospect of a July mediation that may resolve the matter weighs in favor of extending the deadlines.

Although an anticipated mediation is not usually a justification for extending deadlines, in a case of this magnitude, with thousands of potential class members, reams of data to be analyzed, numerous depositions to be taken, and expensive expert reports to be prepared, focusing efforts on mediation rather than on depositions and expert reports makes some sense.

Accordingly, the Court will **GRANT** Plaintiffs' Motion to Amend the Scheduling Order, ECF No. 177, and new deadlines will be as follows:

| | |
|---|---|
| **Close of Fact and Class Discovery:** | **January 15, 2027** |
| **Plaintiffs' Initial Affirmative Expert Disclosures:** | **March 17, 2027** |
| **Deadline to move for Class Certification:** | **March 17, 2027** |
| **Defendants' Expert Disclosures:** | **May 14, 2027** |
| **Defendants' Opposition to Class Cert:** | **May 14, 2027** |
| **Plaintiff's Reply in support of Class Cert:** | **June 16, 2027** |
| **Any 702 Challenges to Experts:** | **July 14, 2027** |
| **Close of Expert Discovery:** | **August 18, 2027** |
| **Dispositive Motion Deadline:** | **September 29, 2027** |

The Court will not add a "mediation deadline" to the schedule. The Court is not in the business of ordering parties to mediation. If the Parties want to engage in mediation, they are welcome (and encouraged) to do so, and they now have more time in the schedule to conduct settlement negotiations.

**No further extensions of these deadlines will be granted absent extreme circumstances.**

Dated at Denver, Colorado this 16th day of April, 2026.

N. Reid Neureiter
United States Magistrate Judge