**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Lead Case No.: 1:24-cv-03259-DDD-NRN

*Consolidated with* Case Nos. 1:24-cv-03261-SBP; 1:24-cv-03262-SBP;
1:24-cv-03509-NRN; 1:25-cv-00075-KAS; and 1:25-cv-03284-DDD

OLGA MARGUL, KELLI JO CLAXTON, HENRY YEH,
COLIN SMITH, ROD GENDRON, KAYLA MORRIS,
TIMOTHY MILLER, DAWN SAQUIN, IMENE HADDAD,
DANIEL BREWER, PAUL TONNER, CORY ESPINOLA,
STEPHANIE IZQUIETA, KATHERINE MAUL, RICHARD
TODD HALE, ALFRED ROTIMI, and ASHLEY FELTON,
individually and on behalf of all similarly situated persons,

          Plaintiffs,

v.

EVOLVE BANK & TRUST, an Arkansas bank;
AMG NATIONAL TRUST BANK, a Colorado bank;
LINEAGE BANK, a Tennessee bank; and
EVOLVE BANCORP, INC., an Arkansas corporation,

          Defendants.

---

**AMG NATIONAL TRUST BANK'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

## <u>INTRODUCTION</u>

Discovery has been open for a year. Plaintiffs have had notice of AMG's summary judgment arguments, which are based on the same evidence and authorities raised here, for *nine months*. (Dkt. No. 123.) Yet in all that time, Plaintiffs remain unable to dispute that (i) AMG held $110,290,040.10 in its Synapse Brokerage accounts, a figure that fully reconciles with Synapse's records, AMG's records, and the Federal Reserve records; (ii) AMG has paid out more than *99.8%* of that money to end users as instructed by its customer, Synapse Brokerage; and (iii) no recipient has challenged AMG's distributions as inaccurate. In response to these facts, Plaintiffs mostly offer argument, not evidence. And when Plaintiffs bother to cite anything, they point only to a double-hearsay statement on Evolve's website (which no longer appears to exist) and a public court filing from the Synapse Bankruptcy Trustee, neither of which is admissible or relevant.

AMG's undisputed facts are simple and easily verified by reviewing Synapse's, AMG's, and the Federal Reserve records, which AMG produced a year ago. With a year to review this information—and nine months to review it in the context of AMG's summary judgment arguments—the Court should expect Plaintiffs to make some attempt to meet their burden. But instead, Plaintiffs seek more time to develop evidence. A year is more than enough time to develop evidence in opposition to summary judgment or identify any *specific* discovery they claim is necessary to oppose AMG's motion, which Plaintiffs have not done.

The Court should grant AMG's Motion for Summary Judgment.

## REPLY CONCERNING AMG'S UNDISPUTED FACTS

**7-9, 20–21, 24–25, 27, 29–32.** Plaintiffs offer no "brief factual explanation" for the denial and cite to no "specific reference to material in the record." *See* DDD Civ. P.S. III.I.2.a.

**13, 18, 23, 26.** Plaintiffs have not included a "well-grounded request for additional discovery under Federal Rule of Civil Procedure 56(d)." *See* DDD Civ. P.S. III.I.4.b.

**15.** AMG reconciled the balances to within $1,505.28 (0.001%), meaning AMG's records indicated that it held a total of $110,290,040.10 to distribute according to the Final Trial Balance, and $1,505.28 that was not allocated to specific end users. (Dkt. No. 173 ¶ 41.) AMG's independent expert confirmed this reconciliation. (Dkt. No. 171-19 ¶ 11.)

**19.** Undisputed that Evolve has posted statements on its website claiming that its consultant, Ankura, has identified errors in Synapse's data for Evolve. Plaintiffs' quotations don't appear to exist, however. AMG does not dispute the accuracy of quotations from the Synapse Bankruptcy Trustee's 2024 Fifteenth Status Report.

**22.** *See* AMG's Reply to Paragraph 15.

**28.** *See* AMG's Replies to Paragraphs 22 and 26.

## RESPONSE TO STATEMENT OF ADDITIONAL FACTS

**33–34.** *See* AMG's Reply to Paragraph 19.

**35.** Disputed. Any reconciliation as to AMG requires access only to AMG's productions and should take weeks, not months or years. (*See* Dkt. No. 171-2 ¶¶ 25-26, 36-42; Dkt. No. 171-19 ¶¶ 7-11.)

**36.** Undisputed that the Court consolidated *Felton* and mooted AMG's initial motion for summary judgment. Disputed that "*Felton* has received no discovery." AMG has produced all discovery to Plaintiffs.

**37.** Undisputed that the Second Amended Consolidated Class Action Complaint ("SACC") adds two new counts against the Evolve Defendants, adds Evolve Bancorp, Inc. as a defendant, and adds one new count—a violation of California Penal Code § 496—against all Defendants. Disputed that these claims require discovery as to AMG because Plaintiffs have conceded dismissal of their California claim against AMG. (*See infra* Argument § III.A.)

**38.** Undisputed that AMG filed its Motion for Summary Judgment on March 19, 2026, supported (in part) by a supplemental Seacrest Declaration.

**39.** Disputed. AMG has produced all information sought in discovery. That information has been available for nearly a year. In all that time, Plaintiffs have ***never*** raised any purported discovery deficiency to AMG.

**40.** Undisputed that Plaintiffs have never sought a deposition of any AMG personnel.

**ARGUMENT**

**I.     THE COURT SHOULD NOT DENY OR DEFER UNDER RULE 56(d).**

Plaintiffs first ask this Court to deny or defer AMG's summary judgment motion under Rule 56(d), but "relief under Rule 56(d) is not automatic." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Instead, a party must submit a declaration identifying "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to

3

obtain these facts, and (4) how additional time will enable the party to obtain those facts." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021).

When Plaintiffs opposed AMG's initial summary judgment motion on September 17, 2025, they offered two declarations in support, both of which vaguely referred to the "monumental, time-consuming endeavor" of "tracing and unwinding" financial transactions. (Dkt. No. 143 ¶ 22; Dkt. No. 144 ¶¶ 18-20.) Seven months later, Plaintiffs offer another counsel declaration saying the same basic thing—that they have "terabytes" of data that still require analysis. But after a year of discovery, Plaintiffs still haven't identified any "probable fact" that would preclude summary judgment in AMG's favor. (*See* Dkt. No. 179 at 10.) To the contrary, Plaintiffs cannot dispute AMG's reconciliation, and they even admit that AMG was "contractually required to execute Synapse's instructions" as outlined in the Final Trial Balance. Put simply, it is undisputed that no alleged "shortfall" exists at AMG.

Plaintiffs have already had a ***year*** to analyze Synapse's records, AMG's records, and the Federal Reserve records to identify any inconsistencies. Plaintiffs have already had ***nine months*** to develop and present evidence that AMG held more than it says it held or distributed amounts different than it says it distributed. That is not a complex or time-consuming process. AMG's expert was able to independently reconcile and verify these records in a matter of weeks—not months or years. (Dkt. No. 171-19.) Plaintiffs' Rule 56(d) request should be denied.

## II.  PLAINTIFFS CITE NO ADMISSIBLE EVIDENCE TO CREATE A GENUINE DISPUTE.

Synapse's records, AMG's records, and the Federal Reserve records all confirm that AMG held $110,290,040.10 in the Synapse Brokerage accounts as of May 17, 2024. On Synapse

Brokerage's instruction, AMG has since distributed nearly all of those funds based on an undisputed reconciliation. As of March 10, 2026, AMG has distributed $110,103,266.16 (roughly **99.8%**) with a tiny percentage left to distribute once AMG can confirm contact information. (Dkt. No. 173-7 ¶ 6.) Given this record, Plaintiffs present no evidence on which a "reasonable jury could return a verdict" for them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Instead, Plaintiffs argue only that the "fatal flaw" in AMG's argument is its reliance on the Final Trial Balance, which they say has "errors" based only on Evolve's website claiming that its consultant, Ankura, has found errors in Synapse's data. First, Plaintiffs entirely ignore that AMG also relied on its own records and the Federal Reserve records for its reconciliation, which remains undisputed. Second, Plaintiffs do not (and cannot) dispute that no "shortfall" exists at AMG. Third, Plaintiffs cannot create a disputed issue of fact by relying on Evolve's out-of-court statement about Ankura's alleged out-of-court findings, which have never been disclosed, and which constitute inadmissible double hearsay in any event. *See* Fed R. Evid. 801; Fed. R. Civ. P. 56(c)(2); *Johnson v. Weld Cnty., Colo.*, 594 F. 3d 1202, 1208-10 (10th Cir. 2010).

## III.    PLAINTIFFS' CLAIMS ALSO FAIL AS A MATTER OF LAW.

### A.    Plaintiffs Fail to Respond to AMG's Arguments to Dismiss Their California Claim.

AMG sought dismissal of Plaintiffs' new claim for violation of California Penal Code § 496 (*see* Dkt. No. 171 at 14-15), and Plaintiffs offer no counter-argument or counter-evidence in response. Accordingly, AMG's evidence in support of dismissing this claim is undisputed, and the Court can and should dismiss this claim against AMG. *See Perez v. El Tequila, LLC*, 847 F.3d 1247, 1254-55 (10th Cir. 2017); *see also* Fed. R. Civ. P. 56(e)(3).

5

B.    Plaintiffs' Negligence and Breach of Fiduciary Duty Claims Fail.

Plaintiffs argue that their duty-based claims survive summary judgment because (i) AMG owed a "fiduciary duty" under Colo. Rev. Stat. § 15-1-507; (ii) AMG may have owed duties under the *Taco Bell* factors, and (iii) Plaintiffs allege "misfeasance," not "nonfeasance." (Dkt. No. 179 at 10-15.) Each argument fails.

*First*, Plaintiffs' "fiduciary duty" argument is based on an inapposite statute and irrelevant case law. Colo. Rev. Stat. § 15-1-501 outlines the process by which a "fiduciary"—defined to mean a trustee, executor, conservator, and the like, *see* Colo. Rev. Stat. § 15-1-103—must keep fiduciary property in a separate "fiduciary account." For purposes of this statute only, *if* "a bank or trust company [is] acting as custodian" of fiduciary property, *then* the bank "shall be deemed to be a fiduciary." Colo. Rev. Stat. § 15-1-507. In other words, for this statute to apply, the depositor must be a fiduciary and the bank must be a custodian—meaning the bank must accept that responsibility *and* have knowledge of any restrictions on fiduciary property. *See Matter of Conservatorship of Roth*, 804 P.2d 265, 267 (Colo. App. 1990) (a bank that acknowledged that an account opened by a conservatorship was restricted and that the funds could only be removed with a court order was a "custodian"). Plaintiffs do not even allege such facts, nor could they plausibly do so. *See In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 260-61, 266 (Bankr. N.D. Fla. 2003) (dismissing duty-based claims against a bank and concluding that holding funds in "trust" and "fbo" accounts was insufficient as a matter of law to create any fiduciary obligations to non-customer).

Plaintiffs' citation to *Paine, Webber, Jackson & Curtis, Inc. v. Adams* is highly misleading. In that case, the Colorado Supreme Court declined to find the existence of a *per se* fiduciary

6

relationship between a stockbroker and a customer, instead requiring the customer to show that the "customer has placed trust and confidence in the broker, with the broker's knowledge, to manage the customer's account for the customer's benefit." 718 P.2d 508, 517-18 (Colo. 1986). Again, AMG had no customer relationship with any Plaintiff and was not managing any end user funds. *Cf. Rupert v. Clayton Brokerage Co. of St. Louis*, 737 P.2d 1106, 1109 (Colo. 1987) (a stockbroker owes fiduciary duties to a customer when the "customer relinquishes practical control over his brokerage account to a stockbroker").

*Second*, there is no need to address whether a duty arose under the *Taco Bell* factors because the law is well-settled that a bank owes no duties to non-customers. In *Weil v. First National Bank of Castle Rock*, the Colorado Court of Appeals cited with approval jurisdictions holding that banks owe no duties to non-customers, and it also found no duty of care after considering the *Taco Bell* factors, finding it would be "unreasonable to require banks to make" the kind of "independent investigation" the plaintiff sought. 983 P.2d 812, 814 (Colo. App. 1999). *Weil* is directly on point: AMG owes no duties to non-customers, like Plaintiffs, as a matter of law, and no "independent investigation" was required. Plaintiffs also misleadingly suggest that discovery is necessary to evaluate whether AMG may have had duties arising out of individual contractual relationships with end-users. (Dkt. No. 179 at 13.) But it is undisputed that AMG never entered into any contract with any end user (Dkt. No. 171 at 3, ¶ 7), and Plaintiffs offer no counter-evidence in response.

*Third*, to avoid *Weil*, Plaintiffs try to recast their claims as "misfeasance" claims, which fails three times over. For one, *Weil* does not draw a distinction between "misfeasance" and "nonfeasance." 983 P.2d at 814. For another, Plaintiffs' argument that AMG engaged in

7

"misfeasance" by "distributing over $110 million dollars" is divorced from Plaintiffs' allegations, where they say AMG "*fail[ed]* to maintain and hold cash deposits" for Plaintiffs. (SACC ¶ 101, Dkt. No. 162 (emphasis added).) Plaintiffs cannot just reframe their entire case theory to avoid summary judgment, especially given that they had yet another opportunity to amend their duty allegations but didn't do so. (*See* Dkt. No. 160.) Besides, Plaintiffs have not proffered evidence of any alleged "misfeasance" (whether pled or not). Finally, Plaintiffs' misfeasance caselaw is easily distinguished. Each case involves affirmative misconduct that has no corollary here, such as banks wrongly accusing non-customers of fraud, *Rodriguez v. TBK Bank, SSB*, No. 17cv30682, 2017 WL 11637646, at *3 (Colo. Dist. Ct. Nov. 2, 2017); a bank allowing one customer's clients to deposit funds into other customers' accounts, *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1108 (S. D. Cal. 2024); or a bank depositing $170,000 into the wrong account, *Am. Express Travel Related Servs. Co., Inc. v. Stevens*, No. 13-cv-01159-WYD-BNB, 2013 WL 6670532, at *1 (D. Colo. Dec. 18, 2013). Plaintiffs make no such allegations here, which is fatal. *See Weil*, 983 P.2d at 814.

And even if the Court accepts Plaintiffs' reframing of their claims, there is no dispute that AMG's distributions were accurate. (*See supra* Argument § II.)

### C.    Plaintiffs' Conversion Claim Fails.

Plaintiffs contend that AMG must prove its conduct was commercially reasonable, citing a series of inapposite cases. Two of Plaintiffs' cases concern a *statutory* conversion claim that applies when a bank wrongly pays a forged check. *Nat'l Sur. Corp. v. Citizens State Bank*, 593 P.2d 362, 364 (Colo. App. 1978) (discussing former Colo Rev. Stat. § 4-3-419(1)(c) (1973)); *Cent., Inc. v. Cache Nat'l Bank*, 748 P.2d 351, 353 (Colo. App. 1987) (same). Plaintiffs bring no claim under that

8

statute, which has no applicability here and was amended over 30 years ago to eliminate "commercial reasonableness." Colo. Rev. Stat. § 4-3-420. The only other case Plaintiffs cite, *Commercial Credit Corporation v. University National Bank of Fort Collins*, also offers no support. There, a bank assigned checks from one account holder to another, and the Tenth Circuit found that that assignment was ***not*** conversion. 590 F.2d 851, 852 (10th Cir. 1979).

### D.    Plaintiffs Cannot Maintain an Unjust Enrichment Claim.

Plaintiffs contend that AMG's retention of less than 0.2% of allocated funds creates a fact dispute sufficient to salvage their unjust enrichment claim. (Dkt. No. 179 at 16, 19-20.) That argument fails because unjust enrichment occurs only when it is "unjust for the defendant to retain the benefit." *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1107 (10th Cir. 2023). And it is undisputed that AMG has retained those funds not as a benefit to itself, but because it has been unable to find contact information for a tiny percentage end users. (Dkt. No. 171-2 ¶¶ 54-56.) When AMG obtains that information, it will promptly return those funds. (*Id.* ¶ 56.) Indeed, half of the remaining end users have less than $1 apiece to be distributed (*see* Dkt. No. 173-7 ¶ 6), which illustrates the practical problems at issue here. Plaintiffs' argument also demonstrates the absurdity of its claims: if AMG distributes the money, it must have done so negligently; if AMG holds the money for too long, it must be liable for conversion and unjust enrichment.

### E.    Plaintiffs' Money-Had-and-Received Claim Fails.

Finally, Plaintiffs argue that they can maintain a money-had-and-received claim even though AMG distributed funds to end users. (Dkt. No. 179 at 16-17.) Plaintiffs primarily rely on a case that is contrary to their position, *In re B&L Oil Co. v. Mainstar Oil Co.*, which found that the

9

plaintiff "failed to establish" a money-had-and-received claim against a bank. 46 B.R. 731, 739 (Bankr. D. Colo. 1985.) There, the plaintiff had given the money to a third party, who then gave it to a bank. But when the bank kept the funds to satisfy the third party's debt, the court found the plaintiff could sue the third party, **not** the bank. *Id.* Plaintiffs also cite *National Surety*, which did not involve distributions at all. 593 P.2d at 365. Plaintiffs' legal argument that AMG may be liable for money-had-and-received **if** it incorrectly distributed the money it held fails as a matter of law. It also fails as a matter of fact, given Plaintiffs have offered no evidence to dispute AMG's evidence that it correctly distributed the funds to end users.

**CONCLUSION**

The Court should grant summary judgment in favor of AMG.

Dated: April 23, 2026

Respectfully submitted,

*s/ Eric L. Robertson*

Hugh Q. Gottschalk
Eric L. Robertson
Iva Velickovic
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, Colorado  80202
Phone:       303.244.1800
Fax:          303.244.1879
Email:       gottschalk@wtotrial.com
            robertson@wtotrial.com
            velickovic@wtotrial.com

*Attorneys for Defendant AMG National Trust Bank*

11

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standards III(A)(2) in that this pleading contains exactly 2,697 words.

Dated: April 23, 2026

*s/ Eric L. Robertson*

12

## CERTIFICATE OF SERVICE (CM/ECF)

I certify that on April 23, 2026, I caused the foregoing to be electronically filed with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel

of record.


*s/ Eric L. Robertson*